Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S.P., by and through her guardian C.P. and D.P.,<br>Plaintiffs,<br>v.<br>SEATTLE PUBLIC SCHOOLS, a quasi-municipal corporation.<br>Defendant. | No. 2:25-cv-00286-BJR<br><br>**Plaintiffs' Opening Brief/Motion for Summary Judgment** |

Plaintiffs bring this appeal, consistent with this Court's scheduling order (Dkt. #12) to correct the Administrative Law Judge's refusal to apply binding federal law, which guarantees S.P.'s right to a Free Appropriate Public Education until her twenty-second birthday.

The IDEA guarantees special education and related services to eligible students "between the ages of 3 and 21, inclusive," which means until a student's twenty second birthday. *E.R.K. v. Hawaii,* 728 F.3d 982, 986 (9th Cir. 2013)(citing 20 U.S.C. §



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

1412(a)(1)). The IDEA does contain one specific exemption to that requirement – if it is "inconsistent with state law or practice" to provide students 18 through 21 "public education in those age ranges."[1] "In other words, a State need not provide a FAPE to disabled students between the ages of 18 and 21 if the State does not provide a public education to nondisabled students in that same age range." *N.D. v. Reykdal,* 102 F.4th 982, 987 (9th Cir. 2024)(citing 20 U.S.C. § 1412(a)(1)(B)(i)).

For decades, Washington and the local education agencies, including Defendant Seattle Public Schools ("SSD[2]"), have relied on that exemption to deny FAPE to students after the end of the school year in which they turn twenty-one. However, straightforward application of *E.R.K.* and *N.D.* shows that exemption did not and does not apply in Washington. Therefore, by "exiting" S.P. from the special education services in 2023, SSD unlawfully denied S.P. an entire year of special education services. And although the District continued to provide her "compensatory education" under a settlement agreement, the District failed to satisfy its underlying obligation and denied her the special education she was entitled to until her twenty-second birthday.

S.P.'s parents, who hold legal guardianship over her and possess the right to sue on her behalf, filed for Due Process and moved for summary judgment based on the plain reading of *E.R.K., N.D.,* and the numerous declaratory judgments entered in the *N.D. v. Reykdal* class action litigation. Rather than applying that straightforward

---

[1] *See* 20 U.S.C. § 1412(a)(1)(B)(i), reproduced *infra* at footnote 5.
[2] Again, to avoid confusion with S.P.'s initials.



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

analysis, the Administrative Law Judge issued summary judgment in favor of the District in an order that ignores first principles of American jurisprudence. It failed to apply binding Ninth Circuit law to the facts as they existed in 2023 and purported to give SSD the authority to ignore federal law in favor of conflicting state law. Because SSD violated federal law and denied S.P. access to a special education she was legally entitled to, the ALJ's order must be reversed, summary judgment as to the District liability should be entered, and this case should be remanded for additional proceedings.

**Facts**

### 1. Student's Education

The Student has long been eligible for special education, beginning with the IDEA's birth to three program and then through traditional (i.e. Part B) special education. AR 397 ¶ 3[3]. S.P. has multiple disabilities that impact her ability to access an education, including hydrocephalus, seizure disorder, and Cerebral Palsy. *Id.* S.P. is currently twenty-two years old, and her birthday is in the summer. *Id.*

The Student's most recent IEP was extensive, providing specially designed instruction in in the areas of Social/behavior, Adaptive/life skills, all functional academics; related services in physical therapy and SLP; and occupational therapy as a support for school personnel. She requires a power wheelchair and 1-1 support in all areas of life. *Id.*

---

[3] AR refers to the Administrative Record filed under seal in this case.



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

Beginning in 2017, the Parents were concerned that she was not being provided a FAPE. AR 398 ¶ 4. In exchange for a waiver of past claims, the District agreed to provide "compensatory education" to S.P. "in the form of an additional school year of transition programming for the 2023-2024 school year." AR 398 ¶ 6. *See also* AR 402 ¶ 4. The family signed the agreement on or about December 20, 2022. AR 398 ¶ 5. Prior to the Settlement Agreement, it was understood by all parties that S.P.'s education would end in June of 2023. *See* AR 455 ("[S.P.] will graduate with a Certificate of Attendance in June 2023").

Consistent with the above, at the end of the 2022-2023 school year, S.P. was "exited" from special education, but remained enrolled in the District to access the agreed upon compensatory education. *See* AR 634 ¶ 7. The District implemented the compensatory education based on an IEP that was developed in February of 2023. *See* AR 405-448. Throughout that document, it confirmed that the services were compensatory in nature. *See* AR 408 ("[S.P.] was given an extra year as a result of Compensatory Services") and AR 436 ("2023-2024 school year [S.P.] was granted an additional year of school due to compensatory services".), and AR 445 ("[S.P.] will receive compensatory services for the 2023-2024 school year.").

After the Ninth Circuit's decision in *N.D. v. Reykdal,* 102 F.4th 982 (9th Circ., 2024), the family, at first personally, and then through the undersigned, reached out to the district about both re-enrolling S.P. and compensatory education for the 2023-2024 school year. See AR 399 ¶ 9. One of the District's Special Education Supervisors, Rob Vander Stoep responded as relevant below:



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

> I have taken a look at this and have shared this information out. I agree that there is good reason to offer [S.P.] ESY. The challenge we have is that the class already has 12 registered students and the staffing we have is seeming sparse as is. I am not feeling like we can offer [S.P.] a safe placement without adding a class and a 1-1. What I would like to do instead is offer compensatory education in place of this. It isn't a lot, but we can offer an additional time next year equal to the time missed this summer, 12 days.

*Id.* at ¶ 10 and AR 488. The family rejected the 12 days offered, based on the language in *N.D.*, 102 F.4th at 996 ("It is simply not a response to the requirement of equality to say that students with disabilities may properly be afforded less education because equal treatment will be too costly.").

**2. Students of all ages in Washington have access to free public education.**

The question of whether the exemption contained in 20 U.S.C. § 1412(a)(1)(B)(i) applies to any state depends on whether that state provides "free public education" to nondisabled peers between the ages of 18 through 21. As such, Plaintiffs provided significant evidence to the ALJ concerning Washington's adult education programs. In fact, it is the exact same evidence relied on in *N.D.,* 102 F.4th 982. Namely, the Rule 30(b)(6) Deposition of the Washington State Board for Community and Technical Colleges, Troy Goracke, and the accompanying exhibits[4].

[4] *See Gulf USA Corp. v. Federal Ins. Co.*, 259 F.3d 1049, 1056 ("Sworn deposition testimony may be used by or against a party on summary judgment regardless of whether the testimony was taken in a separate proceeding. Such testimony is considered to be an affidavit pursuant to Federal Rule of Civil Procedure 56(c), and may be used against a party on summary judgment as long as the proffered depositions were made on personal knowledge and set forth facts that were admissible in evidence.") (citations omitted).



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

Since at least 2009, Washington law specifically provides for the provision of secondary education to students of all ages. Washington's community and technical colleges are empowered to "issue a high school diploma or certificate" to adults who meet the requirements for high school completion. Wash. Rev. Code § 28B.50.535(1). The requirements for high school completion are adopted by "the superintendent of public instruction and the state board of education." *Id.* Additionally, the Washington State Board for Community and Technical Colleges (SBCTC) is charged with adopting rules governing the eligibility of persons over sixteen "to take a test to earn a high school equivalency certificate, rules governing the administration of the test, and rules governing the issuance of a high school equivalency certificate to persons who successfully complete the test." Wash. Rev. Code § 28B.50.536(1); *see also* Wash. Admin. Code § 131-48-020 (rules setting forth "policies and procedures governing the administration of the high school equivalency test and the issuance of high school equivalency certificates for persons who have not graduated from high school and are not enrolled in a regular or alternative high school program"). "A high school equivalency certificate is a certificate issued jointly by the college board and the office of the superintendent of public instruction that indicates that the holder has attained standard scores at or above the minimum proficiency level prescribed by the college board on a high school equivalency test." Wash Rev. Code § 28B.50.536(2).

SBCTC implements the above statutes and regulations, in part, through its "Basic Education for Adults" (BEdA) program. AR 97 at 8-12. Funding for these programs is provided by state and federal taxpayers. AR 95 at 23-24. SBCTC testified that "secondary



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

education is one of the core services that basic education for adults through SBCTC provides." AR 168 at 14-16.

At all relevant times, at least two of those programs provide secondary education to non-disabled students of all ages without charge and at public expense. The first, called High School Plus ("HS+"), allows students to obtain a regular high school diploma by taking adult basic education courses and college classes that substitute for high-school requirements. AR 97-98. The HS+ program is described as "the state's competency-based high school diploma program." AR 98 at 6-8. Successful completion of the HS+ program "renders a high school diploma." AR 99 at 10-11. The high school diplomas awarded by HS+ are the same as those awarded by secondary schools in Washington. AR 15-16 at 22-25 and 1. According to SBCTC's website, "adults demonstrate competencies in reading, writing and math contextualized in science, history, government, occupational studies, and digital literacy." AR 234. The colleges that run the HS+ programs fund those programs through their own funds allocated to them by the Washington Legislature and may charge $25 for "tuition" each quarter, although that amount can be waived, as discussed below. AR 118 at 8-9, and AR 119 at 11-16.

The second program provides classes to prepare for the GED® high-school equivalency examination. AR 105 at 18-13. The GED is a four-part test that once successfully completed, shows that the student has "the same level of knowledge as a high school graduate." AR 227. SBCTC claims that "most colleges and employers accept the GED credential as being equivalent to a high school diploma. Earning a GED credential opens doors to college and better jobs." *Id.* The GED is recognized by the state



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

of Washington as equivalent to a high school diploma. AR 109 at 17-20. GED programs may also charge the same $25 "tuition." AR 119 at 14-15.

However, Washington also provides those services free to thousands of students a year. SBCTC *mandates* that there be a process for waiving the tuition payment. AR 122 at 15-19. In fact, tuition was waived for *nearly half* (42%) of students who have accessed BEdA classes during the 2021-2022 school year. AR 396. As SBCTC confirmed:

> The two programs we've talked about – High School+ and GED preparation provided by the community and technical colleges and the five providers under the [WIOA] Title Two – *those services can be offered free of charge if the student asks for and qualified for a waiver.*

AR 46 at 17-19 (speaking in the present tense in April of 2023). By way of further example, data from SBCTC confirms that between the 2019-2020 school year and the 2021-2022 school year, 70,887 BEdA students have accessed public secondary education from the State of Washington completely free of charge. AR 396.

### 3. Standard of Review

"[J]udicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir.1993). In IDEA cases, the district court is to "receive the records of the administrative proceedings;" "hear additional evidence at the request of a party;" and "grant such relief as the court determines is appropriate" based on a preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B). The Court does not perform a complete *de novo* review, rather, it must give "due weight" to the ALJ's conclusions, particularly where the record "evinces [their] careful, impartial consideration of all the evidence and demonstrates [their] sensitivity to the complexity of the issues presented." *Ojai*, 4 F.3d



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

at 1476 (9th Cir. 1993); *see also R.B., ex rel. F.B. v. Napa Valley Unified Sch. Dist*., 496 F.3d 932, 937 (9th Cir. 2007) ("The court gives particular deference where the hearing officer's administrative findings are thorough and careful") (internal quotations removed).

"How *much* deference to give state educational agencies . . . is a matter for the discretion of the courts." *Gregory K. v. Longview Sch. Dist*., 811 F.2d 1307, 1311 (9th Cir. 1987) (emphasis in original). Because the ALJ failed to demonstrate their "sensitivities to the complexity of the issues" by *inter alia,* misstating Plaintiffs' argument and failing to address Plaintiffs' supremacy clause argument, and because there is little factual dispute between the parties, this Court should extend little deference to the ALJ.

**4. Argument**

**1. The IDEA applies to school districts.**

As a starting point, SSD argued at oral argument that the federal requirements of the IDEA do not apply to it because the IDEA imposes obligations only on "states," rather than individual districts. Therefore, because *E.R.K.* and *N.D.* both involved state defendants, rather than individual districts, those cases are distinguishable. Both of those arguments must be soundly rejected. First, it is inconsistent with the statutory language. 20 U.S.C. § 1413(a)(1) specifically requires local education agencies (of which SSD is one) to have "policies, procedures, and programs that are consistent with the State policies and procedures established under section 1412 of this title." One of those State policies and procedures the District is required to have is the very statutory language at issue in this case - 20 U.S.C. § 1412(a)(1). Second as a technical matter, under



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

Washington law, school districts are the state. *See Bellevue School Dist. No 405, v. Brazier Const. Co.,* 100 Wash.2d 776, 778 (1984)("school districts are essentially only *quasi* municipal corporations. They are mere arms of the state for the administration of its school system… exercising a portion of the sovereign power of the state, not for their own benefit, but as agents of the public.")(emphasis in original). To the extent the District argues the obligations in 20 U.S.C. § 1412 apply only to the Office of Superintendent of Public Instruction as "the state," that argument also must fail. When the IDEA wishes to address the specific state department responsible for education, it uses a specific term – "state educational agency" or "SEA." *See e.g.,* 20 U.S.C. § 1414(a)(1)(A). Instead, in 20 U.S.C. § 1412(a)(1), it refers broadly to "a State." Third, Defendants cited no case supporting its reading of the IDEA. To the contrary, seminal Supreme Court cases interpreting federal requirements of the IDEA invariably involve school districts as the defendants, *See e.g. Endrew F. v. Douglas County School Dist. RE-1,* 580 U.S. 386 (2017). Furthermore, multiple cases involve liability being imposed on both the local educational agency and the state educational agency for systemic failures. For example, in *Corey H v. Board of Educ. of City of Chicago,* 995 F. Supp 900, 903 (N.D. Ill. 1998) the District Court approved a class action settlement agreement as towards the City of the Chicago after it "recognized its deficiencies and agreed to a remedial plan," while litigation regarding the State's liability continued. So while the OSPI may *also* be liable for violating the IDEA, that does not dispose of SSD's liability. The District provided no reason, much less a compelling reason, for distinguishing either *E.R.K.* or *N.D.* on the basis that they involved SEAs rather than LEAs. Because no court



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

has ever held school districts are not liable for violating federal requirements of the IDEA, this Court should not be the first.

**2. Federal Law requires school districts in Washington, including SSD, to provide special education services until a student's twenty-second birthday.**

The IDEA guarantees to all students with disabilities a "free appropriate public education" ("FAPE"), which requires states to provide specially designed instruction and related services to qualified students. 20 U.S.C. § 1400 *et seq*. Under the IDEA, the right to a FAPE extends to students aged 21 years old "inclusive," meaning "a student's eligibility for IDEA services ordinarily ends on his twenty-second birthday." *E.R.K. ex rel. R.K. v. Hawaii Dept. of Educ.*, 728 F.3d 982, 986, (interpreting 20 U.S.C. § 1412(a)(1)(A)).

However, the law creates a limited exception to that right, which allows states to cut off eligibility to students 18 through 21 years old if providing services to students that age would be "inconsistent" with state law or practice. 20 U.S.C. § 1412(a)(1)(B)(i).[5] The contours of 20 U.S.C. § 1412(a)(1)(B)(i) have been explored by the Ninth Circuit in two cases – *E.R.K,* and *N.D.,* 102 F.4th 982.

---

[5] "The obligation to make a [FAPE] available to all children with disabilities does not apply with respect to children: (i) Aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges." 20 U.S.C. § 1412(a)(1)(B).



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

*E.R.K.* involved a challenge to a Hawaii law, “Act 163,” that barred students from attending public school after the last day of the school year in which they turned twenty. See *id.* at 984. Plaintiffs in that case alleged that Act 163 violated 20 U.S.C. § 1412(a)(1)(A), the same statute at issue here, because Hawaii ran a system of secondary schools that allowed nondisabled students over twenty years old to attend, rendering the exception in 20 U.S.C. § 1412(a)(1)(B)(i) inapplicable. *See id.* at 986.

Although Act 163 applied to both general education and special education students attending “conventional” public high schools, the Hawaii Department of Education (“DOE”) also operated “a network of adult-education schools called the Community Schools for Adults” that Act 163 explicitly did not apply to. *Id.* at 985. Instead, those schools were open to any person eighteen and older who lacked a high school diploma (or sixteen and older if the student had formally withdrawn from high school). *Id.* These community schools were described as “tuition-free opportunities for adults and out-of-school youth to earn a high school diploma[.]” *Id.* (alteration in original). Although described as “tuition-free,” there were some costs associated with attending the community schools, including “nominal fees for books, testing, and other miscellaneous expenses.” R.*P.-K ex rel. C.K. v. Dep’t of Educ., Hawaii*, No. CIV. 10-00436 DAE, 2012 WL 1082250, at *3 (D. Haw. Mar. 30, 2012) (district court Findings of Facts and Conclusions of Law in *E.R.K.*).

The Community Schools offered two diploma programs: “the General Education Development (‘GED’) program and the Competency Based program (‘CB’).” 728 F.3d at 985. The GED program “prepares students to take the GED test, a national standardized



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

high school equivalency exam." *Id.* The CB program "is a three-semester life-skills program designed to help students become '(1) Functionally literate adults; (2) Productive and contributing citizens/community members; (3) Effective family members; and (4) Productive workers.'" *Id.*

Because students older than twenty could attend those programs, "the fate of Act 163 [came] down to whether the diploma programs offered by the Community Schools for Adults constitute 'free public education.'" *Id.* at 987. The Ninth Circuit defined "free public education" using a "a bipartite definition: a 'free public education' is one that is 1) provided at public expense, under public supervision and direction, and without charge; and 2) involves preschool, elementary, or secondary education." *Id.* at 988.

In ruling that the GED and CB programs constituted "free public education," the Ninth Circuit held "the GED and CB programs clearly satisfy the first prong of the definition" because they were provided at public expense and are "free to students." Id. In analyzing the second prong—whether the programs constitute "secondary education"—the Ninth Circuit looked to how the DOE marketed their community schools for adults and remarked: "the DOE's characterization of the adult school programs comports with the common-sense view that high school diploma programs are quintessentially secondary education, whether they are offered to teenagers or adults." Id. The Court further stated, "high school diploma programs are paradigmatic examples of secondary education." *Id.* at 989 n. 5.

Having ruled that CB and GED programs constituted "free public education," the court concluded that "if Hawaii legislators wish to shut the door to students once they



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

turn 20, that is their prerogative—but they must shut them to all students, regardless of disability. Act 163 reinstates the benighted two-track system that prevailed before the IDEA was passed, when disabled students were often 'totally excluded from schools[.]'" *Id.* at 992 (emphasis and alteration in original). Therefore, "the State of Hawaii offers public education to nondisabled students between the ages of 20 and 22. As long as it continues to do so, the IDEA requires the state to continue to provide a free and appropriate public education to disabled students who have not yet obtained the age of 22." *Id.* at 993.

Thus, in June of 2023 (when S.P. was exited from special education), the law of the Ninth Circuit guaranteed students access to special education until their twenty-second birthday if the state provided free public education to nondisabled students of that age. The evidence produced in this case clearly shows that Washington provided that.

As explained above, the State of Washington has offered at least two educational programs that provide secondary education to non-disabled students of the same age at public expense and without charge since at least 2009. The first, called High School Plus ("HS+"), allows students to obtain a regular high school diploma by taking adult basic education courses and college classes that substitute for high-school requirements. AR 98 at 6-8 & AR 99 at 10–15. The second provides classes to prepare for the GED® high-school equivalency examination. AR 105 at 8–20 & AR 109 at 17–20. While those programs charge a $25 dollar fee, that fee is frequently waived, meaning "those services can be offered free of charge if the student asks for and qualified for a waiver." AR 125 at 11-19 and AR 126 7-13.



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

Applying the Ninth Circuit's bipartite definition of "free public education"—1) provided at public expense, under public supervision and direction, and without charge; and 2) involv[ing] preschool, elementary, or secondary education"—both the HS+ and GED programs qualify as free public education. Both programs were/are funded through the Washington Legislature and the federal government (id. at p16 at 23–24), both programs were/are provided through the 34 public community and technical colleges under the supervision of the SBCTC (AR 105 at 8–20), and both were/are provided to some students without charge. AR 125 at 11-19 and AR 126 7-13.

Regarding the second prong, these programs are also "quintessentially secondary education" because they, like Hawaii's programs, provide for high school diplomas or their equivalent, and as SBCTC put it "secondary education is one of the core services that basic education for adults through SBCTC provides." AR 168 at 14–15. Notably, the GED program offered by Washington community schools prepares students for the exact same exam taken by students in Hawaii.

Like Hawaii's Act 163, Washington had two laws that purported to cut off eligibility for students beyond the end of the school year in which they turn twenty-one - Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(C) (collectively "the age-out provisions"). However, because Washington provided (and continues to provide) "free public education" to students beyond their twenty-first birthday in June of 2023, the potentially relevant exception contained in 20 U.S.C. § 1412(a)(1)(B) did not apply. Providing education to students older than twenty-one years was not just "consistent" with state law, it was in fact required by state law. Wash. Rev.



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

Code 28B.50.535 (requiring community colleges to award high school diplomas if a student "satisfactorily" meets the requirements for high school completion). Therefore, the default rule requiring Washington to provide a FAPE to disabled students "between the ages of 3 and 21, inclusive …." applied equally in June of 2023 as it does today. SSD's failure to comply with *E.R.K.* a decade after its issuance cannot be excused. Its failure to do so denied S.P. a FAPE.

As if that was not enough, the Ninth Circuit's recent decision in *N.D.,* 102 F.4th 982 squarely and unequivocally resolves the legal questions in this case. *N.D.* involved two special education students who were exited from their special education program by SSD and the Selah School District, respectively, prior to their twenty-second birthday (specifically at the end of the school year in which they turned twenty-one). *See N.D. v. Reykdal,* 2023 WL 5632783 at 3-4 (W.D. Wash., August 31, 2023) (underlying District Court order). Plaintiffs sought a preliminary injunction against the Office of Superintendent of Public Instruction (OSPI) preventing enforcement the age-out provisions for the start of the 2023-2024 school year – the same school year at issue in this case. *See N.D.,* 102 F.4th at 987 and s*ee N.D. v. Reykdal*, 2:22-cv-01621-LK, 2023 WL 5632783 at 3-4 (order denying preliminary injunction issued August 31, 2023).

After examining the adult education programs available to Washington students of all ages, on May 22, 2024, the Ninth Circuit concluded "we are bound by *E.R.K's* interpretation of section 1412(a)(1)(B)(i)," that students can only prevail "by showing that Washington offers 'free public education' to nondisabled 21-year-olds" *N.D.,* 102 F.4th at 994. "But we also conclude that the students have made that showing." *Id.*



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

> ...[I]t cannot be said that providing free public education to 21-year-olds is "inconsistent with State law or practice." 20 U.S.C. § 1412(a)(1)(B)(i). To the contrary, Washington "in fact provides 'free public education' to nondisabled students" of age 21 and older. *E.R.K.*, 728 F.3d at 987.
>
> Under *E.R.K.*, that makes section 1412(a)(1)(B)(i) inapplicable to Washington. As we explained in that case, if States "wish to shut the door to students" based on the students' age, "that is their prerogative—but they must shut them to *all* students, regardless of disability." 728 F.3d at 992. **The record here shows that Washington does not shut the door to free public education to all 21-year-olds—only disabled ones. The IDEA does not permit it to do so.**

*N.D.,* 102 F.4th at 994 (bolded added). Having determined that the exception contained in section 1412(a)(1)(B)(i) does not apply to Washington and finding in favor of the remaining preliminary injunction factors, the Ninth Circuit ordered the District Court to enter a preliminary injunction prohibiting enforcement of the age out provisions. *N.D.,* 102 F.4th at 996.

On remand, and prior to the filing of this case, the District Court in *N.D. v. Reykdal* issued a number of declaratory judgments regarding the age out provisions. On July 10, 2024, the District Court declared, *inter alia,* "Section 28A.155.020 of the Revised Code of Washington and Section 392.172A.02000 of the Washington Administrative Code are invalid as contrary to the IDEA to the extent they do not ensure eligible students receive a FAPE until they turn 22." *N.D. v. Reykdal,* 2:22-cv-01621-LK, 2024 WL 3358743 at *7.

Several months later, while the parties' summary judgment motions were pending, the District Court issued a second declaratory judgment in *N.D.*, declaring;



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

> the state's policy of aging students out of special education at the end of the school year in which they turn 21 pursuant to Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(c) presently violates the IDEA, has violated the IDEA at all times during the two years preceding the filing of this lawsuit, and will continue to violate the IDEA absent a substantial change in the state's policies for charging and waiving tuition for its adult secondary education programs.

*N.D. v. Reykdal*, 2:22-cv-01621-LK, 2024 WL 4875055 at *12 (November 22, 2024).

Thus, simply applying Ninth Circuit precedent to the facts established in this case, the exception contained in Section 1412(a)(1)(B)(i) does not and cannot apply to students in Washington, meaning SSD was obligated to provide special education and related services to students "between the ages of 3 and 21, inclusive." Since S.P. was only provided her underlying special education services until June of 2023, she was denied FAPE between June 2023 and her twenty-second birthday. As such, summary judgment regarding the District's liability should have been entered.

Put another way, SSD, which bore the burden of persuasion and proof at the Due Process stage failed to show that providing special education services to twenty-one-year-olds was "inconsistent with state policy or practice," in June of 2023 because Washington in fact provided "free public education" to students of all ages under *E.R.K's* bipartite definition of the term. Therefore, summary judgment should never have been entered in their favor.

**3. The ALJ's refusal to apply the reasoning of *E.R.K.*, as understood by *N.D.* "retroactively" was plainly erroneous.**



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

Instead of applying the law as determined by *E.R.K.* and *N.D.* to the undisputed facts in this case, the ALJ focused on whether the District Court's invalidation of the age-out provisions necessarily meant the District was liable. To do that, the ALJ misstated the Plaintiffs' argument, saying "the Parents contend that both [age-out] provisions were later invalidated by decisions in the N.D. litigation, thus establishing that the District violated the IDEA and denied the Student FAPE when it prematurely exited her from special education services." AR 639[6].

However, the ALJ has Plaintiffs' legal analysis backwards. Plaintiffs started from the position that the reasoning and application of *E.R.K.* and *N.D.* to the facts as they existed in June 20233 necessarily meant SSD violated the IDEA when it failed to guarantee a FAPE to S.P. until her twenty-second birthday. Subsequent to that, the District Court invalided the age-out provisions based on the same arguments raised here. And while Plaintiff did raise the invalidation of the age-out provisions in their reply brief – it was in an attempt to show the mounting precedent supporting their position – not as a substitute for Plaintiffs' opening motion. The District Court's decision to invalid those age-out provisions – and more importantly the reasoning behind it – serves as another layer of binding precedent that the ALJ could not simply ignore.

Instead, the ALJ did exactly that. This disconnect is based on the ALJ's misconception that judicial decisions do not apply retroactively, as she stated clearly

---

[6] Compare AR 66 ("Thus, under binding Ninth Circuit precedent, the exception contained in Section 1412(a)(1)(B)(i) does not and cannot apply to Washington…") with the ALJ's statement of Plaintiffs' argument in AR 639.



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

"there is no authority for applying those decisions retroactively." AR641. That is legally erroneous. First, to the extent the ALJ faults Plaintiffs for failing to provide such authority, the retroactivity argument raised by Defendant was only mentioned in one line in the Defendant's *sur-reply* – "the court did not state that its determination regarding the validity of the statute and regulation applied retroactively." AR 623. No opportunity was provided to correct this notion.

Second, the Defendant's statement is not consistent with the text of the declaratory judgement which *explicitly* stated the "policies" (i.e. Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(C)) "violated the IDEA *at all times* during the two years preceding the filing of this lawsuit" – which plainly encapsulates the relevant time period here.

Third, and most importantly, judicial decisions apply retroactively to cases currently pending unless stated otherwise. "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively is familiar to every law student." *Rivers v. Roadway Exp., Inc.,* 511 U.S. 298, 312 (1994). "Judicial decisions have had retrospective operation for near a thousand years." *Kuhn v. Fairmont Coal Co.,* 215 U.S. 349, 372 (1910)(Holmes, J., dissenting). As the Supreme Court explained, "when this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." *Id.* Retroactivity applies to judicial decisions because "a judicial construction of a statute is an authoritative statement of what the



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

statute meant before as well as after the decision of the case giving rise to that construction." *Id.* at 312-313. As the Ninth Circuit explained, "the theory of judicial interpretation of a statute is that the interpretation gives the meaning of the statute from its inception, and does not merely given an interpretation to be used from the date of the decision." *U.S. v. City of Tacoma, Wash.,* 332 F.3d 574, 580 (9th Cir. 2003). Thus, the contours of 20 U.S.C. § 1412(a)(1)(B)(i) have always been as they are defined and explained in *N.D.* Namely, that the provision of "free public education" includes the provision of adult education programs which waive fees for some students. Therefore, the liability that flows from violating *N.D.'s* interpretation of 20 U.S.C. § 1412(a)(1) in the facts established in this case, has *always* existed – and the District's failure to comply with that obligation in June 2023 is not different than any prospective failure to comply. Because that is what the law *has always required.*

#### 4. The ALJ's conclusion that School Districts can choose to comply only with state law flips the Supremacy Clause on its head.

The ALJ further erred when it adopted the District's argument that it "is not authorized to unilaterally determine that it is not required to comply with state law and regulations." Such a rule is both incorrect and turns the Supremacy Clause on its head. AR 640. First, the SSD absolutely possesses the right to challenge state laws that impact their ability to comply with federal law. *See* Wash Rev. Code § 28A.320.010 "a school district shall constitute a body corporate and shall possess al the usual powers of public corporations, and in that name and style may sue and be sued..."



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

Second, and again more importantly, the ALJ's determination that SSD must comply with state law necessarily implies it can ignore federal law. Such a proposition is incorrect. It is black letter law that "that state laws that conflict with federal law are 'without effect.'" *Mutual Pharmaceutical Co., Inc. v. Bartlett,* 570 U.S. 472, 480 (2012) (citing *Maryland v. Louisiana,* 451 U.S. 725 (1981) and *McCulloch v. Maryland,* 4 Wheat. 427 (1819)). The law of preemption flows from the Constitutional directive that the laws of the United States are the "supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "Of course, a state statute is void to the extent it conflicts with a federal statute—if, for example, compliance with both federal and state regulations is a physical impossibility." *Maryland,* 451 U.S. at 747. As Chief Judge Estudillo of the Western District of Washington recently determined, "[a]ccordingly, the Ninth Circuit has repeatedly affirmed that the IDEA preempts state law to the extent state requirements conflict with federal statute." *M.R. v. Yelm School District,* 3:24-cv-05533-DGE, *26 (March 11, 2025)(collecting cases).

In this case, the age-out provisions (Wash Rev. Code 28A.155.020 and Wash. Admin. Code 392-172A-02000) provide in relevant part:

> the superintendent of public instruction shall require each school district in the state to insure an appropriate educational opportunity for all children with disabilities between the ages of three and twenty-one, but when the twenty-first birthday occurs during the school year, the educational program may be continued until the end of that school year.



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

In other words, Washington law required districts to provide special education and related services to students until they turned twenty-one but may continue serving until the end of the school year. Those laws *directly* conflict with 20 U.S.C. § 1412(a)(1)(A), which, again, guarantees a FAPE "to all children with disabilities residing in the State between the ages of 3 and 21, inclusive," which the Ninth Circuit has interpreted to mean "a student's eligibility for IDEA services ordinarily ends on his twenty-second birthday." *E.R.K,* 728 F.3d at 987.

Here, where compliance with both state and federal law is impossible – where a district cannot simultaneously exit a student at the end of the school year in which they turn twenty-one *and* on their twenty-second birthday, the state law must yield. It is simply not a response to say the district was bound by state law and could choose to implement that over the *more protective federal law* – it could not. Conflicting state laws are "without effect." *Bartlett*, 570 U.S. at 480. Accordingly, SSD was at all times required *by federal law* to provide FAPE until S.P.'s twenty-second birthday.

The ALJ never even addressed this argument. Such a failure to address plaintiffs' argument warrants reversal. And on the merits, this Court should not and cannot give the District carte blanche to ignore federal law.

**5. The provision of compensatory education does not relieve a District of its underlying FAPE obligation.**

Although not addressed in the Summary Judgment Order, this case exists in a unique posture. As indicated, technically S.P. did receive an additional year of special education – i.e. the 2023-2024 school year. However, she received that year pursuant to the terms of a settlement agreement. *See* AR 402. That settlement agreement, which



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

was entered into "to fully resolve a dispute that arose over Student's special education placement" provided that "the District will provide compensatory education to Student in the form of an additional school year of transition programming for the 2023-2024 school year." *Id*. The fact the services were "compensatory education" cannot reasonably be disputed, as it was repeatedly emphasized both within the settlement agreement and throughout the Student's IEP – see AR 408 ("[Student] was given an extra year as a result of Compensatory Services."). However, the provision of "compensatory education" does not relieve a District of its underlying FAPE obligation. That is because the very purpose of each differs dramatically. As the Supreme Court has made clear "to meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F., v. Douglas County School Dist. RE-1,* 580 U.S. 399 (2017). Thus provision of FAPE is about progress – it's about moving forward "in light of the child's circumstances."

Compensatory education serves an entirely different goal. "It refers to an award of service to compensate for a past deficient program." *M.G. v. Yakima School Dist., No. 7*, 24 Wn. App. 1041, slip at 19 (Division III, 2022), affirmed *M.G. v. Yakima School Dist., No. 7*, 2 Wn. 3d 786 (2024). Or as another court put it "to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 524 (D.C. Cir. 2005) cited with approval *in R.P. v. Prescott Unif'd Sch. Dist.*, 631 F.3d



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

1117, 1125 (9th Cir. 2011). Compensatory education is thus a rear-facing relief designed to remedy *past* failures to serve – not to serve as replacement for future obligations.

Any finding to the contrary would decimate the IDEA's requirement to provide a FAPE. Consider the following hypothetical: a student is entitled to, but does not receive, one hour of SDI in Math a day. Halfway through the school year, the school recognizes its mistake and offers, as compensatory education, an hour of Math SDI a day for the remainder of the year. Does that offer of compensatory education extinguish the ongoing obligation under the IEP to provide one hour of Math SDI? Of course not. Instead, the District must now offer two hours of SDI – one under the IEP and one as compensatory education. The same is true here. The District's agreement to provide an entire year of services does not eliminate its underlying federal and state obligations.

**6. The potential availability of compensatory education through a different mechanism does not warrant dismissing this case.**

Finally, the ALJ dismissed the complaint because "it would not be appropriate for this tribunal to hold a due process hearing to address compensatory education *before* the IEP team has even been given a chance to consider it." AR 641. No law supports, much less compels, this assertion. The ALJ premised her decision on the fact S.P. is also a member of the settlement class certified in the *N.D. v. Reykdal* litigation. But her membership in that class poses no barriers to continuing down this avenue of relief.

As part of resolving that litigation, the District Court has preliminarily approved a settlement which requires OSPI to require school districts to convene IEP meetings for students interested in receiving compensatory education. *See N.D. v. Reykdal,* 2:22-



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

cv-01621-LK, 2024 WL 4875055, ("OSPI shall direct LEAs to reconvene IEP teams for all students in the class who wish to receive an award of compensatory education."). However, the settlement class certified in *N.D.* is certified under Federal Rule of Civil Procedure 23(b)(2) (i.e. it is an injunctive class) and class members are explicitly not bound by the terms of the resolution. *See id.* at *8 and *10 ("Here, the proposal would not bind class members, so the fairness inquiry is not required" and "parties do not suggest that [putative class members are bound by the resolution]"). Class members also "retain the right to challenge a decision regarding proposed compensatory education." This case was filed more than two months before the entry of the *N.D.* order certifying the settlement class in direct response to the District proposing only 12 days of compensatory education. Compare AR 1, filed September 3, 2024, and 2024 WL 4875055, filed November 22, 2024, and *See* AR 488 (rejecting the District's offer of 12 days of compensatory education). Nothing in the class action compels S.P. to follow that one avenue of seeking relief. The ALJ erred in dismissing the complaint on that basis.

***

A decade ago, following the issuance of *E.R.K.,* schools in Washington *should* have begun providing services to students until their twenty-second birthday. That none of them did does not relieve them of liability. With the issuance of *N.D.,* that liability is even more clear. SSD was *at all times* required to provide S.P. with a FAPE until her twenty-second birthday. Its failure to do so violated the IDEA. This Court should find liability against the SSD for failing to comply with federal law and remand this case back



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

to the ALJ for consideration of the amount and type of compensatory education S.P. is entitled to, as well as any other equitable relief this Court finds just and fair.

Plaintiffs certify that this memorandum contains 7039 words, in compliance with the Local Civil Rules.

Dated this 13th day of May 2025.

CEDAR LAW PLLC

Alex Hagel
Cedar Law PLLC
113 Cherry St., PMB 96563
Seattle, WA, 98104-2205
(206) 607-8277
Fax (206) 237-9101
alex@cedarlawpllc.com

Attorney for the family