Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S.P., by and through her guardians C.P. and D.P.,<br><br>Plaintiffs,<br><br>v.<br><br>SEATTLE PUBLIC SCHOOLS, a quasi-municipal corporation,<br><br>Defendant. | No. 2:25-cv-00286-BJR<br><br>SEATTLE PUBLIC SCHOOLS' RESPONSE AND CROSS MOTION FOR SUMMARY JUDGMENT |



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

**TABLE OF CONTENTS**


I. INTRODUCTION ........................................................................................1

II. STATEMENT OF FACTS ..........................................................................2

A. The IDEA Places Different Obligations on States and Local Educational Agencies Related to the Age of Eligibility for Special Education Services. ................ 2

B. S.P.'s Background and Educational Services. ........................................................ 4

C. Parents' Counsel Files the *N.D.* Litigation on Behalf of a Putative Class. ................... 4

D. Parents Contact the District Regarding the *N.D.* Ruling. ........................................... 6

E. Parents File the Administrative Proceeding at Issue. .................................................. 7

F. OSPI and the *N.D.* Plaintiffs Settle their Dispute Regarding OSPI's Violation of the IDEA, and the *N.D.* Plaintiffs Seek Preliminary Settlement Approval. ............. 7

G. Parents Move for Summary Judgment before the ALJ. ............................................... 9

H. The *N.D.* Court Grants Preliminary Approval of the *N.D.* Settlement. ........................ 9

I. The ALJ Considers Parents' Motion. ........................................................................ 10

J. The ALJ Dismisses Parents' Administrative Action. ................................................ 11

III. STANDARD OF REVIEW ..........................................................................12

IV. ARGUMENT ............................................................................................13

A. The District Properly Followed State Law in Exiting S.P. from Special Education Services at the End of the School Year in which She Turned 21. ............. 13

B. Parents' Arguments that the District was Obligated to Violate State Law in Exiting S.P. from Special Education Services Fail. ................................................. 17

1. *E.R.K.* did not Require the District to Ignore Existing Washington State Law. ... 17

2. The *N.D.* Decisions do not Change this Analysis. ............................................... 18

3. Parents' Supremacy Clause Argument is Without Merit. ..................................... 21

4. The Prior Agreement to Provide S.P. with Compensatory Services is Irrelevant to the Legal Issues before the Court. .................................................. 23

5. The ALJ did not Err in Declining to Consider the Issue of S.P.'s Entitlement to Compensatory Education Services as Result of the *N.D.* Settlement before her IEP Team Considered this Issue. ...................................... 23

V. CONCLUSION ..........................................................................................25




PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

## I. INTRODUCTION

Parents brought the underlying administrative action alleging that Seattle Public Schools ("the District") violated the Individuals with Disabilities Education Act ("IDEA") when it exited S.P. from special education services in June 2023 at the conclusion of the school year in which she turned 21. It is undisputed that, at the time, Washington law provided that students in Washington were eligible for special education services only until age 21. Despite this, Parents argued that the District was obligated to ignore state law and continue to serve S.P. until age 22, claiming that this is what the IDEA required. But as a condition of its eligibility for assistance under the IDEA, the District was required to comply with state law with respect to the age of eligibility for services. The ALJ thus properly rejected Parents' claims below.

Nothing in the *N.D. v. Reykdal* decisions supports a contrary result. After years of litigation against Washington State's educational agency, the *N.D.* case culminated in entry of a declaratory judgment stating that the "state's policy of aging students out of special education at the end of the school year in which they turn 21" violated the IDEA, including at the time S.P. was exited. There has been no determination, however, that individual school districts violated the IDEA in relying on existing Washington law to exit students at age 21. Nor could there be as this is precisely what the IDEA required school districts to do. Individual school districts are not legally liable for the State's violation of the IDEA, and Parents' claims to the contrary must be rejected under the IDEA's plain language.

Indeed, the only responsibility individual school districts have as a result of the State's violation of the IDEA found in *N.D.* is that set forth in the class action settlement reached between the parties in that case. That settlement provided that the State would utilize its supervisory powers to direct the school districts under its control to take certain actions to remedy the State's legal violation. This included requiring school districts to convene meetings for students to address what compensatory education services, if any, the students were entitled to receive as a result of their premature exit. The District has followed the State's directive in this



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

respect and offered to meet to discuss the provision of compensatory services to S.P. Rather than accept the benefits of the *N.D.* settlement, however, Parents have persisted in their litigation against the District despite having no cognizable claim against it. Parents cannot establish that the District violated the IDEA with respect to its actions toward S.P., and they are not entitled to any relief in this case.

## II. STATEMENT OF FACTS

### A. The IDEA Places Different Obligations on States and Local Educational Agencies Related to the Age of Eligibility for Special Education Services.

Congress enacted the IDEA for the purpose of providing federal funding to States to educate students with disabilities in exchange for an individual State's agreement to comply with federal requirements as to how such students are to be served. *See, e.g.*, 20 U.S.C. § 1411. The IDEA authorizes States to enact rules, regulations and policies that conform to the purposes of the Act. 20 U.S.C. § 1407(a)(1). To receive federal funding, a State must submit a plan to the Secretary providing assurance that it has in effect policies and procedures that meet certain requirements. 20 U.S.C. § 1412. As relevant here, this includes the State's assurance that "a free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive." 20 U.S.C. § 1412(a)(1)(A). The IDEA further provides, however, that a State's obligation to provide a free appropriate public education ("FAPE") does not apply to children aged 3 through 5 and 18 through 21 "to the extent that its application to those children would be inconsistent with State law or practice . . . respecting the provision of public education to children in those age ranges." 20 U.S.C. § 1412(a)(1)(B)(i).

The IDEA also requires States to monitor the implementation of the IDEA by local educational agencies ("LEAs"), which are defined as public school districts. 20 U.S.C. § 1416; 20 U.S.C. § 1401(19). LEAs are eligible for assistance under the Act if they submit a plan to their State's educational agency establishing that the LEA meets certain requirements. 20 U.S.C. § 1413(a). This includes the requirement that:



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

> The local educational agency, in providing for the education of children with disabilities within its jurisdiction, has in effect policies, procedures, and programs that are consistent with the State policies and procedures established under section 1412 of this title.

20 U.S.C. § 1413(a)(1).

Until recently, Washington law established under Section 1412 stated that students were no longer eligible for special education services after the school year in which they turned 21:

> In accordance with part B of the federal individuals with disabilities education improvement act and any other federal or state laws relating to the provision of special education services, the superintendent of public instruction shall require each school district in the state to insure an appropriate educational opportunity for all children with disabilities between the ages of three and twenty-one, but when the twenty-first birthday occurs during the school year, the educational program may be continued until the end of that school year.

Rev. Code Wash. § 28A.155.020 (emphasis added).[1] Washington's special education regulations similarly provide that:

> (1) Each school district and residential or day schools operated under chapters 28A.190 and 72.40 RCW shall provide every student who is eligible for special education services between the age of three and twenty-one years, a free appropriate public education program (FAPE).

Wash. Admin. Code § 392-172A-02000(1). This regulatory provision further states that a student's eligibility for special education services ends when the student "has reached age twenty-one," with services to continue through the end of the school year in which the student reaches this age. Wash. Admin. Code § 392-172A-02000(2)(c).

As set forth more fully below, this was the operative law in Washington at the time the District exited S.P. from special education services.

---

[1] In response to the ruling in *N.D. v. Reykdal*, in 2025, the Washington Legislature enacted Substitute Senate Bill 5253, which amends Wash. Rev. Code § 28A.155.020 to require school districts to provide services to eligible students "beginning at three years of age and concluding at the end of the school year in which the student turns 22 years of age." https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Bills/Senate%20Passed%20Legislature/5253-S.PL.pdf?q=20250527184147.



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

**B. S.P.'s Background and Educational Services.**

Prior to reaching the age of 21, S.P. was eligible for special education services from the District. At the age of 18, S.P. began participating in the District's BRIDGES transition program, which is designed to provide post-secondary school services to eligible students. AR 514. Consistent with Washington law, S.P. was eligible to receive transition services through the school year in which she turned 21, which was the 2022-2023 school year. S.P.'s Individualized Education Program ("IEP") did not provide for Extended School Year ("ESY") services, meaning S.P. was not eligible to receive services over the summer. AR 539. As such, S.P.'s eligibility for special education services ended in June 2023. Wash. Rev. Code § 28A.155.020; Wash. Admin. Code § 392-172A-02000(1)-(2).

During her final year of eligibility for services, Parents and the District reached a settlement in December 2022 to resolve Parents' claims that the District had not previously provided appropriate services to S.P. AR 398; AR 402. In exchange for Parents' release of claims, the District agreed to provide S.P. with an additional year of transition services as compensatory education. AR 402. S.P.'s February 2022 IEP reflected this agreement. AR 540-41 (2/18/22 prior written notice reflecting agreement to extend S.P.'s graduation date to June 2024 as a result of settlement agreement); *see also* AR 585 (2/16/23 prior written notice stating that S.P. "will receive compensatory education services for the 2023-2024 school year"). Per its agreement, the District provided S.P. with the additional year of transition services during the 2023-2024 school year, after S.P. had turned 21. *Id.* But-for this agreement, S.P.'s services would have ceased in June 2023.

**C. Parents' Counsel Files the *N.D.* Litigation on Behalf of a Putative Class.**

In November 2022, the parents of two special education students filed a putative class action lawsuit against the Washington State Superintendent of Public Instruction and the Office of the Superintendent of Public Instruction (collectively "OSPI") alleging that Washington's policy of providing special education services only through the school year in which students



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

turned 21 violated the IDEA. *N.D. v. Reykdal*, W.D. Wash. Case No. 2:22-CV-01621-LK, Dkt. # 1. Parents' counsel in this case has at all times served as counsel of record for the plaintiffs in the *N.D.* case. *Id.* None of Washington's 295 school districts are parties in *N.D. Id*.

Following discovery, the *N.D.* plaintiffs moved to enjoin enforcement of Washington's age of eligibility law on the grounds that it violated the IDEA because Washington provided "free" educational services to students over the age of 21 through two State-run programs. *Id.* at Dkt. # 35 (attached as App. A).[2] Accordingly, the *N.D.* plaintiffs argued that Washington could not rely on the exemption set forth in Section 1412(a)(1)(B)(i), and that the IDEA instead required it to provide special education services to students until age 22. *Id.* On August 31, 2023, this Court denied plaintiffs' preliminary injunction motion, and plaintiffs appealed. *N.D. v. Reykdal*, No. 2:22-CV-01621-LK, 2023 WL 5632783, at *1 (W.D. Wash. Aug. 31, 2023).

On May 22, 2024, the Ninth Circuit issued its ruling on plaintiffs' appeal. *N.D. v. Reykdal*, 102 F.4th 982 (9th Cir. 2024).[3] Relying on its prior precedent of *E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*, 728 F.3d 982 (9th Cir. 2013), the Ninth Circuit held that a State "'cannot deny special education to disabled students aged 18 through 21 if it in fact provides 'free public education' to nondisabled students in that range of ages.'" *Id.* at 993 (quoting *E.R.K.*, 728 F.3d at 987). The court further held that the plaintiffs had established that Washington offers "'free public education' to nondisabled 21-year-olds" based on the existence of two State-run programs. *Id.* at 994. The court thus concluded that the exception in 20 U.S.C. § 1412(a)(1)(B)(i) did not apply in Washington because the record established "that Washington does not shut the

[2] For the Court's convenience, the District has appended a copy of this motion, as well as other filings in the *N.D.* case, to its brief. The Court may take judicial notice of these publicly-filed court documents. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

[3] In its decision, the Ninth Circuit determined that the case was moot as to one of the named plaintiffs, N.D., because he "is now 22 years old." 728 F.3d at 990. The Ninth Circuit thus held that N.D. "falls outside the scope of the IDEA and has no entitlement to relief under the statute, so the preliminary-injunction appeal is moot as to him." *Id.* The court found the case remained justiciable because the second named plaintiff was under 22. *Id.*



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

door to free public education to all 21-year-olds—only disabled ones." *Id.* The court reversed the denial of the preliminary injunction and remanded the case for further proceedings. *Id.* at 996.

Upon remand, the *N.D.* parties filed a joint status report requesting that the Court enter a declaratory judgment that "OSPI's refusal to ensure the provision of FAPE [to plaintiffs] on account of their age violates the IDEA," and that Washington law was "invalid as contrary to the IDEA." *N.D v. Reykdal*, 2:22-cv-01621-LK, 2024 WL 3358743, at *2 (W.D. Wash. July 10, 2024).The parties further advised that the case was "ripe for final determination of class certification and entry of judgment," but that the parties did not "agree … on how that class should be defined, or the manner in which any compensatory education owed to them should be provided," and further stated that they had agreed to mediate these issues. *Id.*

Following submission of the joint status report, on July 10, 2024, the Court issued an order certifying a provisional class pursuant to Fed. R. Civ. P. 23(b)(2). *Id.* at *6. The Court also entered the parties' requested declaratory judgment, declaring "OSPI's refusal to ensure the provision of a FAPE" to students on account of their age violated the IDEA and invalidating Washington's laws "to the extent they do not ensure eligible students receive a FAPE until they turn 22." *Id.* at *7. The Court issued a preliminary injunction against OSPI "preventing it from enforcing the age-out provisions" set forth in Washington law and "directing OSPI to take all actions necessary to ensure that disabled students are able to continue attending their special education programs through disposition of this matter or until they reach the age of 22." *Id.*

**D. Parents Contact the District Regarding the *N.D.* Ruling.**

At the time the Court entered the July 10, 2024 preliminary injunction order in *N.D.*, there was less than a month until S.P. turned 22. AR 1. Following entry of the preliminary injunction order, Parents contacted the District regarding the ruling and potential services for S.P. as a result. AR 399. At the time, District schools were on summer break, and S.P.'s IEP did not provide for summer services, also known as ESY services. AR 539. As such, S.P. was not currently receiving services from the District. On July 16, 2024, a special education



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

administrator at the District responded to Parents' inquiry and reported that there was "good reason" to offer S.P. ESY services as a result of the Court's ruling. AR 488. The District administrator reported that the ESY class was full for the summer and instead offered compensatory education services for the following summer for a period "equal to the time missed this summer, 12 days." *Id.* After discussing with their legal counsel, on July 18, 2024, Parents declined the District's offer. *Id.* Parents further reported that they "will be working with the class action's attorney" (their own counsel) to ensure S.P. received the services to which Parents believed she was entitled. *Id.* At the time of this communication, OSPI and the *N.D.* plaintiffs had not yet reached a public settlement.

**E. Parents File the Administrative Proceeding at Issue.**

On September 3, 2024, through their legal counsel, Parents filed an administrative due process complaint against the District. AR 1-4. Parents alleged that the District improperly exited S.P. from special education services in June 2023 at the conclusion of the school year in which she turned 21. AR 3-4. Parents further alleged that the District violated the IDEA when it refused to reenroll S.P. "following the directives issued by OSPI as a result of the preliminary injunction" issued in the *N.D.* case. AR 4. Parents sought a declaration that the District violated the IDEA and requested "[c]ompensatory education to make up for the services the Student was entitled to during the 2023-2024 school year." *Id.* At the time of Parents' filing, S.P. had turned 22 years old and was no longer eligible for special education services under Section 1412(a)(1)(A) of the IDEA. AR 1.

**F. OSPI and the *N.D.* Plaintiffs Settle their Dispute Regarding OSPI's Violation of the IDEA, and the *N.D.* Plaintiffs Seek Preliminary Settlement Approval.**

After Parents initiated their due process proceeding, OSPI and the *N.D.* plaintiffs reached a settlement. On October 22, 2024, the *N.D.* plaintiffs filed their Unopposed Third Motion for Preliminary Approval of Class Action Settlement and for Certification of Settlement Class before this Court. *N.D.*, Case No. 2:22-cv-01621-LK, Dkt. # 92 (attached as App. B). In their motion, the *N.D.* plaintiffs argued that: "Washington law, as currently written, only requires LEAs to



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

provide a FAPE until the end of the school year in which a student turns twenty-one." *Id.* at 3. Plaintiffs further explained that the Ninth Circuit had determined that Washington law violated the IDEA, resulting in this Court's entry of the initial declaratory judgment and injunctive relief in July 2024. *Id.* at 3-4. Plaintiffs also provided the Court a copy of the *N.D.* settlement agreement. *Id.* at Dkt. # 92-1 (attached as App. C).

Per the terms of the settlement agreement, the *N.D.* plaintiffs requested that the Court certify the settlement class to include "[a]ll students in Washington who were exited from special education services due to age before their 22nd birthday between November 11, 2020 and the present." *Id.* at Dkt. # 92 at 4. Plaintiffs further advised that the *N.D.* parties had agreed to the entry of amended declaratory relief, which expanded the Court's prior ruling to encompass the two-year time period prior to the filing of the *N.D.* lawsuit. *Id.* at 5. Plaintiffs' motion further detailed the actions OSPI agreed to take under the settlement agreement to ensure that school districts complied with the ruling that the State's law violated the IDEA. *Id.* at 5-6. This included directing school districts to 1) extend age eligibility until a student's 22nd birthday, 2) resume eligibility for each student "who had not yet turned 22 who aged out during the pendency of the lawsuit" and 3) convene IEP team meetings for students "who wish to receive an award of compensatory education." *Id*.

In support of preliminary settlement approval, plaintiffs' counsel argued that:

> While Plaintiffs had initially sought compensatory education provided directly by OSPI, as was the case in *E.R.K v. Hawaii*, [sic] 728 F.3d 982 (9th Circ. [sic] 2013), the use of individual IEP teams to determine compensatory education for class members provides an effective means of determining individual compensatory education awards and alleviates the need for the parties to potentially litigate those issues for all class members. In fact, IEP teams are better positioned to provide individualized review of each class members' [sic] needs by a team familiar with both the student and the resources available to the specific LEA.

*Id.* at 13-14. Counsel further argued that:

> OSPI's obligation to ensure LEAs convene IEP teams provides a tangible benefit to all class members, whether or not the class member ultimately makes use of those services. Further, class members who do not agree with the proposed



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

> compensatory education have available to them two different options for challenging the decision – filing for due process or submitting a Community Complaint to OSPI. With those procedural safeguards in place, Plaintiffs' counsel believes proposed [sic] settlement is fair and reasonable.

*Id.* at 14. Plaintiffs further explained that, under the settlement, "OSPI will utilize its supervisory powers, to the extent authorized by law, to ensure that LEAs provide the necessary compensatory education." *Id.* at 6. This included permitting class members to take any dispute about an IEP team's decision regarding compensatory education services back to OSPI, either through a community complaint made directly to OSPI or through an administrative due process proceeding conducted for OSPI by the Washington State Office of Administrative Hearings. *Id.* at Dkt. # 92-1 at 2 (¶12); *see also* Wash. Admin. Code § 392-172A-05025 (governing special education community complaint procedures); Wash. Admin. Code § 392-172A-05095 (governing conduct of special education due process hearings "for OSPI by the office of administrative hearings").

**G. Parents Move for Summary Judgment before the ALJ.**

Shortly after filing the *N.D.* plaintiffs' motion to approve the settlement, on November 4, 2024, Parents' counsel filed a motion for partial summary judgment before the ALJ arguing that the District violated the IDEA in June 2023 when it exited S.P. from special education services pursuant to then-existing state law. AR 57-75. Parents withdrew their claim that the District improperly refused to reenroll S.P. following the entry of the preliminary injunction in *N.D.* *Compare* AR 48 (identifying issue (a)(ii)) *with* AR 58 (withdrawing issue (a)(ii)). Parents asserted they were entitled to judgment as a matter of law on the District's liability for its purported IDEA violation, and that the only issue to be resolved at hearing was "the nature and extent of Parents' requested remedies, including appropriate compensatory education." AR 58.

**H. The *N.D.* Court Grants Preliminary Approval of the *N.D.* Settlement.**

While briefing on Parents' summary judgment motion was ongoing before the ALJ, on November 20, 2024, this Court issued an order on the *N.D.* plaintiffs' motion to approve the



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

settlement. *N.D. v. Reykdal*, No. 2:22-CV-01621-LK, 2024 WL 4839361 (W.D. Wash. Nov. 20, 2024).[4] Per the plaintiffs' request, the Court amended the definition of the provisional class and provisionally certified it pursuant to Fed. R. Civ. P. 23(b)(2). *Id.* at *7. The Court also entered the parties' requested amended declaratory judgment that:

> the state's policy of aging students out of special education at the end of the school year in which they turn 21 pursuant to Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(c) presently violates the IDEA, has violated the IDEA at all times during the two years preceding the filing of this lawsuit, and will continue to violate the IDEA absent a substantial change in the state's policies for charging and waiving tuition for its adult secondary education programs.

*Id.* at *12.

The Court further discussed the benefits class members were to receive under the settlement and accepted the plaintiffs' argument that the appropriate course of action to resolve OSPI's legal violation was to convene IEP team meetings for students in the class who wished to receive compensatory education services. *Id.* at *9. The Court further observed that class members retained the right to challenge any decision regarding proposed compensatory education, providing members with appropriate procedural safeguards. *Id.* The Court thus found the proposed relief adequate. *Id.* The Court required OSPI to direct LEAs to provide notice of the settlement to individual class members by December 6, 2024. *Id.* at *10-11.

### I. The ALJ Considers Parents' Motion.

Shortly after entry of the November 20, 2024 order in *N.D.*, the parties completed their summary judgment briefing before the ALJ. AR 589-625. The ALJ then conducted oral argument on December 20, 2024. *See generally* AR Vol. 4.[5] At argument, the ALJ asked whether S.P. was a member of the *N.D.* class, to which Parents' counsel stated she was. AR Vol. 4 at 2:56

---

[4] The Court amended its order on November 22, 2024.

[5] Volume 4 of the Administrative Record contains the audio recording of the December 20, 2024 oral argument. The District refers to portions of the argument by the approximate time in which the quoted language appears in the recording.



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

("Yes, and I'll tell you both as class counsel for that case and as the Parents' counsel here, our position is yes, she is a member of that class."); *see also* AR 639 (CL 16). Because OSPI had only recently directed school districts to provide class members with notice of the *N.D.* settlement, the District's counsel was unaware at the time of argument whether notice had yet been sent to S.P. advising her of the right to convene an IEP team meeting to discuss compensatory services. *Id.* at 53:12. Counsel agreed to obtain this information from the District and update the ALJ. *Id.*

Following oral argument, the District's counsel advised the ALJ that the District had sent notice of the *N.D.* settlement to Parents and offered to convene S.P.'s IEP team, stating:

> During the parties' prehearing conference on December 20, 2024, ALJ Diederich requested an update regarding whether the District has sent a letter offering an IEP meeting for the adult student in this matter to discuss compensatory services based on the proposed settlement reached in *N.D., et al., v. Reykdal*, Case No. 2:22-cv-01621-LK. I am writing to notify ALJ Diederich that the District has sent a letter offering an IEP meeting for the adult student in this matter to discuss compensatory services.

AR 631; *see also* AR 639 (CL 16). Parents have put forward no evidence that they accepted the District's offered IEP team meeting. The District, therefore, has not convened S.P.'s IEP team to discuss the compensatory services to which S.P. may be entitled as a member of the *N.D.* class.

### J. The ALJ Dismisses Parents' Administrative Action.

On January 13, 2025, the ALJ issued her order on summary judgment. AR 633-43. The ALJ rejected Parents' argument that the *N.D.* declaratory judgment was tantamount to a ruling that the District violated the IDEA, noting that the *N.D.* court "did not consider or make a ruling" to this effect. AR 639 (CL 18). The ALJ further rejected Parents' argument that, as of June 2023, the District was required to provide a FAPE to students until age 22 based on the Ninth Circuit's decision in *E.R.K.*, as *E.R.K.* addressed Hawaii law and "did not consider Washington law or decide whether Washington offered 'free public education' to nondisabled students between 18 and 21." AR 640 (CL 19). The ALJ also concluded that "there is no merit to the Parents' contention that the District was obligated to make its own determination of whether the state of



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Washington provided 'free public education' to nondisabled students through its adult education programs." AR 640 (CL 20). The ALJ held that "OSPI is responsible for overseeing K-12 education in Washington state," and that the District correctly argued that "it 'is not authorized to unilaterally determine that it is not required to comply with state laws and regulations.'" AR 640 (quoting AR 497).

The ALJ further found it "significant" that the District had sent a letter offering to convene S.P.'s IEP team to discuss compensatory education services consistent with the *N.D.* settlement. AR 640 (CL 22). The ALJ noted that S.P. "is already entitled to receive compensation for the FAPE denial" resulting from the State's legal violation "in an amount to be determined by her IEP team." AR 640-41 (CL 22). The ALJ thus concluded that:

> Given that the Student is already entitled to compensation for the services she missed as a result of the state's violation of the IDEA, that the Student's IEP team has already offered to meet to discuss compensatory education, and that the Student can challenge the IEP team's decision, it would not be appropriate for this tribunal to hold a due process hearing to address compensatory education *before* the IEP team has even been given a chance to consider it.

AR 641 (CL 22) (emphasis original). The ALJ rejected Parents' claims that the District violated the IDEA and dismissed Parents' action. AR 641 (CL 23).

## III. STANDARD OF REVIEW

The ALJ resolved the administrative proceeding below on summary judgment, finding that there were no material facts in dispute and that judgment was appropriate as a matter of law. AR 635-36 (CL 2-5). In IDEA appeals, questions of law are reviewed de novo. *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1207 (9th Cir. 2008) (internal citation omitted). This mirrors the standard of review applicable to rulings on summary judgment. *See, e.g., Yeager v. Bowlin*, 693 F.3d 1076, 1079 (9th Cir. 2012) ("Questions of law decided on summary judgment are reviewed de novo."). De novo review is thus appropriate. The Court may affirm the ALJ on any ground supported by the record. *See, e.g., U.S. ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1144 (9th Cir. 2004).



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

## IV. ARGUMENT

The ALJ properly concluded that the District did not violate the IDEA when it complied with existing state law in June 2023 to exit S.P. from special education services at the age of 21. As set forth below, the IDEA places upon States the obligation to develop policies and procedures to serve eligible students according to the age requirements in the law. The IDEA obligates school districts, on the other hand, to follow the State's policies and procedures in this respect. The District properly did so, and Parents' arguments that the District was required to ignore state law fail.

Parents' contention that either *E.R.K.* or *N.D.* compel a different result is without merit. *E.R.K.* addressed Hawaii state law and made no determination as to whether Washington provided "free public education" services to students over age 21 such that the exemption in the IDEA would not apply. Even if *E.R.K.* had any application given its analysis of Hawaii law, Parents are wrong that the District should have relied on that case to independently determine that Washington's law was inconsistent with the IDEA and refuse to follow it.

*N.D.* does not change this analysis. Although the *N.D.* court declared that the "state's policy" of exiting students at age 21 violated the IDEA, it made no ruling that individual school districts were liable for the State's legal violation. Nor could it given that the IDEA required school districts to follow state law in this respect. Indeed, the only obligation school districts have as a result of the *N.D.* litigation is that created as a result of OSPI's settlement with the *N.D.* plaintiffs to remedy OSPI's legal violation. It is undisputed that S.P. is a member of the *N.D.* class and has access to the benefits of that settlement. Parents' attempt to establish direct liability against the District for OSPI's legal violation, however, is without merit.

### A. The District Properly Followed State Law in Exiting S.P. from Special Education Services at the End of the School Year in which She Turned 21.

As set forth above, the IDEA contains separate provisions related to the eligibility of States and LEAs for federal assistance under the Act. 20 U.S.C. § 1412 (defining obligations for "State eligibility"); 20 U.S.C. § 1413 (defining obligations for "Local educational agency



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

eligibility”). The IDEA imposes upon States the obligation to have in place “policies and procedures” to ensure the provision of educational services to children with disabilities “between the ages of 3 and 21, inclusive,” subject to the limitation addressed above. 20 U.S.C. § 1412(a)(1)(A). The IDEA imposes a different requirement on LEAs, like the District, with respect to the age of eligibility for special education services. Section 1413 requires LEAs to have “in effect policies, procedures, and programs that are consistent with the State policies and procedures established under section 1412 of this title.” 20 U.S.C. § 1413(a)(1) (emphasis added). Thus, the IDEA requires that school districts serve students in their programs in a manner consistent with the policies and procedures their governing State adopts. As of June 2023, Washington State’s policy was that special education services extended only until a student turned 21. Wash. Rev. Code § 28A.155.020; Wash. Admin. Code § 392-172A-02000. Section 1413 of the IDEA required the District to follow the State’s policies and procedures in this respect. As such, Parents cannot establish that the District violated the IDEA when it followed state law and exited S.P. from services at the age of 21.

Although Parents quote the language of Section 1413 to the Court, they fail to understand its meaning. Dkt. # 18 at 9. They argue that “[o]ne of those State policies and procedures the District is required to have is the very statutory language in this case – 20 U.S.C. § 1412(a)(1).” *Id.* Parents thus unwittingly concede the District’s point. Section 1413 required the District to adopt policies and procedures that are “consistent with” those the State adopted under Section 1412 related to the age of eligibility for special education services. It would not be “consistent with” State policy and procedure for the District to, for example, adopt a policy that it would provide special education services to students only until age 18. By the same token, the District was not permitted—let alone required—to adopt a policy extending the age of eligibility for services from age 21 to 22. The IDEA instead required it to follow the State’s policies and procedures in this respect—policies and procedures over which it had no control.



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Parents attempt to sidestep the IDEA's plain language by arguing that Section 1412 applies equally to school districts as to the State, claiming that "school districts are the state" under Washington law. *Id.* at 10. Even were Parents correct in this regard (which they are not),[6] their argument is entirely contrary to the text of the IDEA, which defines the terms "State" and "local educational agency" as separate entities. 20 U.S.C. § 1401(31) (defining "State" as "each of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, and each of the outlying areas"); 20 U.S.C. § 1401(19) (defining "local educational agency" as the "public board of education or other public authority legally constituted within a State" for the administration of local public schools) (emphasis added). On its face, Section 1412 applies only to "States," as that term is in defined in the IDEA. Thus, it is the State that must adopt policies and procedures to ensure provision of a FAPE to eligible students consistent with the IDEA's requirements, while school districts must adopt policies and procedures that are "consistent with" those of their State set forth under Section 1412. 20 U.S.C. § 1412(a)(1)(A); 20 U.S.C. § 1413(a)(1).

Parents misrepresent the District's arguments in this respect, claiming that the District took the position before the ALJ that the "IDEA imposes obligations only on 'states,' rather than individual districts." Dkt. # 18 at 9. But the District's argument was exactly as stated above—namely that Section 1412 applies to States and not LEAs. AR 493-94 ("The IDEA requires states to ensure that a FAPE is available to all individuals with disabilities between the ages of 3 and 21, inclusive, who reside in the State.") (emphasis original). The District agrees that the IDEA also places obligations on LEAs such as the District, but the statute specifically defines those obligations in its text. In addition to Section 1413 being one such example, the IDEA is replete with others. *See, e.g.*, 20 U.S.C. § 1414(a)(1)(A) (stating that "a State educational agency, other

[6] Parents cite inapposite Washington law arising in the context of the building and maintenance of school buildings to argue that school districts are "arms of the state" for purposes of administering educational programs. Dkt. # 18 at 10 (citing *Bellevue Sch. Dist. No. 405 v. Brazier Const. Co.*, 100 Wash. 2d 776, 778, 675 P.2d 232 (1984)). School districts are independently governed entities possessing normal corporate powers. Wash. Rev. Code §§ 28A.320.010, .015. School districts are not the "State of Washington," nor executive agencies of it. Rather, the State agency responsible for the administration of public education is OSPI.



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

State agency, or local educational agency" shall conduct evaluations of students to determine their eligibility for special education services); 20 U.S.C. § 1414(a)(2)(A) (stating that a "local educational agency shall ensure" that students with disabilities are reevaluated); 20 U.S.C. § 1414(d)(2)(A) (requiring that "each local educational agency, State educational agency, or other State agency, as the case may be, shall have in effect, for each child with a disability in the agency's jurisdiction, an individualized education program"); 20 U.S.C. § 1414(d)(4)(A)(i)-(ii) (requiring the "local educational agency" to review and revise IEPs as required under the statute). The IDEA treats LEAs and States as separate entities subject to separate requirements. Parents' arguments simply fail to understand this fact. And despite repeatedly acknowledging that Section 1412 places certain obligations on States,[7] they nonetheless argue that school districts should be liable for the State's policies. Parents' arguments fail.[8]

By its terms, the IDEA requires Washington State to have in place policies and procedures that ensure the delivery of a FAPE to students deemed eligible under the law. The District, on the other hand, is required to implement its programs and policies in a manner consistent with the State's adopted policies. The District did just this when it relied on existing state law to exit S.P. from special education services in June 2023 at the conclusion of the school year in which she turned 21. The District thus complied with its obligations under the IDEA, and Parents' arguments to the contrary fail on a plain reading of the statute.[9]

---

[7] For example, Parents argue that the IDEA "requires states" to provide special education services to qualified students. Dkt. # 18 at 11 (emphasis added). They further argue that the IDEA "allows states to cut off eligibility" for students between 18 to 21 if it would be inconsistent with state law or practice to offer such services. *Id.* (emphasis added). They similarly argue that the question of whether this exemption "applies to any state depends on whether that state" provides a FAPE to nondisabled students. *Id.* at 5 (emphases added).

[8] The District has never advanced the argument that it cannot be liable for violating provisions of the IDEA that are applicable to it as Parents appear to suggest. Dkt. # 18 at 10-11. But the District cannot be found to have violated a provision of the IDEA that does not apply to it and that instead governs the conduct of the State, a wholly separate entity under the law.

[9] Parents mistakenly contend that the District "bore the burden of persuasion and proof at the Due Process stage" to establish that it was "inconsistent with state policy or practice" to offer services to students until age 22. Dkt. # 18 at 18. As the party moving for summary judgment,



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

### B. Parents' Arguments that the District was Obligated to Violate State Law in Exiting S.P. from Special Education Services Fail.

Ignoring the language of the IDEA, Parents advance several arguments to support their claim that the District was not obligated to follow state law when it exited S.P. from services. None of Parents' arguments have merit.

1. <u>*E.R.K.* did not Require the District to Ignore Existing Washington State Law.</u>

Parents first argue that the District was required to "comply with" the Ninth Circuit's decision in *E.R.K.* invalidating Hawaii's age eligibility law, claiming that this case was somehow binding on the District at the time it exited S.P. from services in June 2023. Dkt. # 18 at 16 (arguing that this case "applied equally in June of 2023 as it does today" and that the "[District]'s failure to comply with *E.R.K.* a decade after its issuance cannot be excused"). In *E.R.K.*, the plaintiffs sued the Hawaii Department of Education alleging that Hawaii law, which provided educational services to students only until the age of 20, violated the IDEA. 728 F.3d at 984-85. The court analyzed the programs the Hawaii Department of Education made available to nondisabled students and held that Hawaii offered free public education programs to such students over age 20. *Id.* at 991-92. It thus ruled that Hawaii law violated the IDEA because Hawaii did not similarly provide services to disabled students. *Id.*

In their brief, Parents do not offer any authority establishing that a judicial ruling regarding Hawaii state law was somehow binding on the District. The ALJ properly concluded that it was not. AR 640 (CL 19) ("*E.R.K.* did not consider Washington law or decide whether Washington offered 'free public education' to nondisabled students between 18 to 21."). Parents instead devote a substantial portion of their briefing to reiterating the same arguments their counsel asserted in *N.D.* as to why the Ninth Circuit's ruling in *E.R.K.* supported a determination that Washington law also violated the IDEA. *Compare* Dkt. # 18 at 12-16 *with N.D.*, W.D.

---

Parents bore the burden of establishing that the District violated the provision of the IDEA applicable to it. The ALJ properly concluded that Parents failed to do so and dismissed Parents' claims accordingly.



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

Wash. Case No. 2:22-CV-01621-LK, Dkt. # 35 at 15-17, 21-22.[10] Parents appear to argue that the District was required to independently apply *E.R.K.*'s analysis to reach its own conclusion that Washington provided "free public education" services to students over 21 at the time it exited S.P. from special education services in June 2023. Dkt. # 18 at 14. The ALJ addressed Parents' argument and properly rejected it. AR 640 (CL 20) ("[T]here is no merit to the Parents' contention that the District was obligated to make its own determination of whether the state of Washington provided 'free public education' to nondisabled students through its adult education programs."). Parents fail to establish this was error. *E.R.K.* does not support the conclusion that the District was obligated to ignore existing state law at the time it exited S.P. from special education services. Indeed, were the District to have done so, it would have violated the obligations placed upon it under Section 1413.

2. <u>The *N.D.* Decisions do not Change this Analysis.</u>

Parents next contend that the Ninth Circuit and this Court's subsequent decisions in the *N.D.* litigation compel a conclusion that the District violated the IDEA when it exited S.P. from special education services at the age of 21. Dkt. # 18 at 16-18. At the outset, at the time S.P. was exited from special education services there had been no ruling that Washington law regarding the age of eligibility violated the IDEA. Parents do not explain how the District was obligated to comply with a non-existent ruling at the time it exited S.P. Rather, existing state law provided that services in Washington extended only until age 21. The District properly followed this law when it exited S.P. in June 2023.

The subsequent ruling in *N.D.* that OSPI violated the IDEA in adopting policies that exited students at age 21 does not alter this analysis. At the time this Court enjoined the enforcement of Washington law on July 10, 2024, S.P.'s 22nd birthday was less than a month away. As the ALJ properly concluded, because S.P. did not qualify for ESY (*i.e.*, summer)

---

[10] Parents' briefing before this Court closely resembles, and in several instances, repeats verbatim the arguments the *N.D.* plaintiffs offered in their motion for preliminary injunction against OSPI. *Compare* Dkt. # 18 *with N.D.*, W.D. Wash. Case No. 2:22-CV-01621-LK, Dkt. # 35.



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

services under her IEP, the District was not obligated to offer her services for the brief period of time before she turned 22. AR 640 (CL 21); *see also* AR 497.[11] Thus, the District did not violate the IDEA either at the time it exited S.P. from services in June 2023 pursuant to state law, nor after this Court declared Washington law invalid over a year later.

This Court's later November 20, 2024 declaratory judgment also is irrelevant to the legality of the District's actions. Although the Court concluded that the "state's policy" of aging students out of special education services at age 21 violated the IDEA since November 2020, it did not rule that school districts also violated the IDEA when they followed existing state law at the time they exited students. *N.D.*, 2024 WL 4839361, at *12. Indeed, any such ruling would be inconsistent with Section 1413 of the IDEA, which required school districts to follow state law in this respect. Simply put, it was OSPI that violated the IDEA through its policy of providing special education services only until age 21, not individual school districts who properly followed the state's policy as required under the IDEA. The ALJ correctly recognized as such in her ruling. AR 639 ("The court did not consider or make a ruling on whether individual school districts violated the IDEA by complying with state policy and law in effect at the time.").

For the same reasons, Parents' argument that retroactivity principles dictate a finding that the District violated the IDEA also fails. Dkt. # 18 at 19-20. Again, although the November 2024 declaratory judgment determined that the State's policy violated the IDEA at the time S.P. was exited, this does not mean that the District also violated the IDEA when it followed state law. Rather, this is what the IDEA required it to do. 20 U.S.C. § 1413(a)(1). Nothing in the *N.D.* ruling establishes that school districts are retroactively liable for the State's legal violation, as the ALJ correctly observed in her decision. AR 639 (CL 18) ("The Parents have not offered any authority to establish that decisions invalidating RCW 28A.155.020 and WAC 392-172A-02000(2) applied retroactively <u>regarding school districts</u>.") (emphasis added). Parents appear to contend that the ALJ was obligated to make this determination in the first instance, arguing the

---

[11] As such, the District was not obligated to extend the offer of compensatory education services that it did in July 2024 in response to Parents' inquiry.



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

"reasoning and application of *E.R.K.* and *N.D.* to the facts as they existed in June 20233 [sic]" required this result. Dkt. # 18 at 19. But any such determination would be entirely inconsistent with the language of the IDEA, which imposes upon States the obligation to have in effect policies and procedures to provide a FAPE to eligible students and requires school districts to have in effect policies, procedures and programs "consistent with" those of the State. 20 U.S.C. §§ 1412(a), 1413(a). Parents further contend that "the liability that flows from violating *N.D.*'s interpretation of 20 U.S.C. § 1412(a)(1) in the facts established in this case, has *always* existed" because this is "what the law *has always required*." Dkt. # 18 at 21 (emphases original). But what the law "has always required" is that the District follow the State's policy and procedures with respect to the age of eligibility for special education services. Simply because the State's policy was later invalidated does not mean that school districts acted illegally or are otherwise liable for the State's legal violation. The ALJ did not err in determining as such.

Indeed, the only reason individual school districts have any retrospective obligation as a result of the State's violation of the IDEA is through the settlement reached between OSPI and the *N.D.* plaintiffs. In that settlement, OSPI agreed *inter alia* to "direct" school districts to reconvene the individual IEP teams of students in the defined class to consider whether the students were eligible for compensatory education services. *N.D.*, Case No. 2:22-CV-01621-LK, Dkt. # 92-1 at 1 ("OSPI shall direct LEAs to reconvene IEP teams for all students in the class who wish to receive an award of compensatory education."). The District's counsel articulated this basic point in oral argument before the ALJ:

> [T]he finding was that OSPI violated the federal law and that the statute, or the regulation, that OSPI had promulgated was invalid. And so as part of th[e] [] settlement OSPI agreed to with this class, OSPI agreed to require school districts to provide comp ed. So [] the comp ed obligation is because OSPI has imposed that onto school districts due to OSPI's violation of the law.

AR Vol. 4 at 46:18 (emphasis added). Per its statutory authority, OSPI has "supervision over all matters pertaining to the public schools of the state." RCW 28A.300.040(1). In its settlement with the *N.D.* plaintiffs, OSPI agreed to exercise these supervisory powers to ensure that school



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

districts complied with its directions. *N.D.*, Case No. 2:22-CV-01621-LK, Dkt. # 92-1 at 2 (¶ 9) ("OSPI shall ensure through the exercise of its supervisory powers, to the extent authorized by law, that LEAs comply with these directions."); *see also id.* at Dkt. # 92 at 6 (arguing OSPI was obligated to "utilize its supervisory powers, to the extent authorized by law, to ensure that LEAs provide the necessary compensatory education"). The obligation of individual school districts to remedy the State's legal violation is solely the result of <u>OSPI's agreement</u> to require that the school districts under its supervision provide compensatory education services to impacted students. It is not because individual school districts have any direct liability for the State's legal violation. The ALJ did not err in so concluding.

3. <u>Parents' Supremacy Clause Argument is Without Merit.</u>

Parents further argue that the ALJ erred in adopting the District's argument that the District "is not authorized to unilaterally determine that it was not required to comply with state law and regulations," claiming that such a determination "turns the Supremacy Clause on its head." Dkt. # 18 at 21. Parents first contend that the District could have challenged Washington law regarding the age of eligibility for services on the grounds that it impacted the District's ability to also comply with federal law. *Id.* As set forth above, however, the District's only obligation under federal law regarding the age of eligibility was that it have policies, procedures and programs that were "consistent with" Washington's policies and procedures established under Section 1412. 20 U.S.C. § 1413(a)(1). The District thus complied with the IDEA by following the State's policies in this respect.

For these same reasons, Parents' argument that the ALJ's "determination that [the District] must comply with state law necessarily implies it can ignore federal law" also fails. Dkt. # 18 at 22. On its face, the relevant federal law required the District to follow state law. 20 U.S.C. § 1413(a)(1). The District thus did not ignore federal law; it instead complied with it. Now that the State's policies and procedures have changed, the District is prospectively required to implement its programs in a manner consistent with these new policies and procedures. But



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

that does not mean that the District violated the IDEA when it followed the State's existing policies and procedures at the time it exited S.P.

The District also could not unilaterally decide that Washington's age-out provision conflicted with the IDEA and decline to follow it, as Parents appear to suggest. Dkt. # 18 at 23 ("It is simply not a response to say the district was bound by state law and could choose to implement that over the *more protective federal law* – it could not.") (emphasis original). Whether a state law is preempted by federal law is a determination that must be made by the courts. Parents cite no authority for the proposition that an entity can refuse to comply with state law based on its subjective belief that the law is preempted.[12] Nor did the District have any basis to believe that Washington's law violated the IDEA as it is not responsible for administering either of the two programs Parents identified as offering free educational services to students over age 21. Parents do not contend the contrary, instead stating that the Washington State Board for Community and Technical Colleges is responsible for administering these programs on behalf of the State. Dkt. # 18 at 6.[13] Parents' argument further fails to recognize that, at the time the District exited S.P. from special education services, the *N.D.* plaintiffs had sued OSPI on this very issue, and that OSPI disputed whether the programs it offered constituted "free" educational services such that the exemption in 20 U.S.C. § 1412(a)(1)(B)(i) would not apply in Washington. Absent a judicial ruling that Washington law violated the IDEA and could no longer be enforced, the IDEA required the District to follow state law as it existed in June 2023 when it exited S.P.

---

[12] The ALJ noted the practical problems with Parents' position at oral argument: "I don't think we want school districts to be making decisions *ad hoc* that, 'oh I think, you know, this state statute might not adhere to the IDEA so what, we aren't going to abide by it?' I mean I think that's obviously not what we would want to be happening." AR Vol. 4 at 23:30.

[13] The record is devoid of any evidence that the District had any knowledge regarding the implementation of either of the State's programs Parents identified as providing "free public education" to students over age 21. At oral argument, Parents' counsel argued only that the existence of such programs was "not a secret," apparently suggesting the District was obligated to research the State's various programs to determine whether they offered free services to students over age 21. AR Vol. 4 at 25:16. Parents cite no authority that would require the District to take such action, nor would the IDEA have permitted the District to deviate from the State's policies and procedures regarding the age of eligibility for services even had it done so.



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

from services. The IDEA did not permit—let alone require—the District to ignore state law in this respect. Parents' arguments to the contrary are wholly without merit.

4. <u>The Prior Agreement to Provide S.P. with Compensatory Services is Irrelevant to the Legal Issues before the Court.</u>

Parents further contend that the District's provision of an additional year of services to S.P. pursuant to the terms of the settlement agreement reached between Parents and the District does not absolve the District of any obligation resulting from S.P.'s exit from special education services at age 21. Dkt. # 18 at 23-24. The existence of this prior settlement is irrelevant to the issues before this Court. As detailed above, Parents cannot establish that the District violated the IDEA either at the time it exited S.P. from services in June 2023, nor after this Court enjoined enforcement of the State's policy in July 2024. Thus, the District has no liability to Parents or S.P. as a result, and Parents are not entitled to any relief in this action.

Consistent with the obligations OSPI placed on it as a result of the *N.D.* settlement, however, the District has offered to convene S.P.'s IEP team to discuss the issue of appropriate compensatory education services resulting from OSPI's violation of the IDEA. The District has not taken the position that its provision of an additional year of compensatory education services through its settlement with Parents relieves it of the obligation OSPI has placed on it through the *N.D.* settlement. The District instead stands ready to meet with Parents should they accept the District's offer to do so.

5. <u>The ALJ did not Err in Declining to Consider the Issue of S.P.'s Entitlement to Compensatory Education Services as Result of the *N.D.* Settlement before her IEP Team Considered this Issue.</u>

Parents finally argue that the ALJ erred in concluding that it was not appropriate to address the question of compensatory education services for S.P. before S.P.'s IEP team could consider this issue in the first instance. Dkt. # 18 at 25. Parents contend that the ALJ "premised her decision" in this regard on the fact that S.P. was a member of the *N.D.* settlement class. *Id.* Parents further argue that S.P.'s "membership in that class poses no barriers to continuing down



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

this avenue of relief." *Id.* But the ALJ did not conclude that S.P.'s membership in the *N.D.* class precluded Parents from bringing this action. The ALJ instead concluded that Parents failed to establish the underlying legal claim they assert in this litigation—namely that the District violated the IDEA in exiting S.P. from special education services in compliance with state law.

The ALJ also correctly noted in her decision that S.P. is entitled to relief as a member of the *N.D.* class, including the opportunity to receive appropriate compensatory education services resulting from OSPI's violation of the IDEA. AR 640-41 (CL 22). As the ALJ concluded, the determination of such services is to be made by an individual student's IEP team. *Id.*; *see also N.D.*, 2024 WL 4875055, at *4 (quoting settlement agreement provision that "compensatory education shall be awarded to students in the class according to the recommendations of their IEP teams"). Parents may not simply skip this process and seek a judicial determination regarding the appropriate amount of compensatory services S.P. may be entitled to as a result of the *N.D.* settlement. Indeed, nothing in the *N.D.* settlement agreement supports such a result. Rather, the agreement provides that class members may file a community complaint or due process proceeding before OSPI to challenge "(a) any proposal or refusal to offer compensatory education by an LEA that has reconvened a class member's IEP team at OSPI's direction pursuant to this settlement and (b) any failure by an LEA to follow OSPI's direction to reconvene their IEP teams." *N.D.*, Case No. 2:22-CV-01621-LK, Dkt. # 92-1 at 2 (¶ 12) (emphasis added). That is not what Parents seek to do here, as the ALJ correctly concluded in her decision. AR 641 (CL 22). It is undisputed that the District has offered Parents an IEP meeting, but Parents have not accepted this offer such that S.P.'s IEP team has been given the opportunity to address the issue of appropriate compensatory services for her. Once that process occurs, Parents retain the right to challenge the IEP team's decision. Parents cannot, however, short-circuit this process through this case.

Parents further argued before the ALJ that a ruling that individual school districts did not violate the IDEA would "decimate" the rights of the *N.D.* class members to the relief afforded to



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

them as a result of that litigation. AR Vol. 4 at 36:18. There is no merit to this contention. The District's obligation to comply with OSPI's directive exists irrespective of Parents' claims in this case, as the District's counsel articulated before the ALJ. AR Vol. 4 at 38:30 ("Any decision here would not have an impact on complying with that direction from OSPI."). Parents and S.P. have adequate relief available to them for the State's legal violation, namely the right to have S.P.'s IEP team determine appropriate compensatory services, and the right to challenge that decision if they disagree. This is the relief Parents' counsel negotiated on behalf of S.P. and similarly situated students. Parents' attempt to do an end-run around this settlement is without legal basis.

## V. CONCLUSION

Parents have failed to meet their burden of establishing that the District violated the IDEA when it followed state law to exit S.P. from special education services in June 2023 at the age of 21. Parents simply misunderstand the requirements the IDEA places on States and LEAs in this respect. The District is not liable for the State's violation of the IDEA, and no court has concluded the contrary. As counsel for the *N.D.* plaintiffs, Parents' counsel in this action negotiated an agreement with OSPI to resolve the issue of how to compensate students for the State's legal violation. The *N.D.* settlement provides S.P. appropriate relief in this respect, and the purpose of Parents' continued, meritless litigation against the District is unclear. Parents have failed to establish the ALJ erred in dismissing their claims, and this Court should affirm.

DATED this 12th day of June, 2025.

PACIFICA LAW GROUP LLP

By: *s/ Sarah C. Johnson*
Sarah C. Johnson, WSBA #34529
Susan B. Winkelman, WSBA #49544
*Attorneys for Seattle Public Schools*



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

# Appendix A

Honorable Lauren King

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| N.D. by and through his parents and co-guardians M.D. and T.D., on behalf of a class of those similarly situated,<br><br>Plaintiff(s),<br><br>v.<br><br>CHRIS REYKDAL, in his capacity as the SUPERINTENDENT OF PUBLIC INSTRUCTION and OFFICE OF THE SUPERINTENDENT OF PUBLIC INSTRUCTION, a Washington State agency,<br><br>Defendants. | No. 2:22-cv-01621-LK<br><br>PLAINTIFFS' MOTION FOR PROVISIONAL CERTIFICATION AND PRELIMINARY INJUNCTION<br><br>Noted for Consideration: June 2, 2023<br><br>ORAL ARGUMENT REQUESTED |



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. FACTS ........ 2

III. ARGUMENT ........ 3

A. The Court should certify a provisional injunctive class........ 4

1. The proposed provisional class satisfies the requirements of Rule 23(a)........ 4

2. The proposed provisional class satisfies the requirements of Rule 23(b)(2) for seeking injunctive relief. ........ 7

B. The Court should issue a preliminary injunction. ........ 8

1. Preliminary Injunction Standard ........ 9

2. Plaintiffs have a strong likelihood of success on the merits of their claim. ........ 9

3. Disabled students will suffer irreparable harm if their access to a FAPE is withdraw prior to their twenty-second birthdays while this suit is pending. ........ 17

4. The balance of equities and public interest tips in favor of the provisional class. ........ 18

IV. CONCLUSION ........ 19




SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

## TABLE OF AUTHORITIES

Cases

*A.R. v. Connecticut State Bd. of Educ.*,
No. 3:16-CV-01197 (CSH), 2020 WL 2092650 (D. Conn. May 1, 2020) ..............................6

*A.R. v. Connecticut State Board of Education*,
5 F.4th 155 (2nd Cir. 2021) ..............................2

*Alliance for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ..............................9, 18

*B.K. by next friend Tinsley v. Snyder*,
922 F.3d 957 (9th Cir. 2019) ..............................6, 7

*R.P.-K. ex rel. C.K. v. Dep't of Educ., Hawaii*,
272 F.R.D. 541 (D. Haw. 2011).............................. *passim*

*R.P.-K ex rel. C.K. v. Dep't of Educ., Hawaii*,
No. CIV. 10-00436 DAE, 2012 WL 1082250 (D. Haw. Mar. 30, 2012) ..............................11, 15

*Farris v. Seabrook*,
677 F.3d 858 (9th Cir. 2012) ..............................9

*Forcellati v. Hyland's, Inc.*,
2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ..............................6

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir.1998) ..............................5, 7

*Harris v. Palm Springs Alpine Ests., Inc.*,
329 F.2d 909 (9th Cir. 1964) ..............................4

*Hoeft v. Tucson Unified Sch. Dist.*,
967 F.2d 1298 (9th Cir. 1992) ..............................10

*Johnson v. City of Grants Pass*,
50 F.4th 787 (9th Cir. 2022) ..............................4

*K.L. v. Rhode Island Bd. Of Educ.*,
907 F.3d 639 (1st Cir. 2018)..............................2

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) ..............................4, 5, 8

*N.D. v. Hawaii Dep't of Educ.*,
600 F.3d 1104 (9th Cir. 2010) ..............................18, 19



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

*E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*,
728 F.3d 982 (9th Cir. 2013) ........................ *passim*

*Rodriguez v. Hayes*,
578 F.3d 1032 (9th Cir.2009) ........................ 5, 8

*Sierra Forest Legacy v. Rey*,
577 F.3d 1015 (9th Cir. 2009) ........................ 9

*Simpson v. Fireman's Fund Ins. Co.*,
231 F.R.D. 391 (N.D. Cal. 2005) ........................ 6

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ........................ 5

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ........................ 9

*Witte v. Clark Cnty. Sch. Dist.*,
197 F.3d 1271 (9th Cir. 1999) ........................ 17

*Zinser v. Accufix Rsch. Inst., Inc.*,
253 F.3d 1180 (9th Cir.), *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001) ........................ 8

<u>Statutes</u>

20 U.S.C. §1400 ........................ 10

20 U.S.C. § 1412(a) ........................ *passim*

20 U.S.C. § 1415(j) ........................ 18

20 U.S.C. § 1400 ........................ *passim*

RCW 28B.50.535 ........................ 17

Wash. Rev. Code § 28A.155.020 ........................ *passim*

Wash. Rev. Code § 28B.50.535(1) ........................ 13

Wash. Rev. Code § 28B.50.536 ........................ 13

<u>Other Authorities</u>

Fed. R. Civ. P. 23 ........................ *passim*

Fed. R. Civ. P. 65 ........................ 1



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

HM Genova *et al.*, *Effects of School Closures Resulting From COVID-19 in Autistic and Neurotypical Children*, Front. Educ. 6:761485 (2021), https://www.frontiersin.org/articles/10.3389/feduc.2021.761485/full ....................................18

Report Card Enrollment 2022-23 School Year, https://data.wa.gov/education/Report-Card-Enrollment-2022-23-School-Year/dij7-mbxg. ....................................5

Wash. Admin. Code § 131-48-020 ....................................13

Wash. Admin. Code § 392-121-031 ....................................2

Wash. Admin. Code § 392-172A-01175 ....................................4

Wash. Admin. Code § 392.172A.0200(2)(c) .................................... *passim*



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

## I. INTRODUCTION

Plaintiffs N.D. and E.A., the named plaintiffs in this putative class action, move under Rules 23 and 65 of Federal Rules of Civil Procedure for an order provisionally certifying a class of disabled students at risk of prematurely "aging out" of their special educational programs, and for a preliminary injunction that would keep those students in those programs during the pendency of this litigation until they reach the age of twenty-two. The members of the proposed provisional class will be irreparably harmed if Washington's policy of terminating special education services at the end of the school year in which a student turns twenty-one—in clear violation of settled Federal law—is not enjoined.

This putative class action seeks a declaration that the Office of the Superintendent of Public Instruction ("OSPI") and the Superintendent of Public Instruction Chris Reykdal (collectively "Defendants") have failed to discharge their obligations under the Individuals with Disabilities Education Act ("IDEA") to ensure that school districts in the State of Washington provide a "free appropriate public education" ("FAPE") to "all children with disabilities ... between the ages of 3 and 21, inclusive," 20 U.S.C. § 1412(a)—*i.e.*, until their twenty-second birthdays, *see E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*, 728 F.3d 982, 986 (9th Cir. 2013). Plaintiffs also seek a final injunction requiring Defendants to fulfill that obligation going forward and to provide compensatory education for class members who have been denied a FAPE as a result of such failure in the past.

The Defendants and the local educational agencies ("LEAs") (*i.e.*, school districts) they supervise currently stop providing a FAPE to disabled students at the end of the school year in which they turn twenty-one pursuant to Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.0200(2)(c). At the same time, the State of Washington provides high-school completion and equivalency programs to non-disabled students over the age of sixteen at public expense. But long-standing and controlling precedent holds that a state may not terminate the eligibility of disabled students to receive a FAPE before their twenty-second birthdays unless it *completely refrains* from providing free secondary education to non-disabled students of the same age. *E.R.K.*,



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

728 F.3d 992; *accord K.L. v. Rhode Island Bd. Of Educ.*, 907 F.3d 639 (1st Cir. 2018); *A.R. v. Connecticut State Board of Education*, 5 F.4th 155 (2nd Cir. 2021). The policy that the Plaintiffs seek to enjoin is a blatant violation of the IDEA.

The Plaintiffs meet all the requirements for provisional class certification to enjoin this illegal conduct pending final judgment in this suit. Absent such relief, disabled students who are twenty-one on August 31, 2023, will lose their special education services in violation of the IDEA when the new school year begins on September 1.[1] Money damages are not available for violations of the IDEA and could not remedy the behavioral regression, learning loss, and social dislocation that these students will suffer if the services that the IDEA guarantees to them are prematurely withdrawn. Given the strong likelihood of success on the merits and the irreparable harm that will follow if an injunction is not granted, this Court should provisionally certify a class of students at risk of aging out of their special education programs at the end of the 2022–2023 school year, enjoin OSPI from enforcing the age-out provisions in Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.0200(2)(c), and direct OSPI to take all actions necessary to ensure those students are able to continue attending their programs pending this litigation or until reaching the age of twenty-two.

## II. FACTS

Plaintiff E.A. is currently a special education student who is receiving a FAPE pursuant to the IDEA from a public school district in the State of Washington. P.A. Decl. ¶ 2. E.A. will turn twenty-one in the summer of 2023. P.A. Decl. ¶ 3. E.A.'s current Individualized Education Plan ("IEP") provides for him to receive services through June 9, 2023, with the IEP team in the process of planning E.A.'s extended school year services for the summer of 2023. P.A. Decl. ¶ 3. At that time his eligibility to continue to receive a FAPE from his school district will terminate under Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.0200(2)(c).

[1] Wash. Admin. Code § 392-121-031 defines "school year" as "the annual period commencing on the first day of September of one calendar year and ending the last day of August of the ensuing calendar year…."



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

Plaintiff N.D. was a special education student who received a FAPE through a placement by a public school district in the State of Washington at a residential school out of state until his placement was terminated August 31, 2022, shortly after he turned twenty-one. T.D. Decl. ¶¶ 3-4. N.D. never received a high school diploma. T.D. Decl. ¶ 5. His residential placement and access to a FAPE were terminated solely because his age made him ineligible under the same statute and regulation. T.D. Decl. ¶ 6.

After the termination of N.D.'s access to a FAPE through his prior residential placement, N.D. moved to a different school district. T.D. Decl. ¶ 7. There, T.D. requested that N.D. be provided a FAPE through his local public schools. T.D. Decl. ¶ 8. The new school district specifically identified N.D.'s age and unspecified "regulations" for denying him a FAPE, even though he had not yet turned twenty-two. T.D. Decl. ¶ 9.

At the same time that Washington public schools have been respectively denying or threatening to deny a FAPE to N.D. and E.A. because of their age, the State of Washington has offered at least two programs that provide secondary education to non-disabled students of the same age at public expense. The first, called High School Plus ("HS+"), allows students to obtain a regular high school diploma by taking adult basic education courses and college classes that substitute for high-school requirements. SBCTC Dep., Hagel Decl. Ex. 1, at 19:6-8 & 20:10–15; *see also* Hagel Decl. Ex. 2. The second provides classes to prepare for the GED® high-school equivalency examination. SBCTC Dep. 26:8–20 & 30:17–20. Apart from a nominal fee that is frequently waived, state and federal taxpayers provide funding for these programs. *Id.* 16:23–24.

## III. ARGUMENT

The Court should provisionally certify a class for purposes of enjoining the Defendants from denying a FAPE to students who have not yet reached the age of twenty-two pending final judgment in this suit. There is no reasonable dispute that the State of Washington provides free public education to non-disabled adults. A preliminary injunction is therefore warranted because Plaintiffs are not just likely but reasonably certain to prevail on the merits of their claim under *E.R.K.* and would be irreparably harmed if their special education services were terminated prematurely.



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

**A. The Court should certify a provisional injunctive class.**

A district court may provisionally certify a class that meets the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2) for purposes of granting preliminary injunctive relief. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). The class in this case meets those requirements at this stage for the same reasons that the district court certified the class in *E.R.K. See R.P.-K. ex rel. C.K. v. Dep't of Educ., Hawaii*, 272 F.R.D. 541, 551 (D. Haw. 2011).

***1. The proposed provisional class satisfies the requirements of Rule 23(a).***

"To satisfy the requirements of Rule 23(a), a putative class must meet four criteria: (1) numerosity of the class members; (2) commonality of the factual and legal issues; (3) typicality of the claims of the named plaintiffs; and (4) adequacy of representation." *R.P.-K.*, 272 F.R.D. at 547. The proposed provisional class meets each of these requirements.

*a. The proposed class is sufficiently numerous.*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964). "When the exact number of class members cannot be ascertained, the court may make common sense assumptions to support a finding of numerosity." *R.P.-K.*, 272 F.R.D. at 547 (quotation omitted). While "[t]here is no specific number of class members required, classes of more than sixty are sufficiently large." *Johnson v. City of Grants Pass*, 50 F.4th 787, 803 (9th Cir. 2022). In the case of "learning-disabled youth" who are "extremely unlikely [to] bring individual actions," forty or fewer class members may suffice. *R.P.-K.*, 272 F.R.D. at 548.

The numerosity requirement is more than satisfied here. According to Defendants' interrogatory responses: "there are approximately 154 students who had IEPs, turned 21 before the beginning of the next school year, were receiving special education services as defined in Wash. Admin. Code § 392-172A-01175 when the student exited the reporting school district, exited the reporting school district in June through August of the 2020-21 or 2021-22 school years, and for whom the reporting school district assigned an exit code" relating to the student's age. Defs.' Supp.



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

Resp. to Pls.' Interrogs., Hagel Decl. Ex. 3, at 8. There are currently 12,815 students with disabilities identified as being in the 12th grade cohort enrolled in public schools in Washington who are at risk of being affected by the challenged policy in the next few years.[2]

There can be no dispute that at least sixty and probably many more students who are currently receiving a FAPE in Washington public schools will be twenty-one on August 31, 2023, and therefore subject to having their special education services terminated on September 1 under Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.0200(2)(c) despite not having reached age twenty-two. The proposed provisional preliminary injunctive class in this case thus meets the prerequisite of numerosity for the same reasons as the class of students in *E.R.K.*

*b. There are questions of law and fact common to the proposed class.*

Rule 23 provides that there must be "questions of law or fact common to the class" for a class to be certified. Fed. R. Civ. P. 23(a)(2). Commonality is construed permissively. *Rodriguez v. Hayes*, 578 F.3d 1032, 1048 (9th Cir.2009) (citation omitted). "[A]ll questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts." *Meyer*, 707 F.3d at 1041 (quotation omitted). The common issue need only be "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011).

As in *E.R.K.*, whether the regulation and statute at issue are "sufficient to override the IDEA's default age limitations in 20 U.S.C. § 1412(a) … is not just a significant issue common to the class, but it is the *only* issue in this litigation." *R.P.-K.*, 272 F.R.D. at 548 (original emphasis) (quotation omitted); *accord A.R. v. Connecticut State Bd. of Educ.*, No. 3:16-CV-01197 (CSH), 2020 WL 2092650, at *6 (D. Conn. May 1, 2020) ("It is evident that A.R.'s contention is common

[2] *See* Report Card Enrollment 2022-23 School Year, https://data.wa.gov/education/Report-Card-Enrollment-2022-23-School-Year/dij7-mbxg.



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

to all members of the purported class, which encompasses individuals in the state of Connecticut who—but for turning 21—would have qualified for a free appropriate public education under the IDEA until reaching the age of 22."). For the same reason, "[i]t is difficult to conceive of litigation that could present questions more common than those at issue here." *R.P.-K.*, 272 F.R.D. at 548.

*c. The named plaintiffs' claims are typical of the those of the absent class members.*

Rule 23(c)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(c)(3). "The named plaintiff's representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 969–70 (9th Cir. 2019) (quotation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *B.K.*, 922 at 970 (quotation omitted). Typicality is a permissive standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005). Typicality is satisfied when the named plaintiffs' and absent class members' "injuries arise from a common wrong." *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *10 (C.D. Cal. Apr. 9, 2014).

In *E.R.K.*, the district court found that claims of named plaintiffs who "were denied a FAPE" on grounds of a statutory age limit were not just "necessarily typical of the entire class … of special education students who have been or could be denied FAPE" for the same reason, "but nearly identical." *R.P.-K.*, 272 F.R.D. at 549. The same is true of the claims of E.A. and N.D. with respect to the proposed provisional injunctive class here. On their face, the regulation and statute at issue will operate to terminate E.A.'s eligibility to receive a FAPE on September 1, 2023, in the same way that it operated to terminate N.D.'s FAPE on September 1, 2022. T.D. Decl. ¶ 4. On September 1 of this year, members of the proposed provisional class of students who will be twenty-one on August 31, 2023, and are currently receiving a FAPE from any school district in the state of



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

Washington, will suffer the same injury because of the same generally applicable course of conduct that harmed N.D. and threatens E.A. This is the essence of typicality under Ninth Circuit law. *See B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 970 (9th Cir. 2019) ("By defining her claim based on the risk of harm caused by these policies—a cognizable constitutional injury under our precedent—B.K. has demonstrated that class members have similar injuries, based on conduct that is not unique to her, and caused by the same injurious course of conduct.").

*d. The named plaintiffs are adequate class representatives.*

The final prerequisite to class certification under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). As in *E.R.K.*, "the named plaintiffs are represented by their parents who, according to their declarations, have all actively protected the rights of their children per the IDEA." *R.P.-K.*, 272 F.R.D. at 550; *see* P.A. Decl. ¶ 7 and T.D. Decl. ¶ 8.

Also as in *E.R.K.*, "the focus of this litigation is not on the individual needs of any one student and whether these needs entitle them to a FAPE," but whether the challenged age-out policy "provides sufficient independent grounds to deny a FAPE irrespective of their unique needs." *Id.* It is thus equally unlikely "that in resolving this discrete legal issue a conflict would or could develop among the named Plaintiffs …." *Id.* Plaintiffs' counsel likewise have "significant experience in class action, civil rights and disability law litigation." *Id.*; *see* Crosby Decl.; Hruska Decl. The adequacy requirement of Rule 23(a)(4) is therefore met in this case as well.

**2. *The proposed provisional class satisfies the requirements of Rule 23(b)(2) for seeking injunctive relief.***

When the requirements of Rule 23(a) are met, certification under Rule 23(b)(2) is appropriate when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). "Class certification under Rule 23(b)(2)" requires that "the primary relief sought is declaratory or injunctive." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir.), *opinion amended on denial of reh'g,* 273 F.3d 1266 (9th Cir. 2001). "The rule does not require … examin[ing] the viability or bases of class members' claims for declaratory and injunctive relief, but only to look at whether class members seek uniform relief from a practice applicable to all of them." *Rodriguez v. Hayes*, 578 F.3d 1032, 1051 (9th Cir. 2009), *opinion amended and superseded on other grounds,* 591 F.3d 1105 (9th Cir. 2010). "It is sufficient to meet the requirements of Rule 23(b)(2) that class members complain of a pattern or practice that is generally applicable to the class as a whole." *Id.* (quotation and alteration omitted). "The plain language of FRCP 23(b)(2) does not restrict class certification to instances when final injunctive relief issues; it only requires that final injunctive relief be appropriate." *Meyer*, 707 F.3d at 1043.

Once again, certification of the provisional class under Rule 23(b)(2) is proper here for the same reasons that the class was certified in *E.R.K.* Here, as there, apart from attorneys' fees, the Plaintiffs are seeking exclusively declaratory and injunctive relief. *Compare* Dkt. 31 at 14 (Amended Class Action Complaint) *with R.P.-K.*, 272 F.R.D. at 551 (quoting prayer in *E.R.K.*). The injunctive relief sought in *E.R.K.* included "[e]njoining the DOE from failing to provide FAPEs to Plaintiffs and the members of the class until they reach the age of 22." *Id.* The Plaintiffs here are seeking the same relief: to "[e]njoin OSPI from allowing the termination of FAPE" to "members of the Plaintiff Class who have not yet turned 22" based on the challenged policy. Dkt. 31 at 14. The Court should provisionally certify a class consisting of those class members for purposes of granting this injunctive relief on a preliminary basis.

**B. The Court should issue a preliminary injunction.**

The Court should enter a preliminary injunction because the plaintiff class is reasonably certain to prevail on the merits and will suffer irreparable harm from termination of their existing FAPEs while this lawsuit is pending.



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

**1. *Preliminary Injunction Standard***

A party seeking a preliminary injunction must establish four elements: (1) they are "likely to succeed on the merits," (2) they will likely "suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

The Ninth Circuit has also articulated an alternative "sliding scale" approach pursuant to which the first and third *Winter* factors are analyzed on a continuum; under such standard, a weaker showing on the merits, combined with a stronger demonstration on the balancing test, might warrant preliminary injunctive relief, assuming the second and fourth *Winter* elements are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). Under this "sliding scale" method, the movant need only raise "serious questions going to the merits," but the balance of hardships must tip "sharply" in the movant's favor. *Id.* at 1131-32; *see also Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012). The purpose of a preliminary injunction is not an adjudication on the merits, but to preserve the status quo and prevent irreparable loss before judgment. *Sierra Forest Legacy v. Rey,* 577 F.3d 1015, 1023 (9th Cir. 2009).

**2. *Plaintiffs have a strong likelihood of success on the merits of their claim.***

The Plaintiffs are reasonably certain to prevail on the merits of their claims because the Ninth, Second, and First Circuits have each held that states that provide free or subsidized adult basic education programs like those in the State of Washington must also provide a FAPE to disabled students until they turn twenty-two.

*a. A state must provide a FAPE to disabled students until age twenty-two if it provides "free public education" to non-disabled students of the same age.*

The IDEA (previously known as the Education of the Handicapped Act), 20 U.S.C. § 1400 *et seq.*, was enacted in 1975. The primary purpose of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). In enacting the IDEA,



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

Congress found that "[i]mproving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." 20 U.S.C. §1400(a)(1).

The IDEA "is a comprehensive educational scheme, conferring on disabled students a substantive right to public education and providing financial assistance to enable states to meet their educational needs." *Hoeft v. Tucson Unified Sch. Dist*., 967 F.2d 1298, 1300 (9th Cir. 1992). The IDEA conditions the receipt of that financial assistance on the states' maintenance of policies and procedures that ensure a FAPE is available to all children with disabilities residing in the state between the ages of three and twenty-one, "inclusive" (i.e. until their twenty-second birthday). 20 U.S.C. § 1412(a)(1)(A); *see E.R.K.,* 728 F.3d at 986 ("a student's eligibility for IDEA services ordinarily ends on his twenty-second birthday").

The IDEA does allow for an exception to the general rule that students be educated until their twenty-second birthday if the state also limits all public education generally:

> The obligation to make a [FAPE] available to all children with disabilities does not apply with respect to children—
>
> > (i) Aged 3 through 5 and 18 through 21 in a State to the extent that its application to those children would be inconsistent with State law or practice, or the order of any court, respecting the provision of public education to children in those age ranges …

20 U.S.C. § 1412(a)(1)(B). Almost a decade ago, the Ninth Circuit held, "we interpret 1412(a)(1)(B)(i) to mean that [states] cannot deny special education to disabled students aged 18 through 21 if in fact it provides 'free public education' to nondisabled students in that range of ages." *E.R.K.,* 728 F.3d at 987.

*b. State-funded secondary-education is "free public education" under E.R.K.*

*E.R.K.* involved a challenge to a Hawaii law, "Act 163," that barred students from attending public school after the last day of the school year in which they turned twenty. *See id.* at 984. Plaintiffs in that case, a class action, alleged that Act 163 violated 20 U.S.C. § 1412(a)(1)(A), the



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

same statute at issue here, because Hawaii ran a system of secondary schools that allowed nondisabled students over twenty years old to attend, rendering the exception in 20 U.S.C. § 1412(a)(1)(B)(i) inapplicable. *See id.* at 986.

Although Act 163 applied to both general education and special education students attending "conventional" public high schools, the Hawaii Department of Education ("DOE") also operated "a network of adult-education schools called the Community Schools for Adults" that Act 163 explicitly did not apply to. *Id.* at 985. Instead, those schools were open to any person eighteen and older who lacked a high school diploma (or sixteen and older if the student had formally withdrawn from high school). *Id.* These community schools were described as "tuition-free opportunities for adults and out-of-school youth to earn a high school diploma[.]" *Id.* (alteration in original). Although described as "tuition-free," there were some costs associated with attending the community schools, including "nominal fees for books, testing, and other miscellaneous expenses." *R.P.-K ex rel. C.K. v. Dep't of Educ., Hawaii*, No. CIV. 10-00436 DAE, 2012 WL 1082250, at *3 (D. Haw. Mar. 30, 2012) (district court Findings of Facts and Conclusions of Law in *E.R.K.*).

The Community Schools offered two diploma programs: "the General Education Development ('GED') program and the Competency Based program ('CB')." 728 F.3d at 985. The GED program "prepares students to take the GED test, a national standardized high school equivalency exam." *Id.* The CB program "is a three-semester life-skills program designed to help students become '(1) Functionally literate adults; (2) Productive and contributing citizens/community members; (3) Effective family members; and (4) Productive workers.'" *Id.*

Because students older than twenty could attend those programs, "the fate of Act 163 [came] down to whether the diploma programs offered by the Community Schools for Adults constitute 'free public education.'" *Id.* at 987. The Ninth Circuit defined "free public education" using a "a bipartite definition: a 'free public education' is one that is 1) provided at public expense, under public supervision and direction, and without charge; and 2) involves preschool, elementary, or secondary education." *Id.* at 988.



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

In ruling that the GED and CB programs constituted "free public education" the Ninth Circuit held "the GED and CB programs clearly satisfy the first prong of the definition" because they were provided at public expense and are "free to students." *Id.* In analyzing the second prong—whether the programs constitute "secondary education"—the Ninth Circuit looked to how the DOE marketed their community schools for adults and remarked: "the DOE's characterization of the adult school programs comports with the common-sense view that high school diploma programs are quintessentially secondary education, whether they are offered to teenagers or adults." *Id.* The Court further stated, "high school diploma programs are paradigmatic examples of secondary education." *Id.* at 989 n. 5.

The court also specifically rejected the district court's conclusion that "the GED and CB programs 'do not provide the equivalent of a secondary school education' because the 'educational curriculum, requirements, and experience of the adult programs are dramatically different from those of a traditional public high school.'" *Id*. at 990. Instead, the court held "in light of the variety of specialized secondary education the IDEA makes available to disabled students, it is simply implausible that the phrase 'free public education' in the § 1412(a)(1)(B)(i) exception refers narrowly to a 'conventional' high school curriculum." *Id.*

Having ruled that CB and GED programs constituted "free public education," the court concluded that "if Hawaii legislators wish to shut the door to students once they turn 20, that is their prerogative—but they must shut them to *all* students, regardless of disability. Act 163 reinstates the benighted two-track system that prevailed before the IDEA was passed, when disabled students were often 'totally excluded from schools[.]'" *Id.* at 992 (emphasis and alteration in original). Therefore, "the State of Hawaii offers public education to nondisabled students between the ages of 20 and 22. As long as it continues to do so, the IDEA requires the state to continue to provide a free and appropriate public education to disabled students who have not yet obtained the age of 22." *Id.* at 993.



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

*c. Washington provides "public education" to non-disabled adults.*

Plaintiffs here are asserting the identical claim raised in *E.R.K* in challenging OSPI's enforcement of Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.0200(2)(c), which excludes disabled students who have not yet reached the age of twenty-two from receiving a FAPE. As in *E.R.K,* the question is whether Washington provides "free public education" to students twenty-one years or older through its adult basic education programs. There can be no reasonable dispute that it does.

Washington law specifically provides for the provision of secondary education to students of all ages. Washington's public community and technical colleges are empowered to "issue a high school diploma or certificate" to adults who meet the requirements for high school completion. Wash. Rev. Code § 28B.50.535(1). The requirements for high school completion are adopted by "the superintendent of public instruction and the state board of education." *Id.* Additionally, the Washington State Board for Community and Technical Colleges (SBCTC) is charged with adopting rules governing the eligibility of persons over sixteen "to take a test to earn a high school equivalency certificate, rules governing the administration of the test, and rules governing the issuance of a high school equivalency certificate to persons who successfully complete the test." Wash. Rev. Code § 28B.50.536(1).[3] "A high school equivalency certificate is a certificate issued jointly by the college board and the office of the superintendent of public instruction that indicates that the holder has attained standard scores at or above the minimum proficiency level prescribed by the college board on a high school equivalency test." Wash. Rev. Code § 28B.50.536(2).

SBCTC implements the above statutes and regulations, in part, through its "Basic Education for Adults" (BEdA) program, which it described as "the umbrella term that we use for all of the programs that are, [] funded and overseen [] through the [Workforce Innovation and opportunity

[3] Pursuant to this statutory direction, the Washington Administrative Code provides rules setting forth "policies and procedures governing the administration of the high school equivalency test and the issuance of high school equivalency certificates for persons who have not graduated from high school and are not enrolled in a regular or alternative high school program." Wash. Admin. Code § 131-48-020.



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

Act] Title Two dollars and that structure." SBCTC Dep., Hagel Decl. Ex. 1, at 18:8–12. SBCTC confirmed that "secondary education is one of the core services that basic education for adults through SBCTC provides." *Id.* at 89:14–15. SBCTC estimated that approximately 83% of the funding for the BEdA programs comes from the state, and 17% from the federal government. *Id.* at 16:23–24. The requirements for enrolling in BEdA programs are minimal:

> To participate in Basic Education for Adults in Washington State, an eligible individual is someone who is:
>
> A. At least 16 years of age;
>
> B. Not enrolled or be required to be enrolled in secondary school under State law; and
>
> C. Who also:
>
> a. Lacks sufficient mastery of basic educational skills to enable the individuals to function effectively in society;
>
> b. Does not have a secondary school diploma or its recognized equivalent, and has not achieved an equivalent level of education; [or]
>
> c. Is an English language learner[…].

Hagel Decl. Ex. 4, at EDU000016; *see also* SBCTC Dep. 71:10–15 (agreeing that the last categories are disjunctive, and that "any one of those three qualifies someone for service").

Two of SBCTC's BEdA programs are the High School+ (HS+) program, and the GED program, alternatively referred to as HSE (high school equivalency). The HS+ program is described as "the state's competency-based high school diploma program." *Id.* at 19:6–8. Successful completion of the HS+ program "renders a high school diploma." *Id.* at 20:10–11. The high school diplomas awarded by HS+ are the same as those awarded by secondary schools in Washington. *Id.* at 36:22–25 & 37:1. According to SBCTC's website, "adults demonstrate competencies in reading, writing and math contextualized in science, history, government, occupational studies, and digital literacy." Hagel Decl. Ex. 5, at EDU000014. SBCTC does not administer the HS+ program, however. Instead, the program is provided by the 34 community and technical colleges in Washington, but those colleges are monitored by SBCTC to ensure compliance with the



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

requirements promulgated by OSPI and the State Board of Education. SBCTC Dep. 25:22–25 & 26:1-5. The colleges that run the HS+ programs fund those programs through their own funds allocated to them by the Washington Legislature, and may charge $25 for "tuition" each quarter, although that amount can be waived, as discussed below. *Id.* at 39:8–9 & 40:14–16.

SBCTC also supervises the community college's GED preparation classes. *Id.* at 26:8–13. The GED is a four-part test that once successfully completed, shows that the student has "the same level of knowledge as a high school graduate." Hagel Decl. Ex. 7, at EDU000007. SBCTC claims that "most colleges and employers accept the GED credential as being equivalent to a high school diploma. Earning a GED credential opens doors to college and better jobs." *Id.* The GED is recognized by the state of Washington as equivalent to a high school diploma. SBCTC Dep. 30:17–20.

*d. Adult "public education" in Washington is provided "free of charge."*

The sole potential distinction between the types of adult education offered in *E.R.K.* and this case is the $25 the community colleges charge some students for their BEdA programs. However, that distinction does not defeat Plaintiffs' claim. The $25 is wholly retained by the college, with none of that money returning to the state. *Id.* at 41:3–6. And although labeled as "tuition," the community colleges do not need to spend the $25 on instruction—the money must merely be "reinvested" in the program. *Id.* at 51:1–25. For example, the $25 can "could be used to purchase supplies. They could be used to fund wraparound services for students… Perhaps maybe a bus pass or assistance with a textbook." *Id.* Thus, the $25 is akin to the "nominal fees" described in *R.P.-K*, 2012 WL 1082250, which did not stand in the way of the Ninth Circuit referring to the programs as "without charge." *E.R.K,* 728 F.3d at 988.

Even if a state could avoid its obligations under the IDEA by charging a nominal fee for adult secondary education, it would have to charge all adults *without exception* under *E.R.K. See id.* at 992 ("If Hawaii legislators wish to shut the door to students once they turn 20, that is their prerogative —but they must shut them to *all* students, regardless of disability." (original emphasis)). Washington does not do so. SBCTC recognizes that "many colleges waive that fee altogether for



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

students who are unable to pay." Hagel Decl. Ex. 7, at EDU000040. It *mandates* that there be a process for waiving the tuition payment. SBCTC Dep. 43:15–19. In fact, tuition was waived for *nearly half* (42%) of students who have accessed BEdA classes during the 2021–2022 school year. Hagel Decl. Ex. 8, at EDU000176. Although SBCTC does not require specific criteria for waiving tuition, SBCTC confirmed that criterion could be an inability to pay. SBCTC Dep. 44:2–10. SBCTC further confirmed that:

> The two programs we've talked about – High School+ and GED preparation provided by the community and technical colleges and the five providers under the [WIOA] Title Two – *those services can be offered free of charge if the student asks for and qualified for a waiver.*

*Id.* at 46:11–19. Thus, adult students in Washington, regardless of whether they have a disability, do in fact receive free, public, secondary education beyond the age of twenty-one.

Applying the Ninth Circuit's bipartite definition of "free public education"—1) provided at public expense, under public supervision and direction, and without charge; and 2) involv[ing] preschool, elementary, or secondary education"—both the HS+ and GED programs qualify as free public education. Both programs are funded through the Washington Legislature and the federal government (*id.* at 16:23–24), both programs are provided through the 34 public community and technical colleges under the supervision of the SBCTC (*id.* at 26:8–20), and both are provided to students without charge in certain circumstances, such as if a student is unable to pay the $25 per quarter "tuition" (*id.* at 46:11–19).

Regarding the second prong, these programs are also "quintessentially secondary education" because they, like Hawaii's programs, provide for high school diplomas or their equivalent, and as SBCTC put it "secondary education is one of the core services that basic education for adults through SBCTC provides." *Id.* at 89:14–15. Notably, the GED program offered by Washington community schools prepares students for the exact same exam taken by students in Hawaii.



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

Because Washington provides "free public education" to students beyond their twenty-first birthday, the potentially relevant exception contained in 20 U.S.C. § 1412(a)(1)(B), which allows states to limit eligibility beyond 18 years, cannot and does not apply. Providing education to students older than twenty-one years is not just "consistent" with state law, it is in fact *required* by state law. RCW 28B.50.535 (requiring community colleges to award high school diplomas if a student "satisfactorily" meets the requirements for high school completion). Therefore, the default rule requiring Washington to provide a FAPE to disabled students "between the ages of 3 and 21, inclusive ...." must apply. To the extent Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.0200(2)(c) limits the state's obligation to provide a FAPE to students younger than twenty-two, that limitation violates the IDEA and has served to deny students the FAPE they are entitled to. As such, the Plaintiffs have a strong likelihood of success on the merits.

**3. *Disabled students will suffer irreparable harm if their access to a FAPE is withdrawn prior to their twenty-second birthdays while this suit is pending.***

By their terms, Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.0200(2)(c) will terminate E.A.'s and the provisional class members' access to a FAPE on August 31, 2023, even though they will not yet have turned twenty-two. N.D.'s experience in having his FAPE terminated by one school district at the end of the previous school year, and refused by another school district after this school year began, shows that this harm is imminent and non-speculative or conjectural. There is no remedy available at law to compensate E.A. and the provisional class for the resulting injury, as money damages are not available under the IDEA. *Witte v. Clark Cnty. Sch. Dist*., 197 F.3d 1271, 1275 (9th Cir. 1999), (overruled on other grounds by *Payne v. Peninsula Sch. Dist*., 653 F.3d 863 (9th Cir. 2011)).

The Ninth Circuit has long recognized that disruption of special education services causes irreparable harm. *See N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.,* 600 F.3d 1104, 1112 (9th Cir. 2010) ("N.D. demonstrated regression in his behavior, increased difficulty with activities, and outbursts of frustration and violence. The other children showed regression in behavior leading to increased aggression."). E.A. suffered similar injuries when his



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

services were disrupted during the pandemic. P.A. Decl. ¶¶ 8-15. Scholarly literature and common sense confirm that such harms are foreseeable and widespread.[4] A preliminary injunction is warranted directing the Defendants to ensure that the LEAs it supervises refrain from exiting students from special education prior to their twenty-second birthdays based on the challenged regulation and statute to prevent E.A. and the provisional class members from suffering such harms.

**4. *The balance of equities and public interest tips in favor of the provisional class.***

The remaining factors tip in favor of E.A. and the provisional class. While E.A. and provisional class members are likely to suffer irreparable harm if injunctive relief is not granted, OSPI and the LEAs it supervises must simply maintain the status quo and continue to educate the students already enrolled in their classes as required under their IEPs. Indeed, a "stay-put" order maintaining a child's current education placement is mandatory during the pendency of individual proceedings to enforce rights under the IDEA. *See* 20 U.S.C. § 1415(j). Plaintiffs are bringing this motion well before the end of the 2022-2023 school year and on the original deadline for seeking class certification in order to allow OSPI and the LEAs time to plan for next year. OSPI has been aware of this issue at least since Plaintiffs' counsel brought it to their attention as early as May 2022. Hruska Decl. ¶¶17–18 & Ex. 1. Indeed, they could have avoided this suit entirely if they had simply followed the law when *E.R.K* was decided in 2013. Even if the merits did not weigh so definitively in the Plaintiffs' favor, the balance of the equities strongly favors issuance of a preliminary injunction under the Ninth Circuit's alternative "sliding scale" test. *See Alliance for the Wild Rockies*, 632 F.3d at 1131–35.

A preliminary injunction would do nothing more than require Defendants to comply with their legal obligations under the IDEA. There is a clear public interest in the state complying with

[4] *See, e.g.*, HM Genova *et al.*, *Effects of School Closures Resulting From COVID-19 in Autistic and Neurotypical Children*, Front. Educ. 6:761485 (2021), https://www.frontiersin.org/-articles/10.3389/feduc.2021.761485/full (finding that "parents of children with autism were more than three times as likely to report negative changes in their child compared to parents of neurotypical children" including "concerns related to hygiene, behavioral regression, therapy disruption, meltdowns, and returning to school.").



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

the law. *See* N.D., 600 F.3d 1113 ("…it is obvious that compliance with the law is in the public interest"). For those reasons, the balance of equities and public interest tip in favor of allowing disabled students to continue to access the FAPE they are entitled to while this suit is pending.

## IV. CONCLUSION

The policy of the State of Washington to end special education for twenty-one-year-old students with disabilities while providing high-school equivalency courses to non-disabled students of the same age at public expense is a brazen violation of the IDEA under long-standing Ninth Circuit law. Plaintiffs respectfully ask the Court to enjoin the Defendants from continuing to enforce their illegal policy while they drag out this lawsuit for which they have no reasonable defense.

Dated: May 10, 2023

Respectfully submitted,

By: /s/ *Ian B. Crosby*

Ian B. Crosby, WSBA 28461
icrosby@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

By: /s/ *Lara Hruska*

Lara Hruska, WSBA 46531
lara@cedarlawpllc.com
Alex Hagel, WSBA 55423
alex@cedarlawpllc.com
Kaitlin Leifur-Masterson, Rule 9 #9874675
kaitlin@cedarlawpllc.com
CEDAR LAW PLLC
113 Cherry Street, PMB 96563
Seattle, WA 98104
Telephone: (206) 607-8277
Facsimile: (206) 237-9101

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I certify that this reply contains 6,888 words, in compliance with the Local Civil Rules.

*/s/ Ian B. Crosby*
Ian B. Crosby, WSBA #28461

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused the foregoing document to be served, via electronic mail, per agreement, on the following:

S. TODD SIPE, WSBA #23203
ELANA S. MATT, WSBA #37719
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Todd.Sipe@atg.wa.gov
Elana.Matt@atg.wa.gov
*Counsel for Defendants*

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED this 10th day of May 2023, at Seattle Washington.

*/s/ Ian B. Crosby*
Ian B. Crosby, WSBA #28461

# Appendix B

The Honorable Lauren King

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| N.D. et al., on behalf of a class of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHRIS REYKDAL, in his capacity as the SUPERINTENDENT OF PUBLIC INSTRUCTION and OFFICE OF THE SUPERINTENDENT OF PUBLIC INSTRUCTION, a Washington State agency,<br><br>Defendants. | No. 2:22-cv-01621-LK<br><br>**PLAINTIFFS' UNOPPOSED THIRD MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**<br><br>**Note on Motion Calendar:**<br><br>**October 22, 2024** |

Plaintiffs respectfully submit this Third Motion for Preliminary Approval of a Class Action Settlement, following this Court's Denial without Prejudice of their second motion (Dkt.91). This renewed motion addresses the issues raised in the Court's denial, including changed language in the Settlement Agreement to reflect the proposed notification scheme and clarification of the requested jurisdictional retention. This motion is unopposed.



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

## I. INTRODUCTION

Following more than a year of litigation, including an appeal to the Ninth Circuit, the parties have reached a resolution that ensures all Washington students who were previously exited from Special Education based on their age prior to turning twenty-two, within the last three years, will be provided the compensatory education they are entitled to, and ensures future students will not be unlawfully exited prior to their twenty-second birthday moving forward. The agreement includes certification of a class of students who, within the two years prior to the filing of this lawsuit and up to the present, were exited from special education services due to age before their twenty-second birthday, and would require the Office of Superintendent of Public Instruction (OSPI) to use its regulatory and supervisory powers to (1) ensure that, for students still under the age of twenty-two, Local Educational Agencies (LEAs) allow those students to access a Free Appropriate Public Education (FAPE) until their twenty-second birthday, and (2) ensure that, for students who have been exited from special education, LEAs convene Individualized Education Program (IEP) teams to award "compensatory education" "to students in the class according to the recommendations of their IEP teams." Students who disagree with recommendations of their IEP teams regarding the award of compensatory education retain the right to pursue Due Process or a Community Complaint with OSPI to challenge those recommendations. The proposed settlement agreement also provides specific monetary relief to the guardians of proposed class representatives N.D. and E.A. in amounts consistent with what an award of compensatory education would be for those students, and provides for an award of attorneys' fees incurred, pursuant to 20 U.S.C. § 1415(i)(3).

For the following reasons, Plaintiffs respectfully request that the Court: (1) certify the proposed settlement class, (2) appoint as class counsel the law firms of Susman Godfrey



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

LLP and Cedar Law PLLC, (3) appoint N.D. and E.A., by and through their respective guardians, as class representatives, (4) grant preliminary approval of the settlement, (5) approve the proposed notice plan, and (6) schedule any final fairness hearing and related deadlines.

## II. FACTUAL BACKGROUND

Plaintiffs filed this putative class action in November of 2022, seeking declaratory and injunctive relief against Defendants Superintendent Chris Reykdal and the Office of Superintendent of Public Instruction ("OSPI," collectively "Defendant"), alleging that they violated the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., by failing to ensure school districts in Washington provide FAPE to "all children with disabilities … between the ages of 3 and 21, inclusive." 20 U.S.C. § 1412(a). Washington law, as currently written, only requires LEAs to provide a FAPE until the end of the school year in which a student turns twenty-one. Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(c). In defense of this law, Defendants relied on 20 U.S.C. § 1412(a)(1)(B)(i), which provides an exception to the age twenty-two requirement if "application to [students age 18 to 21] would be inconsistent with State law or practice…," alleging that Washington does not provide free public education to students older than twenty-one and therefore could exit students once they turned twenty-one. Plaintiffs sought provisional class certification and a preliminary injunction (Dkt. No. 35) preventing enforcement of Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.0200(2)(c). The Court denied the preliminary injunction (Dkts. No. 58 and 72) and Plaintiffs appealed.

The Ninth Circuit reversed, holding that "Washington in fact provides free public education to nondisabled students of age 21 and older" and therefore, "[u]nder *E.R.K,* that



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

makes section 1412(a)(1)(B)(i) inapplicable to Washington." *N.D. v. Reykdal,* 102 F.4th 982, 994 (9th Circ. 2024) (cleaned up).

Following remand from the Ninth Circuit, the Court granted provisional certification to a class of students yet to be exited from special education and issued a preliminary injunction (Dkts. No. 75 and 83). The Court also issued the following declaratory judgment:

(a) OSPI's Refusal to ensure the provision of FAPE to Plaintiff E.A. and the members of the provisional class on account of their ages violates the IDEA;

(b) By this conduct, OSPI has violated 20 U.S.C. § 1407 and 20 U.S.C. § 1412(11);

(c) Section 28A.155.020 of the Revised Code of Washington and Section 392.172A.02000 of the Washington Administrative Code are invalid as contrary to the IDEA to the extent they do not ensure eligible students receive a FAPE until they turn 22.

On July 3, 2024, Defendants provided to Plaintiffs an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68. Following further negotiations, the parties reached a settlement agreement.

## III. SETTLEMENT AGREEMENT TERMS

The full text of the settlement agreement is attached to the Third Declaration of Alex Hagel, Ex. 1. The following generally summarizes the Agreement's terms.

### 1. Settlement Class

The proposed Settlement Class is comprised of:

> All students in Washington who were exited from special education services due to age before their 22nd birthday between November 11, 2020 and the present.

The proposed class is the result of extended negotiations between the parties about which students may be eligible, including the Court's ruling regarding the provisional class. Dkt. No. 83 at 11. ("the Court agrees with Plaintiffs that the carve-out [for students exited



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

based on receiving a high school diploma] is unnecessary"). The class definition also accounts for the IDEA's two-year statute of limitations. *See* 20 U.S.C. § 1415(6)(B).

### 2. Further Declaratory Relief

Parties agree to the following declaratory relief, which specifically identifies that the state's policy of exiting students prior to their twenty-second birthday presently violates the IDEA, violated the IDEA during the prior two years, and will continue to violate the IDEA absent substantial changes to the adult secondary education programs;

> the state's policy of aging students out of special education at the end of the school year in which they turn 21 pursuant to Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(c) presently violates the IDEA, has violated the IDEA at all times during the two years preceding the filing of this lawsuit, and will continue to violate the IDEA absent a substantial change in the state's policies for charging and waiving tuition for its adult secondary education programs.

This declaratory relief is in addition to the relief already ordered by the Court. Dkt. No. 83. The agreement contains no release language and is instead framed as a judgment against the Defendant.

### 3. Actions to be taken by OSPI

OSPI will take the following actions to ensure that LEAs comply with the Court's ruling that Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(c) violate the IDEA;

a. Direct LEAs to extend age eligibility for special education services until the student's 22nd birthday.

b. Direct LEAs to offer to immediately resume services under the last implemented IEP for each student who has not yet turned 22 who aged out during the pendency of the lawsuit.

c. Direct LEAs to reconvene IEP teams for all students in the class who wish to receive an award of compensatory education.



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

d. Direct LEAs that they may not decline to provide compensatory education on grounds of age for IEP services not provided to class members as a result of their exit prior to turning age 22.

**4. Provision of Compensatory Education to Settlement Class Members**

Under this agreement, the provision of compensatory education to eligible students will be handled by LEAs based on the recommendation of each class member's properly constituted IEP team. As mentioned above, OSPI will utilize its supervisory powers, to the extent authorized by law, to ensure that LEAs provide the necessary compensatory education. Additionally, should the LEA and class member agree, they may receive monetary compensation in lieu of compensatory education. Also, any class member who has privately paid for educational programs may seek reimbursement of those expenses from their LEA.

The agreement preserves the right of class members to use of either Due Process Hearing procedures (Wash. Admin. Code § 392-172A-05090) or OSPI's Community Complaint process (Wash. Admin. Code § 392-172A-05025) to challenge any proposed offers of compensatory education by an LEA, or the failure of an LEA to reconvene an IEP team.

**5. Reimbursement to guardians of N.D. and E.A.**

The agreement further provides direct reimbursement by OSPI to the guardians of N.D. and E.A. for documented educational expenses. For E.A. this totals up to $60,000 that his family has incurred to provide private educational services since his exit on August 31, 2023, in lieu of his return to the Selah School District. For N.D., OSPI will either directly pay for or reimburse his guardians up to $150,000 in documented educational expenses,



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

the specifics of which are identified in the agreement. That fund will be available to use for five years from the entry of judgment.

### 6. Reasonable Attorney's Fees and Costs

OSPI has agreed to pay all of Plaintiffs' reasonable attorney's fees and costs incurred in this action, through the entry of the final approval by this court as the prevailing party under 20 U.S.C. § 1415(i)(3). This includes fees incurred as part of the preliminary injunction appeal, consistent with Dkt. No. 80. As of filing, Plaintiffs' total attorneys' fees equal approximately $440,000 between Susman Godfrey and Cedar Law. A final motion will be filed contemporaneously with any motion for final approval.[1]

### 7. Notice

Notice will be provided to class members in multiple ways using one of two notice forms. Within five business days of the granting of preliminary approval by this Court, OSPI will direct LEAs to provide direct notice to all class members who were assigned an "exit code" of "RMA" (Reached Maximum Age) or "D2" since November 11, 2020. *See* Dkt. No. 35-3 at 36 for OSPI's explanation of exit codes. The full text of that notice template is attached to the Settlement Agreement at Exhibit A. That notice will inform potential class members of the nature of the suit, the settlement terms, how to obtain more information about settlement, how the class member may object if they disagree with the Agreement, and specify who class members should contact at the LEA to schedule the required IEP

[1] The settlement agreement also provides for attorney's fees during any guardian ad litem process the Court may require pursuant to LCR 17(c). However, it is Plaintiffs' position that because the Court already must approve the agreement and because N.D. and E.A. are both represented by their parents, who are court appointed guardians, the use of a guardian ad litem is unnecessary ("the court may dispense with the appointment of the guardian ad litem if a general guardian has been previously appointed for such minor or incompetent.) LCR 17(c).



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

meeting. LEAs will be directed to send the notices to the student's last known address, or if an address for the student is unknown, the last known address of the students' parents and/or legal guardians.

Further notice will be provided through OSPI's website and its regular bulletins starting within five business days of the Court's order granting preliminary approval. OSPI will maintain the notice on their website for at least 30 days after the Court grants final approval of the Settlement Agreement. OSPI will, at the same time, send the same publication information to various disability advocacy organizations in Washington, including The Arc of Washington State, the Washington Autism Alliance, and Disability Rights Washington, with permission to republish the notice. That notice, attached to the Settlement Agreement as Exhibit B, will contain the same information above, except without reference to a specific individual, instead recommending that students contact their district's director of special education or Plaintiffs' counsel to schedule the required IEP meeting.

OSPI will further direct LEAs to report the number of students who have scheduled or attempted to schedule an IEP meeting by a specific date – at least thirty days prior to the planned fairness hearing.

**8. Retaining Jurisdiction**

Finally, the parties request that this Court retain jurisdiction over "the administration, consummation, enforcement, and interpretation of any approved settlement agreement and any Court orders approving the settlement agreement for five years." Prior versions of the agreement requested that this Court retain jurisdiction over appeals and refusals to hold IEP meetings pursuant to Wash. Admin. Code § 392-172A-05090 and Wash. Admin. Code § 392-172A-05025, but that has been removed.



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

## IV. ARGUMENT

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). Fed. R. Civ. P. 23(e) provides that a class action may be settled "only with the court's approval." Rule 23(e)(2) requires that a proposed settlement be evaluated to be "fair, reasonable, and adequate." Here, the proposed settlement is the best vehicle for the settlement class members to receive the relief to which they may be entitled in a prompt and efficient manner.

### 1. The Settlement Class should be certified for settlement purposes.

As noted above, the settlement class is defined as:

> All students who were exited from special education services due to age before their 22nd birthday between November 11, 2020 and the present.

The certification of the settlement class is appropriate for all the reasons articulated in Plaintiffs' Motion for Class Certification, Dkt. No. 45, as well as this Court's Order Granting Provisional Class Certification, Dkt. No 83. That is, under Rule 23(a), the settlement class meets the four criteria: (1) numerosity of the class members; (2) commonality of the factual [or] legal issues; (3) typicality of the claims of the named plaintiffs; and (4) adequacy of representation.

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm*



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

*Springs Alpine Ests., Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964). "When the exact number of class members cannot be ascertained, the court may make common sense assumptions to support a finding of numerosity." R.P.-K., 272 F.R.D. at 547 (quotation omitted). While "[t]here is no specific number of class members required, classes of more than sixty are sufficiently large." Johnson v. City of Grants Pass, 50 F.4th 787, 803 (9th Cir. 2022).

Numerosity may also be satisfied where, even if the number of current class members is relatively small, joinder is "inherently impracticable" because the class also contains future members, or when specific facts of the case make joinder impractical. *See Gen. Tel. Col. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980); *R.P.-K.*, 272 F.R.D. at 548. "Further weighing in Plaintiffs' favor are the specific facts of [a] case … [in which a] class is comprised exclusively of learning-disabled youth. It is extremely unlikely that [such] individuals would bring individual actions challenging the validity of [a policy]." *Id.* (cleaned up).

As this Court found regarding the provisional class certification (Dkt. No. 83 at 7), numerosity is already satisfied for one years' worth of students at risk of aging out – "Plaintiffs argue, and Defendants do not dispute, that 'at least sixty and probably many more students who [were] receiving a FAPE in Washington public schools [turned] twenty-one on August 31, 2023, and [were] therefore subject to having their special education services terminated on September 1' of that year." Dkt. No. 83 at 7. Thus, the additional years contained within the settlement class only bolster the number of class members.

Regarding commonality, this Court has already held "whether Washington's age-out law violates the IDEA is a dispositive question that applies to all members of the proposed provisional class. Thus, the commonality element is satisfied." That finding holds true for the settlement class as well.



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

Both N.D. and E.A.'s injuries are typical of the class. Both students were unlawfully exited from their special education programming on September 1, 2022 and 2023 respectively. Neither student had turned twenty-two at the time of their exit and thus suffered irreparable harm from the disruption of their special education services. *See N.D.*, 102 F.4th at 995 (agreeing that "[i]t is almost beyond dispute that wrongful discontinuation of a special education program to which a student is entitled subjects that student to actual irreparable harm"), citing *Cosgrove v. Board of Educ. of Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 392 (N.D.N.Y. 2001). This harm is the same injury all class members suffered.

Finally, N.D. and E.A., by and through their guardians, as well as their legal counsel Ian Crosby of Susman Godfrey LLP and Alex Hagel and Lara Hruska of Cedar Law PLLC, are adequate class representatives. Both N.D. and E.A. are represented by their parents who have actively participated in the litigation and previously advocated for the rights of their children. *See* Dkt. Nos. 35-1 and -2. And this Court has likewise found "Plaintiffs' counsel have significant experience in class action, civil rights, and disability law litigation." Dkt. No. 83 at 9.

Certification is appropriate under 23(b)(2). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Certifying a class under Rule 23(b)(2) is appropriate "only where the primary relief sought is declaratory or injunctive." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001). "When a class seeks an indivisible injunction benefiting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute." *Wal-Mart*, 564 U.S. at 362–63 (explaining that "[p]redominance and superiority



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

are self-evident" in this circumstance); see also *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (noting that this inquiry "does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries").

The settlement agreement contains primarily injunctive relief. As discussed above, the agreement requires OSPI to take specific actions (predominately issuing directives to LEAs) to ensure that students can access the special education services they are entitled to until age twenty-two, and to ensure that LEAs convene IEP teams to determine and provide compensatory education for those students who have already turned twenty-two. OSPI is also required to "ensure through the exercise of its supervisory powers, to the extent authorized by law, that LEAs comply with these directions." This type of injunctive relief, designed to "benefit[] all its members at once" makes certification under 23(b)(2) appropriate.

**2. The proposed settlement should be preliminarily approved**

The court's role at the preliminary approval stage is to ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted); see also *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). Under Rule 23(e)(2), a district court considers whether (A) the class representatives and their counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

relief including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

**a. The Settlement is the Product of Serious, Informed, and Non-Collusive Negotiations.**

The parties negotiated the settlement at arm's length over weeks of back and forth between skilled and competent practitioners, following remand from the Ninth Circuit. Although parties intended to engage in mediation (Dkt. Nos. 82 and 84), mediation was ultimately not necessary to reach an agreement on the disputed issues. Counsel negotiated the settlement with the benefit of many years of prior experience working, both in class actions and within the special education context and with a solid understanding of the facts and law of this case, having conducted significant fact discovery prior to the reaching an agreement. The recommendation of experienced counsel weighs in favor of granting approval and creates a presumption of reasonableness. See *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties.")

**b. The injunctive nature of the relief and use of IEP teams to determine compensatory education is appropriate.**

While Plaintiffs had initially sought compensatory education provided directly by OSPI, as was the case in *E.R.K v. Hawaii,* 728 F.3d 982 (9th Circ. 2013), the use of individual IEP teams to determine compensatory education for class members provides an effective means of determining individual compensatory education awards and



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

alleviates the need for the parties to potentially litigate those issues for all class members. In fact, IEP teams are better positioned to provide individualized review of each class members' needs by a team familiar with both the student and the resources available to the specific LEA. It is also aligned with "the core of the IDEA" which is "the cooperative process that it establishes between parents and schools… The central vehicle for this collaboration is the IEP process." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005).

OSPI's obligation to ensure LEAs convene IEP teams provides a tangible benefit to all class members, whether or not the class member ultimately makes use of those services. Further, class members who do not agree with the proposed compensatory education have available to them two different options for challenging the decision – filing for due process or submitting a Community Complaint to OSPI. With those procedural safeguards in place, Plaintiffs' counsel believes proposed settlement is fair and reasonable.

**c. Individual Reimbursements to N.D. and E.A. are Reasonable**

As part of the agreement, OSPI has agreed to reimburse E.A.'s guardians up to $60,000 and N.D.'s guardians up to $150,000 for expenses incurred educating their children after being exited. To access these awards, Plaintiffs are required to submit evidence showing "documented expenses." Under the settlement agreement, this type of reimbursement model is potentially available to any class member working with their individual IEP team;

> If a student, IEP team, and LEA agree, a student may receive monetary compensation in lieu of compensatory education. Any class members who have paid privately for special education services after having been exited due to age from LEA-provided special education programs may seek reimbursement of such documented expenses, and OSPI shall direct LEAs to offer reimbursement of reasonable expenses in



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

line with the prior recommendations of the class member's IEP team.

The sole distinction is that the funds will come directly from OSPI, rather than their LEAs. While not necessarily a "service" or "incentive" award, "[i]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD*, 779 F.3d at 943 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)). Because the same type of award is available to all members of the class, and because they are based on documented expenses related directly to the lost educational opportunities, the individual awards to N.D. and E.A.'s guardians are appropriate.

**d. Plaintiffs' Request for Fees Are Reasonable**

Defendant has agreed to pay all Plaintiffs' reasonable attorney's fees and costs incurred in this action through the entry of the settlement decree by the Court, which as of the date of filing totals close to $440,000. The Ninth Circuit has approved two methods for calculating attorneys' fees depending on the circumstances: the lodestar method and the percentage-of-recovery method. Under the lodestar method, the prevailing attorneys are awarded an amount calculated by multiplying the hours they reasonably expended on the litigation by their reasonable hourly rates. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). Prior to final approval, Plaintiffs' Counsel will file a separate motion for an award of attorney's fees and costs, based on the lodestar method, addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.

## V. CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court: (1) certify the proposed settlement class, (2) appoint as class counsel the law firms of Susman



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

Case 2:25-cv-00186-BJR Document 1-2 Filed 01/27/25 Page 70 of 85

Godfrey LLP and Cedar Law PLLC, (3) appoint N.D. and E.A., by and through their respective guardians, as class representatives, (4) grant preliminary approval of the settlement, (5) approve the proposed notice plan, and (6) schedule any final fairness hearing and related deadlines. In order to allow time for class members to engage with their LEAs and for OSPI to gather data on the number of class members involved, Plaintiffs request a final fairness hearing be scheduled 90 days from the issuance any preliminary approval.

Dated: October 22, 2024.

Respectfully submitted,

By: /s/ *Ian B. Crosby*
Ian B. Crosby, WSBA 28461
icrosby@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883

By: /s/ *Lara Hruska*
Lara Hruska, WSBA 46531
lara@cedarlawpllc.com
Alex Hagel, WSBA 55423
alex@cedarlawpllc.com
Kaitlin Leifur-Masterson, Rule 9 9874675
kaitlin@cedarlawpllc.com
CEDAR LAW PLLC
113 Cherry Street, PMB 96563
Seattle, WA 98104
Telephone: (206) 607-8277
Facsimile: (206) 237-9101

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify that this reply contains 4,324 words, in compliance with the Local Civil Rules.

*/s/ Ian B. Crosby*
Ian B. Crosby, WSBA 28461



SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-2668
Tel: (206) 516-3880; Fax: (206) 516-3883

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused the foregoing document to be served, via electronic mail, per agreement, on the following:

BRIAN ROWE, WSBA #56817
S. TODD SIPE, WSBA #23203
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Brian.Rowe@atg.wa.gov
Todd.Sipe@atg.wa.gov

*Counsel for Defendants*

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

DATED this 22 day October, 2024, at Seattle Washington.

*/s/ Ian B. Crosby*
Ian B. Crosby, WSBA #28461

# Appendix C

1. The Court shall certify a settlement class of “all students in Washington who were exited from special education services due to age before their 22nd birthday between November 11, 2020 and the present.”

2. The Court shall enter a declaration that the state’s policy of aging students out of special education at the end of the school year in which they turn 21 pursuant to Wash. Rev. Code § 28A.155.020 and Wash. Admin. Code § 392.172A.02000(2)(c) presently violates the IDEA, has violated the IDEA at all times during the two years preceding the filing of this lawsuit, and will continue to violate the IDEA absent a substantial change in the state’s policies for charging and waiving tuition for its adult secondary education programs.

3. OSPI shall direct local education agencies (LEAs) to extend age eligibility for special education services until the student’s 22nd birthday.

4. OSPI shall direct LEAs to offer to immediately resume services under the last implemented IEP for each student who has not yet turned 22 who aged out during the pendency of the lawsuit.

5. Within five business days of the Court granting preliminary approval of this agreement, OSPI shall direct LEAs to provide individualized notice of this settlement to all students who were assigned an exit code of “RMA” or “D2” at any time in the two years preceding the filing of this lawsuit and up to the present. The template notice is attached as Exhibit A.

6. Within five business days of the Court granting preliminary approval of this agreement, OSPI shall publish notice of this settlement, including a link to the Court’s order, on its website and in its regular bulletins. Such notice shall continue to be published for a period of at least 30 days following the Court’s granting of final approval and judgment. The content of that notice is attached as Exhibit B.

7. OSPI shall send the same publication notice to The Arc of Washington State, the Washington Autism Alliance, and Disability Rights Washington, and shall agree to those organizations’ re-publication of the notice.

8. The notice shall in all cases state that the students who exited their special education programs due to their age before their 22nd birthday in the two years preceding the filing of this lawsuit may be eligible for an award of compensatory education (and reinstatement if not yet 22 years old) under this settlement, subject to the recommendation of their IEP team or as may be ordered by the Court.

9. OSPI shall direct LEAs to reconvene IEP teams for all students in the class who wish to receive an award of compensatory education. Compensatory education shall be awarded to students in the class according to the recommendations of their IEP teams. If a student, IEP team, and LEA agree, a student may receive monetary compensation in lieu of compensatory education. Any class members who have paid privately for special education services after having been exited due to age from LEA-provided special education programs may seek reimbursement of such documented expenses, and OSPI shall direct LEAs to offer reimbursement of reasonable expenses in line with the prior recommendations of the class member’s IEP team. OSPI shall direct LEAs that they may not decline to provide compensatory education on grounds of age for IEP services not provided to class members as a result of their exit prior to turning age 22. OSPI shall ensure through the exercise of its supervisory powers, to the extent authorized by law, that LEAs comply with these directions.

10. OSPI’s direction to LEAs shall be without prejudice to the right or ability of LEAs to deny compensatory education via appropriate procedures either on the basis of having

received a regular high school diploma or lack of continuing need for services as of the time that services were withdrawn.

11. OSPI will further direct LEAs to report the number of students who have scheduled or attempted to schedule an IEP meeting by a specific date – at least thirty days prior to the planned fairness hearing.

12. Class members shall retain all rights to initiate a due process hearing or community complaint to challenge (a) any proposal or refusal to offer compensatory education by an LEA that has reconvened a class member's IEP team at OSPI's direction pursuant to this settlement and (b) any failure by an LEA to follow OSPI's direction to reconvene their IEP teams.

13. OSPI shall reimburse the guardians of E.A. for up to $60,000 in documented expenses incurred to provide him with private educational and related support services since he was exited from the Selah School District on August 31, 2023, and, in lieu of reinstatement in the Selah School District and to avoid further disruption, shall continue to fund those services through the end of the current school year on August 31, 2024.

14. OSPI shall directly pay for or reimburse the guardians of N.D. for up to $150,000 in documented expenses for educational services, including without limitation occupational therapy, vocational instruction/counseling, speech therapy, applied behavior analysis, tutoring, social activities, day programming, or any other services that could be available to special education students under the IDEA, including related services such as transportation; Plaintiffs will have up to five years from the entry of judgment to seek such services and will submit all claims for reimbursement within 90 days of the five-year period ending.

15. OSPI shall pay all Plaintiffs' reasonable attorney's fees and costs incurred in this action through the entry of the settlement decree by the Court, as well as for any guardian ad litem whose appointment the Court may require pursuant to LCR 17(c) or otherwise, and without prejudice to future applications for attorneys' fees incurred in connection with the administration or enforcement of the settlement.

16. The Court shall retain jurisdiction over the administration, consummation, enforcement, and interpretation of any approved settlement agreement, and any Court orders approving the settlement agreement for five years.

# Exhibit A

Date

Student
Address
Address

Re: Class Action Settlement in *N.D., et al. v. Reykdal*

Dear _________ [fill in Student/Family name],

You are receiving this notice because our records indicate you or your child were eligible for special education in the State of Washington any may have been exited from special education due to your age anytime between November 11, 2020, and the present day, prior to turning twenty-two years old. If so, you may be affected by a proposed class action settlement.

A proposed settlement has been reached in a class action lawsuit called *N.D., et al., v. Reykdal*, Case No. 2:22-cv-01621-LK. This lawsuit challenges the State of Washington's and the Office of Superintendent of Public Instruction's ("OSPI") policy of exiting students from special education prior to turning twenty-two years old. The parties in the lawsuit have proposed to settle the case, and the U.S. District Court for the Western District of Washington, the Honorable Lauren King, must decide whether to approve the Settlement.

This notice will tell you about your rights under the settlement. You are not being sued, and this is not an advertisement. Please read this notice, and if you have questions about anything in the notice see the contact information on page 3.

Please do not telephone the Court or the Court Clerk's Office to inquire about this settlement.

**What is the lawsuit about?**

*N.D., et al., v. Reykdal* is a federal court case brought on behalf of a group (a "class") of students eligible for special education, who were exited from their special education class on based on their age ("aged out") prior to turning twenty-two years old. A case like this is brought on behalf of a group of people who have similar legal claims, leading the court to treat them as a "class" of people who all might benefit from a single resolution. The people who stand to benefit from the resolution of the case and fall into the class bringing the case referred to as "class members." In this case, there are two named individuals proposing to represent the class, N.D. and E.A. (collectively "the Plaintiffs").

The case was filed in November 2022 and claimed that OSPI and Washington's Local Educational Agencies ("school districts") violated the Individuals with Disabilities Education Act ("IDEA") and denied students a Free Appropriate Public Education ("FAPE") by prematurely aging out students prior to their twenty-second birthday. Prior to this lawsuit, when Washington's school districts exited students from special education based on age, they did so at the end of the school year in which the student turns twenty-one. The Plaintiffs alleged that OSPI and school districts had an obligation to serve eligible students until their twenty-second birthday.

In July of 2024, the Court granted the Plaintiffs a preliminary injunction—in other words, a court order that prohibited OSPI from allowing school districts to age-out students prior to their twenty-second birthday. Plaintiffs and OSPI have now agreed to settle this case and have asked the Court to approve the proposed settlement that would prohibit prematurely aging out students and provide a mechanism for class members to seek compensatory education from the school district they last attended. The Court has appointed lawyers to represent the Class as it considers finalizing the settlement. They are called "Class Counsel," and their contact information is listed at the end of this document.

**Are you a member of the class?**

As part of the settlement agreement in this case, you are a member of the class if you were eligible for special education and were exited from special education based on your age (often called "aging out") prior to turning twenty-two years old at any time between November 11, 2020, and the present.

**Compensatory Education**

As part of the settlement agreement, you may be entitled to compensatory education to make up for the special education and transition services you otherwise would have received had you remained in school until your 22nd birthday.

___________[fill in Student name] may be eligible for compensatory education as determined by ___________[Student's/your] IEP team. The determination of the amount and type of compensatory education, and how the compensatory education will be provided will be determined based on ___________[fill in Student name/your]'s individualized needs. The IEP team will look at the special education and transition services received prior to leaving school, current needs, and whether compensatory education is required.

Compensatory education could be provided via:

- Direct services provided by the District
- Monetary compensation in lieu of compensatory education
- Reimbursement for private services obtained

**If you would like to schedule an IEP meeting to discuss compensatory education, please contact the following individual to schedule an IEP meeting:**

Name
Title
Phone Number
Email Address

If the school district refuses to convene an IEP team meeting on your behalf, or you disagree with the amount or type of compensatory education, you have the right to appeal that decision

under either OSPI's Due Process Procedures or through a Community Complaint. Information about those processes is available on OSPI's website - https://ospi.k12.wa.us/student-success/special-education/dispute-resolution.

**Other Elements of the Settlement**

The settlement requires OSPI, among other things, to do the following:

1. Direct districts to extend age eligibility for special education services until the student's 22nd birthday.
2. Direct districts to offer to immediately resume services under the last implemented IEP for each student who has not yet turned 22 who aged out during the lawsuit.
3. Direct districts to reconvene IEP teams to consider whether compensatory education is needed for all students in the class who wish to receive an award of compensatory education.

The settlement also provides individual compensatory education awards to the two class representatives, N.D. and E.A., in amounts up to $150,000 and $60,000 respectively, and reimbursement of Plaintiffs' reasonable attorneys' fees.

**Questions?**

Please note, this notice only summarizes the settlement. The full settlement agreement is available at the following website: [OSPI Website]

You can contact Class Counsel at these mail or email addresses:

ATTN: N.D. v. Reykdal Class Counsel
Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA 98104
info@cedarlawpllc.com
206-607-8277

You can also access the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://pacer.uscourts.gov/, using Case No. 2:22-cv-01621-LK.

**Options for Disagreement**

You have the right to say what you think about the settlement before the Court decides whether to approve it. You can do this by submitting something in writing to the Court, attending a Court hearing about the settlement, or both.

If you like the settlement's terms, or you do not have an opinion on the terms, you do not need to do anything related to this lawsuit.

If you are not satisfied with the settlement, you have the right to ask the Court to deny approval for the settlement. If the Court denies approval, the settlement will not happen, and the lawsuit will continue. If that is what you want, you must object to the proposed settlement in writing. If you object in writing, you may, if you choose, also appear at the Final Approval Hearing, but are not required to. If you choose to appear at the Final Approval Hearing, you can appear either on your own behalf or through your own attorney. If you choose to appear through your own attorney, you are responsible for hiring and paying for that attorney. If the Court approves the settlement despite any objections, it will apply to you even if you do not agree with it.

All written objections and supporting papers must:

- Clearly identify the following case name and number: *N.D., et al., v. Reykdal*, Case No. 2:22-cv-01621-LK (W.D. Wash.);
- Be submitted to the Court either:
  - By mailing them to: the Clerk, U.S. District Court for the Western District of Washington, 700 Stewart Street, Suite 2310, Seattle, WA 98101, and both the envelope and letter shall state: "Attention: *N.D., et al., v. Reykdal*, Case No. 2:22-cv-01621-LK (W.D. Wash.), or
  - By filing them in person at any location of the United States District Court for the Western District of Washington; and
- Be filed or postmarked on or before XXXXX, 2024.

The Final Approval Hearing is scheduled to take place on XXXXX, 2024, at the U.S. District Court for the Western District of Washington, 700 Stewart Street, Suite 2310, Seattle, WA 98101. The date and time of the Final Approval Hearing may change without notice to you. Information about any changes to the Final Approval Hearing date or time will be available, for a fee, through PACER, at https://pacer.uscourts.gov/, using the Case No. 2:22-cv-01621-LK. *You are not required to attend this hearing. Your lawyer does not need to attend this hearing. You are welcome to attend if you want to object to the settlement or if you are interested in observing the hearing, but you are not required to.*

[insert LEA signature block]

# Exhibit B

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

## ***N.D., et al. v. REYKDAL***

**If you or your child were eligible for special education in the State of Washington and may have been exited from special education due to age anytime between November 11, 2020, and the present day, prior to turning twenty-two years old, you may be affected by a proposed class action settlement.**

A proposed settlement has been reached in a class action lawsuit called *N.D., et al., v. Reykdal*, Case No. 2:22-cv-01621-LK. This lawsuit challenges the State of Washington's and the Office of Superintendent of Public Instruction's ("OSPI") policy of exiting students from special education prior to turning twenty-two years old. The parties in the lawsuit have proposed to settle the case, and the U.S. District Court for the Western District of Washington, the Honorable Lauren King, must decide whether to approve the settlement.

This notice will tell you about your rights under the settlement. You are not being sued, and this is not an advertisement. Please read this notice, and if you have questions about anything in the notice see the contact information on page 3.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.**

### What is the lawsuit about?

*N.D., et al., v. Reykdal* is a federal court case brought on behalf of a group (a "class") of students eligible for special education, who were exited from their special education class on based on their age ("aged out") prior to turning twenty-two years old. A case like this is brought on behalf of a group of people who have similar legal claims, leading the court to treat them as a "class" of people who all might benefit from a single resolution. The people who stand to benefit from the resolution of the case and fall into the class bringing the case referred to as "class members." In this case, there are two named individuals proposing to represent the class, N.D. and E.A. (collectively "the Plaintiffs").

The case was filed in November 2022 and claimed that OSPI and Washington's Local Educational Agencies ("school districts") violated the Individuals with Disabilities Education Act ("IDEA") and denied students a Free Appropriate Public Education ("FAPE") by prematurely aging out students prior to their twenty-second birthday. Prior to this lawsuit, when Washington's school districts exited students from special education based on age, they did so at the end of the school year in which the student turned twenty-one. The Plaintiffs alleged that OSPI and school districts had an obligation to serve eligible students until their twenty-second birthday.

In July of 2024, the Court granted the Plaintiffs a preliminary injunction—in other words, a court order that prohibited OSPI from allowing school districts to age-out students prior to their twenty-second birthday. Plaintiffs and OSPI have now agreed to settle this case and have asked the Court to approve a proposed settlement that would prohibit prematurely aging out students and provide a mechanism for class members to seek compensatory education from the school district they last attended. The Court has

Case 2:24-cv-01681-MJP Document 92-1 Filed 10/22/24 Page 10 of 12

appointed lawyers to represent the Class as it considers finalizing the settlement. They are called "Class Counsel," and their contact information is listed at the end of this document. In July of 2024, the Court granted the Plaintiffs a preliminary injunction—in other words, a court order that prohibited OSPI from aging-out students prior to their twenty-second birthday. Plaintiffs and OSPI have now agreed to settle this case and have asked the Court to approve a proposed settlement that would prohibit prematurely aging out students and provides a mechanism for seeking compensatory education from the school district you last attended. The Court has appointed lawyers to represent the Class as it considers finalizing the settlement. They are called "Class Counsel," and their contact information is listed at the end of this document.

## Are you a member of the class?

As part of the settlement agreement in this case, you are a member of the class if you were eligible for special education and were exited from special education based on your age (often called "aging out") prior to turning twenty-two years old at any time between November 11, 2020, and the present.

## Compensatory Education

As part of the settlement agreement, you may be entitled to compensatory education to make up for the special education and transition services you otherwise would have received had you remained in school until your 22nd birthday.

You may be eligible for compensatory education as determined by your IEP team. The determination of the amount and type of compensatory education, and how the compensatory education will be provided will be determined based on your individualized needs. The IEP team will look at the special education and transition services received prior to leaving school, current needs, and whether compensatory education is required.

Compensatory education could be provided via:

- Direct services provided by the District
- Monetary compensation in lieu of compensatory education
- Reimbursement for private services obtained

**If you would like to schedule an IEP meeting to discuss compensatory education, please contact your school district's Director of Special Education or Plaintiffs' counsel below.**

If the school district refuses to convene an IEP team meeting on your behalf, or you disagree with the amount or type of compensatory education, you have the right to appeal that decision under either OSPI's Due Process Procedures or through a Community Complaint. Information about those processes is available on OSPI's website - https://ospi.k12.wa.us/student-success/special-education/dispute-resolution.

## Other Elements of the Settlement

The settlement requires OSPI, among other things, to do the following:

1. Direct districts to extend age eligibility for special education services until the student's

Case 2:25-cv-00286-BJR Document 19-1 Filed 10/22/25 Page 4 of 12

22nd birthday.

2. Direct districts to offer to immediately resume services under the last implemented IEP for each student who has not yet turned 22 who aged out during the lawsuit.
3. Direct districts to reconvene IEP teams to consider whether compensatory education is needed for all students in the class who wish to receive an award of compensatory education.

The settlement also provides individual compensatory education awards to the two class representatives, N.D. and E.A., in amounts up to $150,000 and $60,000 respectively, and reimbursement of Plaintiffs' reasonable attorneys' fees.

## Questions?

Please note, this notice only summarizes the settlement. The full settlement agreement is available at the following website: [OSPI Website]

You can contact Class Counsel at these mail or email addresses:

ATTN: N.D. v. Reykdal Class Counsel
Cedar Law PLLC
113 Cherry Street PMB 96563
Seattle, WA 98104
info@cedarlawpllc.com
206-607-8277

You can also access the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://pacer.uscourts.gov/, using Case No. 2:22-cv-01621-LK.

## Options for Disagreement

You have the right to say what you think about the settlement before the Court decides whether to approve it. You can do this by submitting something in writing to the Court, attending a Court hearing about the settlement, or both.

If you like the settlement's terms, or you do not have an opinion on the terms, you do not need to do anything related to this lawsuit.

If you are not satisfied with the settlement, you have the right to ask the Court to deny approval for the settlement. If the Court denies approval, the settlement will not happen, and the lawsuit will continue. If that is what you want, you must object to the proposed settlement in writing. If you object in writing, you may, if you choose, also appear at the Final Approval Hearing, but are not required to. If you choose to appear at the Final Approval Hearing, you can appear either on your own behalf or through your own attorney. If you choose to appear through your own attorney, you are responsible for hiring and paying for that attorney. If the Court approves the settlement despite any objections, it will apply to you even if you do not agree with it.

All written objections and supporting papers must:

- Clearly identify the following case name and number: *N.D., et al., v. Reykdal*, Case

Case 2:22-cv-01621-LK Document 92-1 Filed 10/22/24 Page 12 of 12

No. 2:22-cv-01621-LK (W.D. Wash.);

- Be submitted to the Court either:
    - By mailing them to: The Clerk, U.S. District Court for the Western District of Washington, 700 Stewart Street, Suite 2310, Seattle, WA 98101, and both the envelope and letter shall state: "Attention: *N.D., et al., v. Reykdal*, Case No. 2:22-cv-01621-LK (W.D. Wash.), or
    - By filing them in person at any location of the United States District Court for the Western District of Washington; and
- Be filed or postmarked on or before XXXXX, 2024.

The Final Approval Hearing is scheduled to take place on XXXXX, 2024, at the U.S. District Court for the Western District of Washington, 700 Stewart Street, Suite 2310, Seattle, WA 98101. The date and time of the Final Approval Hearing may change without notice to you. Information about any changes to the Final Approval Hearing date or time will be available, for a fee, through PACER, at https://pacer.uscourts.gov/, using the Case No. 2:22-cv-016210. *You are not required to attend this hearing. Your lawyer does not need to attend this hearing. You are welcome to attend if you want to object to the settlement or if you are interested in observing the hearing, but you are not required to.*