Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S.P., by and through her guardian C.P. and D.P.,<br><br>Plaintiffs,<br><br>v.<br><br>SEATTLE PUBLIC SCHOOLS, a quasi-municipal corporation.<br><br>Defendant. | No. 2:25-cv-00286-BJR<br><br>**Plaintiffs' Response to Defendant's Motion for Summary Judgment** |

The District's brief attempts to sidestep the central issue in this case: whether S.P. had the right to a Free Appropriate Public Education (FAPE) until her twenty-second birthday and whether she was denied that FAPE when the District prematurely exited her. Instead of addressing this question directly, the District proposes an untenable



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

interpretation of the Individuals with Disabilities Education Act (IDEA) that, in effect, shields it from liability as long as the State also violated the IDEA. This argument is incorrect, unsupported by the full text of the IDEA, and has never been adopted by any court, including the Administrative Law Judge (ALJ) below. It would create an untenable loophole. Regardless, state law specifically incorporates the relevant requirements, rendering this argument largely irrelevant. The remainder of the District's arguments are also largely irrelevant because E.R.K. and N.D. provide the necessary analysis this Court should undertake.

Because S.P. and her parents had every right to bring this action, notwithstanding the N.D. settlement agreement, and because the District violated the IDEA, this Court should enter partial summary judgment in her favor and remand to the Office of Administrative Hearings (OAH) for further proceedings.

## Argument[1]

### 1. The District's primary argument – that school districts cannot be held liable for violating federal law because they only need to comply with state law – is incorrect.

[1] As a starting point, the District claims the Parents misconstrued the burden of proof because "as the party moving for summary judgment Parents bore the burden of establishing that the District violated the provision of the IDEA applicable to it." However, the ALJ (properly) construed the briefing below as cross-motions for summary judgment, considering the District's request that the "ALJ grant summary judgment in favor of the District and dismiss Parents' complaint" AR at 498). *See* AR 641 (the District's Cross Motion for Summary Judgment is GRANTED). As such, "the motions must be evaluated in accordance with the claim or defense which is the subject of the motion and in accordance with the burden of proof allocated to each party." *Regents of University of Cal. v. Micro Therapeutics, Inc.,* 507 F.Supp.2d 1074, 1078 (N.D. Cal., August 21, 2007). Thus, under the recently enacted Wash. Rev. Code 28A.155.260, the District bore the ultimate burden to show its practice did not violate federal law. It failed to do so, and summary judgment should not have been entered on its behalf.



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

Although repeated at multiple points (see e.g., Dkt. No. 19[2] at 16, 19, 21, 23), the District puts forth what amounts to one argument to defend its position – 20 U.S.C. § 1413 shields school districts from liability under federal law because "Section 1413 of the IDEA required the District to follow the State's policies and procedures," rather than comply directly with federal law. Dkt. No. 19 at 16. Such an argument is unsupported by the text, foreclosed by existing case law, and produces an absurd result that should be soundly rejected. It is also largely irrelevant in this case because Washington State regulations specifically and unequivocally incorporate the federal requirements of the IDEA.

First, despite the District's disagreement, school districts do constitute "the State" under Washington law. As noted in the Petitioner's opening brief, Washington State considers school districts "mere arms of the state for the administration of its school system." *Howard v. Tacoma Sch. Dist. 10,* 88 Wash. 167, 170-71 (Wash. 1984). In response, the District argues that "school districts are independently governed entities possessing normal corporate powers." Dkt. No. 19 at 17. But exactly as *Bellevue School Dist. No. 405 v. Brazier Const. Co.,* 100 Wash.2d 776, 778-9, explains "ostensibly, school districts are municipal corporations... Unlike cities and towns, however, school districts 'are essentially only *quasi* municipal corporations. They are mere arms of the state for the administration of its school system.'" (Citing *Howard,* 88 Wash. at 170-71 (Wash.

[2] There is a discrepancy between the District's footer pagination and PACER's pagination. Plaintiff relies on PACER's pagination at the top right of the document.



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

1915)) (cleaned up). The District then claims that it cannot be the "State" under the IDEA, because "the IDEA defines the terms 'State' and 'local educational agency' as separate entities." Dkt. No. 19 at 17. But the District's argument breaks down when considering the fact the IDEA also separately defines the term "State educational agency" to mean "the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools…" 20 U.S.C. § 1400(32). The district has no problem conflating the terms "State" and "State Educational Agency," in blaming OSPI for violating the IDEA, but fails to accept that it too constitutes part of "the State," as an arm "for the administration of its school system." Because the school district constitutes part of the "State," it was and is obligated to comply with the IDEA as required under 20 U.S.C. § 1412.

Even if the Court disagrees, the District's interpretation of 20 U.S.C. § 1413 ignores the broader context in which it is written. By referring to the state policies and procedures "established under section 1412 of this title," § 1413 necessarily incorporates the requirements of 20 U.S.C. § 1412 into the policies, procedures, and programs the LEAs are required to create. Again, one of the required policies and procedures *under section 1412* is 20 U.S.C. § 1412(a)(1)(A), extending eligibility to students "21, inclusive." Thus, a more accurate reading of § 1412 and § 1413, which must be read together given their explicit connection, requires both "the State" and "the LEA" to have policies, procedures (and in the case of LEAs, programs) that comply with the substantive and procedural guarantees established under 20 U.S.C. § 1412. Had Congress intended for



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

LEAs to *only* have to comply with state law - regardless of how untethered from federal law they were - it would have more clearly said so.

The District asks this Court to allow an absurd result to occur – LEAs are immune from liability for clear violations of federal law so long as the State also violated federal law. This loophole is an untenable retreat from the broad protections offered to students with disabilities.

No court has ever adopted the District's illogical reading of 20 U.S.C. §§ 1412 and 1413. The ALJ did not even adopt the District's argument here. *See generally* AR 634-641 (not once citing to § 1413). To the contrary, Courts have unequivocally stated "the Act expressly authorizes and requires a state *and local administrative apparatus* to effectuated both its substantive and procedural guarantees in the first instance." *Town of Burlington v. Dept. of Educ. of Massachusetts,* 736 F.2d 773, 785 (1st Cir. 1984), *aff'd sub nom. Burlington Sch. Comm. v. Dept. of Educ.,* 471 U.S. 359 (1985) (emphasis added). "Compliance with the minimum standards set out by the federal act is mandatory for the receipt of federal assistance." *Id.* Courts routinely and repeatedly recognize that the requirements of 20 U.S.C. § 1412 apply to school districts. *See KW v. Peninsula School District,* 3:24-cv-05820-BAT, 2025 WL 1592450 (W.D. Wash., June 5, 2025) (citing § 1412(a)(1) for the proposition that "in exchange for IDEA funds, *school districts* must provide a free appropriate public education ('FAPE') to all eligible students") (emphasis added), *Apple v. The New York City Department of Educ.,* 24-CV-4380, 2025 WL 1663624 (S.D.N.Y. June 12, 2025) ("The IDEA requires any *school district* that receives funding assistance under the Act to provide a 'free appropriate public education'



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

("FAPE") to every child with a disability. 20 U.S.C. § 1412(a)(1)(A)."), *SPB, NH and JHB, individuals, v. Washoe County School District,* 3:22-cv-00340-ART-CLB, 2025 WL 1638121 (D. Nev. June 6, 2025) (applying 20 U.S.C. § 1412(a)(1)(C)(iii) to a school district), *Zion M. v. Upper Darby School District,* 21-2941, 2023 WL 6299091 (E.D. Pa., Sept. 27, 2023) (citing both §§ 1412 and 1413 for the proposition that "Defendant Upper Darby School District is a LEA receiving federal funding, and as such, it is bound to comply with the IDEA."). Even when courts cite only to § 1413, they continue to tie LEA liability directly to the Act itself, not the policies and procedures adopted by the State. *See Ellenberg v. New Mexico Military Institute,* 478 F.3d 1262 (10th Cir. 2007) (Citing § 1413(a)(1) for the proposition that "those funds may not be forwarded to LEAs within the state unless they demonstrate compliance *with the IDEA* to the satisfaction of the SEA.") (emphasis added). And as noted in the opening brief, this Court recently held "the Ninth Circuit has repeatedly affirmed that the IDEA preempts state law to the extent state requirements conflict with federal statute." *M.R. v. Yelm School District,* 3:24-cv-05533-DGE *8.[3]

As previously cited, *Corey H.*, 995 F.Supp. 900 provides a helpful analogous case. In 1992, a group of students brought a putative class action against both the City of Chicago Board of Education ("the City") and the Illinois State Board of Education ("the State" or "the ISBE"), along with the heads of both agencies. *Id.* at 902. Plaintiffs alleged both the City and the State systemically violated 20 U.S.C. § 1412(5), which requires that

---

[3] Decision attached to the Response as Appendix A.



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

children with disabilities be educated with children who are not disabled "to the maximum extent appropriate." This is known as the least restrictive environment or LRE requirement. *Id.* at 902. A panel of three joint experts produced a report concluding, as the court put it, that the City was "seriously out of compliance with the LRE requirements of the IDEA." *Id.* at 903. The class of students and the City reached a tentative agreement following years of negotiations, but the State continued to deny its own liability. After a bench trial, the Court found both the City and the State had violated the IDEA by impermissibly segregating students. Regarding the City's liability, the Court held "the Chicago public schools have languished in an atmosphere of separate and unequal education for children with emotional, mental and behavioral disabilities." *Id. at* 907. But the Court did not end there, it also ruled "the ISBE has failed in its responsibility to ensure that children with disabilities in Chicago are educated in the least restrictive environment." *Id.* at 909. The Court specifically rejected ISBE's argument that its policies regarding monitoring "and other aspects of its State plan" complied with federal law because they had been approved by the federal Office of Special Education Programs ("OSEP"). *See Id.* at 916 ("the ISBE is incorrect when it asserts that the court should conclude that the ISBE is in compliance with the IDEA simply because OSEP approved the ISBE's plan."). *Id.* Under the District's proposed interpretation of the IDEA, the Court would have no basis to conclude the City violated the IDEA because it was acting consistent with ISBE's policies. This is true, apparently, regardless of how unlawful the SEA's policies were. That is obviously incorrect and the Court in *Corey H*. correctly found both the City and the State violated the IDEA. The Court should do the same here.



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

The District misunderstands the significance of 20 U.S.C. § 1413. That statute lays out specific requirements local educational agencies must do to be eligible for special education services, including having in effect "policies, procedures, and programs that are consistent with the State policies and procedures established under section 1412 of this title." 20 U.S.C. § 1413(a)(1) (emphasis added). This statute is significant not because it cuts off liability, but because it *heightens* liability against school districts whose policies are inconsistent with federal law *and* state law. As the Sixth Circuit (and others) have explained, "it is settled that 'even if a school district complies with federal law, it may still violate the [federal] Act if it fails to satisfy more extensive state protections that may also be in place." *Doe v. Board of Educ. of Tullahoma City Schools,* 9 F.3d 455, 457 (6th Cir. 1993) (alteration in original). *See also Town of Burlington,* 736 F.2d at 784-85 ("under our reading of the Act, states are free to elaborate procedural and substantive protections for the disabled child that are more stringent than those contained in the Act."), *See also Id.* at 785 n. 9 ("Those state statutes and regulations, of course, must be in compliance with the federal Act…"). Thus, 20 U.S.C. § 1413 requires LEAs to incorporate federal *and* state requirements into their own policies and procedures and may be faulted for violating either or both. The District's failure to comply with federal law means it denied S.P. a FAPE and should be liable *directly* to her, rather than through OSPI.

**2. State law requires the district to comply with federal law.**

All of that said, even if Defendant's interpretation of § 1413 is correct that it only needs to comply with the State's policy and procedures to be eligible for federal funding, it still loses. That is because the regulations adopted by OSPI – i.e., the "state policy and



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

procedures" – which define what a Free Appropriate Public Education is directly, specifically, and unequivocally incorporates the (federal) IDEA requirements. Wash. Admin. Code 392-172A-01080 defines a "Free Appropriate Public Education," in relevant part, as "special education and related services that: … (2) Meet the standards of OSPI, and *the act*.[4]" (emphasis added). One of those "standards" of "the act" is the very statute at issue here – 20 U.S.C. § 1412(a)(1)(A), which defines what ages students are eligible to receive a "free appropriate public education" – i.e. students between the ages of 3 and 21, inclusive. The District thus has no basis to claim it need not comply with the federal requirements of providing a FAPE to students when OSPI has directly incorporated that definition into the relevant Washington Administrative Code, which the District agrees it must comply with.

Because the District was required to provide services to students 21, inclusive either as an arm of the state, consistent with its obligations under 20 U.S.C. §§ 1412 and 1413, and/or because Washington has explicitly incorporated the federal requirements, the District violated the IDEA when it prematurely exited S.P. from special education prior to her twenty-second birthday. Because the District relies on the same faulty analysis to sidestep the retroactivity and supremacy clause arguments, this Court should likewise reject those arguments.

---

[4] *See* Wash. Admin. Code 392-172A-01020 defining "Act" as "Part B of the Individuals with Disabilities Education Act, as amended."



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

### 3. The District misunderstands how retroactivity works.

In addition to their argument above, the District spends a considerable number of pages arguing there was no way for them to know in 2023 that it was violating the law. First, it argues that because *E.R.K.* dealt with a Hawaii law, it was not binding on the district. Dkt. No. 19 at 19. Then, it argues at the time S.P. was exited, "there had been no ruling that Washington law regarding the age of eligibility violated the IDEA." Dkt. No. 19 at 20. It then argues "the District [did not] have any basis to believe that Washington's law violated the IDEA as it was not responsible for administering either of the two programs Parents identified." Dkt. No. 19 at 24.

The District's arguments are not relevant to the inquiry here. Whether the District *knew* it was violating the law in 2023 does not shield it from liability. As the Supreme Court has explained, "we have long recognized the common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 582 (2010) (cleaned up). The District's arguments would hold more weight if this were a question of qualified immunity, where plaintiffs would have to show the "legal rules [] were 'clearly established' at the time [the action] was taken." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987). Admittedly, if this were such a case, Plaintiffs would have an uphill battle establishing that (although *E.R.K.* speaks in sufficient terms to find otherwise, as discussed below). But this is not a case about qualified immunity, so whether the law was clearly established does not matter. All that is required is a straightforward application of *E.R.K.* and *N.D.*



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

This defense again misconstrues Plaintiffs' argument. The District's claim that "Parents appear to argue that the District was required to independently apply E.R.K.'s analysis to reach its own conclusion that Washington provided 'free public education' services to students over 21 at the time it exited S.P...." is an incorrect statement of Plaintiffs' argument. Dkt. No. 19 at 20. It frankly does not matter what the District *thought* was the law when it exited S.P. from special education. It also does not matter whether the District "can refuse to comply with state law based on its subjective belief that the law is preempted." *Dkt. No.* 19 at 24.[5] What matters is what the law was (and is). That is the essence of retroactivity. The District's apparent arguments against retroactive application have been considered and rejected by the Supreme Court, stating "the essence of judicial decisionmaking–applying general rules to particular situations–necessarily involves some peril to individual expectations because it is often difficult to predict the precise application of a general rule until it has been distilled in the crucible of litigation." *Rivers v. Roadway Exp., Inc.,* 511 U.S. 298, 312 (1994). Nevertheless, new interpretations of federal law "must be given full retroactive effect in all cases still open on direct review as to all events, regardless of whether such events predate or postdate

[5] Again, the District *could* have filed a lawsuit against OSPI, alleging OSPI's policies prevented the District from complying with federal law and seeking declaratory relief to that effect, as many litigants have done in the past. *See e.g., Inland Empire Chapter of Associated General Contractors of America v. Dear,* 77 F.3d 296, (9th Cir. 1996) ("Plaintiffs should not be left to speculate whether the Washington prevailing wage scheme is preempted by ERISA."). That the District did not, nor did it think it needed to, does not change the analysis as to whether it violated the law.



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

our announcement of the rule." *Id.*, quoting *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97 (1993).

And determining what the law was at the time requires the most basic legal analysis that the ALJ should have done, and this Court should do – apply the general rules established in *E.R.K.* and *N.D.* to the facts as they existed in 2023.[6] As previously explained, 20 U.S.C. § 1412(a)(1)(A) guarantees a Free Appropriate Public Education to every disabled student aged 3 through 21, inclusive, meaning until a student's twenty-second birthday. The District has never provided a FAPE to students until their twenty-second birthday until ordered to do so by OSPI in 2024. That includes S.P., who was exited from special education in June of 2023. AR 634 ¶ 7. Thus, under 20 U.S.C. § 1412(a)(1)(A), S.P. had a substantive right to receive a FAPE until her twenty-second birthday. The District's independent failure to provide that denied her a FAPE.

But that is admittedly not the end of the analysis because for decades the state has argued the exception contained in 20 U.S.C. § 1412(a)(1)(B)(i) applies to students in Washington. 20 U.S.C. § 1412(a)(1)(B)(i) allows states to cut off eligibility for students if it would be "inconsistent with State law or practice" to serve students of that age. In 2013, the Ninth Circuit explored the contours of 20 U.S.C. § 1412(a)(1)(B)(i), based on the application of a Hawaii law that cut off eligibility to students older than twenty, in *E.R.K. v. Hawaii Dept. of Educ.*, 728 F.3d 982 (9th Cir. 2013). In that case, the Ninth Circuit

[6] The District in a footnote appears to fault the undersigned for reusing his own analysis from the *N.D.* litigation in this case. It is unclear why it takes issue with that, when Plaintiffs are literally asking this Court to conduct the exact same analysis of the exact same law, only this time directed towards the school district, rather than OSPI.



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

held "[i]n light of this legislative history, we interpret § 1412(a)(1)(B)(i) to mean that Hawaii cannot deny special education to disabled students aged 18 through 21 if it in fact provides 'free public education' to nondisabled students in that range of ages." *Id.* at 987. After reviewing the facts concerning the adult education programs in Hawaii, the Court concluded, "[w]e are therefore persuaded that the Community Schools for Adults offer 'secondary education'—and hence that the state offers 'free public education' to nondisabled students over 18 and under 22." *Id.* at 989. As such "if Hawaii legislators wish to shut the door to students once they turn 20, that is their prerogative—but they must shut them to all students, regardless of disability… In Hawaii's two-track system, nondisabled students between the ages of 20 and 22 can pursue the diplomas that eluded them in high school, but students with special needs are simply out of luck…. But the IDEA stands for the principle that exclusion is a false economy unbefitting a society committed to the complete integration of its disabled citizens." *Id.* at 992.

Thus, in 2013, the law in the Ninth Circuit was that so long as states provided "free public education" to non-disabled students older than twenty-two, that state could not exclude disabled students based on 20 U.S.C. § 1412(a)(1)(B)(i). The District takes pains to explain *E.R.K.* was actually about a Hawaii law and therefore has no bearing on Washington or the District. *See* Dkt. No. 19 at 15 ("*E.R.K.* addressed Hawaii state law and made no determination as to whether Washington provide 'free public education…'). But that is of course not how legal analysis works. As cited above, judicial decision making involves "applying general rules to particular situations." *Rivers,* 511 U.S. at 312. *E.R.K.* provides the general rule – if states provide "free public education" to non-disabled



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

students, 20 U.S.C. § 1412(a)(1)(B)(i) does not apply. Again, applying that general rule to the facts in Washington as they existed in 2023, including the fact Washington provides High School+ and GED programs to nondisabled students, some of which are free of charge (*see Dkt. No.* 18 at 5-8), is the appropriate legal analysis the ALJ should have done and that this Court should do.

Fortunately, the Ninth Circuit has done that analysis for us. In *N.D. v. Reykdal,* 102 F.4th 982 (9th Cir. 2024) after looking at the exact same evidence, the Court concluded "[t]he record here shows that Washington does not shut the door to free public education to all 21-year-olds—only disabled ones. The IDEA does not permit it to do so."

Therefore, because non-disabled students in Washington older than twenty-one could access a "Free Public Education," disabled students were likewise entitled to receive a FAPE until their twenty-second birthday. That analysis is binding on this Court when looking at the facts as they existed in 2023 – namely that Washington provides the exact same programs identified by the Ninth Circuit in *N.D.* That straight forward analysis is all that is required in this case. And thus, the District's failure to ensure S.P. had access to a FAPE until her twenty-second birthday violated her rights under the IDEA. Notably, it was the District, not OSPI, that exited her from special education. That action is what makes the District liable (in addition to OSPI).

**4. The District's argument regarding the *N.D.* Settlement ignores the most crucial issue: that agreement is not binding on any class member.**



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

The District argues this case is not proper because S.P. could seek relief through the *N.D.* class action settlement, stating "Parents may not simply skip this process and seek a judicial determination regarding the appropriate amount of compensatory services S.P. may be entitled to as a result of the *N.D.* settlement." Dkt. No. 19 at 24. But Parents are not seeking compensatory education as a result of the *N.D.* settlement. They are seeking compensatory education for the District's *independent* violation of the IDEA. For that same reason, the District's lengthy factual recitation of the *N.D.* settlement process is also not relevant.

Regardless, nothing in the *N.D.* class action settlement compels Plaintiff to follow the procedures identified in the Settlement Agreement. As the Court in *N.D. repeatedly* stressed, "the proposal would not bind class members," *N.D. v. Reykdal,* 2:22-cv-01621-LK, 2025 WL 1736639 (W.D. Wash., June 23, 2025) at *8; "the agreement contains no release language and is instead framed as a judgment against the Defendants," *id.;* and "[f]urthermore, the Settlement Agreement is not binding on students, nor does it contain a release of claims. Students therefore *remain free to file their own class actions or individual lawsuits to remedy any violation of law that is not addressed by this Settlement Agreement*." *Id.* at *11 (emphasis added). Here, as the District repeatedly stresses, the question is not about OSPI's violation of the IDEA, but the District's. Under the terms of the *N.D.* settlement "students… remain free" to bring a lawsuit answering that question. *Id.* That the District has offered an IEP meeting consistent with *N.D.'s* remedy does not foreclose this litigation, and the ALJ erred in relying on it in defense of her erroneous decision.



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101

***

This is a straightforward case. Did the District deny S.P. eligibility for special education prior to her twenty-second birthday. Yes. Because federal law *guarantees* that right to S.P., the District violated the IDEA when it exited her from special education. S.P. is therefore entitled to any compensatory education to make up for the District's actions that denied her equal lost educational opportunity. The District's failure to recognize that in 2023 was wrong, and the District's failure to recognize that now is worse. This Court, consistent with the binding authority of *E.R.K.* and *N.D.,* should issue partial judgment in favor of S.P. and remand back to OAH for additional proceedings consistent with the Order.

Plaintiffs certify that this memorandum contains 4019 words, in compliance with the Local Civil Rules.

Dated this 27th day of June 2025.

CEDAR LAW PLLC

[signature]
Alex Hagel
Cedar Law PLLC
113 Cherry St., PMB 96563
Seattle, WA, 98104-2205
(206) 607-8277
Fax (206) 237-9101
alex@cedarlawpllc.com

Attorney for the family



Cedar Law PLLC
600 1st Ave., Ste 330,
PMB 96563
Seattle, WA, 98104
(206) 607-8277;
Fax (206) 237-9101