Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| C.P. et al.,<br><br>Plaintiff,<br><br>v.<br><br>SEATTLE PUBLIC SCHOOLS,<br><br>Defendant. | No. 2:25-cv-00286-BJR<br><br>DISTRICT'S REPLY |



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Parents' Claims are Inconsistent with the Plain Language of the IDEA. ..... 2

B. The State Regulation Defining a FAPE does not Incorporate Every Provision of the IDEA. ..... 8

C. The District Properly Complied with State Law in Effect at the Time S.P. was Exited from Special Education Services in 2023. ..... 8

D. Adequate Relief is Available to Remedy S.P.'s Premature Exit from Special Education Services ..... 12

III. CONCLUSION ..... 13




PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

## I. INTRODUCTION

In *N.D. v. Reykdal*, this Court concluded that the State of Washington violated the IDEA in adopting laws and policies that denied S.P. a FAPE by ending her eligibility for special education services before she turned 22. Parents do not dispute that S.P. is entitled to an appropriate remedy for the State's legal violation through the settlement her own counsel negotiated with OSPI in that matter. Parents cannot, however, establish that the District is liable for violating a provision of the IDEA that does not apply to it. Washington's 295 school districts are not individually liable for the State's policy enacted under the IDEA. Rather, Washington's school districts complied with the IDEA by implementing their educational programs according to the State's direction. The issue before the Court is readily addressed by a straight-forward application of the language of the IDEA, which sets forth the respective obligations of the State and local school districts as it relates to the age of eligibility for special education services. The State must adopt policies to offer services to eligible students, and the school districts must follow those policies. Parents fault the District for the simplicity of its argument, but that is because the issue is simple. The proper party has already been held accountable for the violation Parents allege, and the ALJ's rejection of Parents' claims against the District should be upheld.

## II. ARGUMENT

In their reply, Parents contend that the District proposes an "untenable" interpretation of the IDEA that shields it from liability as long as the State also violates the IDEA. Parents claim that the District's argument is unsupported by the text of the IDEA, foreclosed by existing case law, and would produce an absurd result that should be soundly rejected. Parents' arguments repeatedly misconstrue the District's position, are inconsistent with the plain language of the IDEA, and seek to hold the District vicariously liable for the State's violation of the IDEA. Parents also fail to provide any justification for why they continue to pursue this litigation against the District instead of accepting the relief already available to them. Parents' attempt to



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

use this lawsuit to circumvent the process in the settlement agreement stemming from the State's violation should be rejected.

**A. Parents' Claims are Inconsistent with the Plain Language of the IDEA.**

Parents incorrectly contend that the District's "primary argument" is that school districts only need to comply with state law and cannot be found liable for violating federal law. Dkt. # 20 at 2. They claim the District's position is that Section 1413 "shields school districts from liability under federal law." *Id.* at 3. Parents misunderstand the District's straightforward argument—that the District cannot be found to have violated provisions of the IDEA that do not apply to school districts. *Id.* The District has never taken the position that it is not required to comply with <u>any</u> provisions of the IDEA. *See* Dkt. # 19 at 17-18. Rather, the District cannot be found to have violated Section 1412 because it governs the conduct of the State, a separate entity under the law. Parents' attempt to misrepresent the District's position should be rejected.

Parents also continue to argue that school districts "constitute 'the State' under Washington law" without citing any statutory or regulatory authority that supports their argument. Dkt. # 20 at 3. Instead, Parents first cite *Howard v. Tacoma Sch. Dist. No. 10, Pierce Cnty.*, a personal injury case from 1915 in which the court found that a school district's maintenance of certain exercise equipment was a "governmental function" rather than a "proprietary or corporate function." 88 Wash. 167, 170-73, 152 P. 1004, 1005-06 (Wash. 1915). In reaching that conclusion, the court explained that school districts "are mere arms of the state for the administration of its school system" and, therefore, practically all of their functions are governmental as opposed to private. *Id.* at 170, 1005. The court did not find that school districts and the State are one entity. Instead, it found that because the State requires school districts to perform certain functions, those functions are considered governmental in nature. *Id.* at 170-73, 1005-06. Parents next cite to *Bellevue Sch. Dist. No. 405 v. Brazier Const. Co.*, 100 Wn.2d 776, 675 P.2d 232 (1984), which similarly fails to support their argument that school districts and the State are the same. Dkt. # 20 at 3-4. In that case, the court explained that the Washington



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

constitution imposes "upon the state the paramount duty of making adequate provision for the education of all children residing within its borders." *Bellevue*, 100 Wn.2d at 778, 675 P.2d at 234. The court did not find that the obligation applied equally to school districts, but instead that school districts "act on behalf of the State when they build and maintain school buildings." *Id.* While the court cited language in *Howard* referring to school districts as "mere arms of the state," the decision as whole clearly distinguishes between the separate entities. Parents' arguments to the contrary are unpersuasive.

Parents next challenge the District's argument that the State and LEAs are separate entities because the IDEA defines them as such. Dkt. # 20 at 4. They contend that the argument "breaks down" because the IDEA includes separate definitions for "State educational agency" and "State." *Id*. Parents argue that the District conflates those terms in order to "blame OSPI for violating the IDEA," but fails to accept that the District is also the State. *Id*. Parents' argument cannot be reconciled with the IDEA's plain language. The IDEA defines the term "State" as "each of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, and each of the outlying areas." 20 U.S.C. § 1401(31). It cannot be disputed that a school district does not fall under that definition. The IDEA defines the term "State educational agency" as "the State board of education or other agency or officer primarily responsible for the State supervision of public elementary schools and secondary schools. . . ."[1] 20 U.S.C. § 1401(32). LEAs, on the other hand, are defined as "the public board of education or other public authority legally constituted <u>within a State</u>" for the administration of local public schools. 20 U.S.C. § 1401(19) (emphasis added). Thus, OSPI, as the State education agency is the entity responsible for

[1] The IDEA also distinguishes between State educational agencies and LEAs. *See e.g.*, 20 U.S.C. § 1412(b) (If the State educational agency provides a FAPE or direct services to students, it must comply with the additional requirements of Section 1413(a) "as if such agency were a local educational agency."); 20 U.S.C. § 1412(a)(10)(ii)(III) ("the local educational agency, or where applicable, the State educational agency, shall undertake" child find activities); 20 U.S.C. § 1412(a)(10)(iii) ("a local educational agency, or where appropriate, a State educational agency, shall consult with private school representatives and representatives of parents…").



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

ensuring the State's compliance with the IDEA. Parents' attempt to assign that responsibility to school districts despite clear language to the contrary is meritless.

Parents contend that the District's interpretation of Section 1413 "ignores the broader context in which it was written." Dkt. # 20 at 4. Rather than identifying the allegedly broader context, Parents simply argue that Section 1413's reference to Section 1412 "necessarily incorporates" Section 1412's requirements into the policies, procedures, and programs that LEAs must create. *Id.* Parents' argument misconstrues the plain language of the provisions. Section 1412 makes federal funding contingent upon the State submitting "a plan that provides assurances . . . that the State has in effect policies and procedures to ensure that the State meets each of the conditions" set forth in Section 1412. 20 U.S.C. § 1412(a) (emphasis added). Section 1413, which addresses funding for LEAs, requires LEAs to have "policies, procedures, and programs that are consistent with the State policies and procedures established under section 1412 of this title." 20 U.S.C. § 1413(a)(1) (emphasis added). In other words, the State must have policies and procedures to ensure the provision of a FAPE to eligible students, and LEAs must have policies, procedures, and programs that are consistent with the State's policies and procedures. That is precisely what occurred here. The State had a statute and regulation in effect that ended students' eligibility for special education services after the school year in which they turned 21. Rev. Code Wash. § 28A.155.020; Wash. Admin. Code § 392-172A-02000. The District complied with the State's policies and procedures by exiting S.P. from services at 21. Parents cannot establish that the District violated the IDEA by following existing state law as required by Section 1413.

Parents next argue that the District asks the Court to "allow an absurd result to occur" by finding that school districts are immune from liability for violating federal law if the State also violates the law. Dkt. # 20 at 5. Parents misunderstand the District's argument. The District's position is not that it cannot be liable for violating Section 1412 because the State also violated it. Rather, the District's position is that it cannot be found in violation of Section 1412 because



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

that provision applies to States and not LEAs. *See* Dkt. # 19 at 17-18. Parents' characterization of the District's argument as an "untenable retreat from the broad protections offered to students with disabilities" is meritless. Dkt. # 20 at 5. It is also undermined by the fact that Parents have adequate relief available to them for the State's legal violation that resulted in S.P.'s exit from special education services at age 21. Parents fail to articulate any reason why that relief is insufficient.

Parents claim that no court has ever adopted the District's "illogical reading" of Section 1412 and Section 1413. Dkt. # 20 at 5. To support their argument, Parents cite *Town of Burlington v. Dep't of Educ. for Com. of Mass.*, 736 F.2d 773 (1st Cir. 1984), *aff'd sub nom. Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359 (1985). Dkt. # 20 at 5. That case, however, did not address the application of Section 1412 to school districts. Rather, the court explained that states must comply with the minimum standards set forth in the IDEA to receive federal funding, but may supplement those standards through state law. *Burlington*, 736 F.2d at 784. The court further explained that the IDEA requires only that a FAPE be provided to each eligible student "in conformity with the state's educational standards." *Id.* Thus, Parents' reliance on *Burlington* is misguided. Parents also argue that courts "routinely and repeatedly" recognize that Section 1412 applies to school districts. Dkt. # 20 at 5. Parents cite four unpublished decisions to support their claim, none of which analyze or include any substantive discussion about the applicability of Section 1412 to school districts.[2]

Parents further claim that even when courts only cite to Section 1413, they "continue to

---

[2] *Apple v. New York City Dep't of Educ.* cites Section 1412(a)(1) once for the general proposition that school districts must make a FAPE available to eligible students. No. 24-CV-4380 (OEM) (RML), 2025 WL 1663624, at *1 (E.D.N.Y. June 12, 2025). *KW v. Peninsula Sch. Dist.* similarly cites Section 1412(a)(1) once as well as a reimbursement provision in Section 1412, but provides no substantive discussion of either. No. 3:24-CV-05820-BAT, 2025 WL 1592450 at *1, 18 (W.D. Wash. June 5, 2025). *SPB v. Washoe Cnty. Sch. Dist.* appears to have inadvertently cited Section 1412(a)(1)(C)(iii), as that provision does not exist. No. 3:22-CV-00340-ART-CLB, 2025 WL 1638121 at *8-9 (D. Nev. June 6, 2025). And, *Zion M. through Gabrielle M. v. Upper Darby Sch. Dist.* cites both Section 1412 and 1413 for the proposition that the IDEA's FAPE requirement "is enforced through contingent federal funding" to State educational agencies and LEAs. No. CV 21-2941, 2023 WL 6299091 (E.D. Pa. Sept. 27, 2023).



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

tie LEA liability directly to the Act itself, not the policies and procedures adopted by the State." Dkt. # 20 at 6. Parents cite *Ellenberg v. New Mexico Mil. Inst.*, 478 F.3d 1262 (10th Cir. 2007) to support their argument. However, in that case, the court stated that the "[r]esponsibility for implementing the IDEA and policing IDEA compliance rests with the states." *Ellenberg*, 478 F.3d at 1269. The court explained that each State educational agency "must enact procedures and policies to implement the IDEA, and ensure both state and local compliance with the Act." *Id.* While the court stated that LEAs must comply "with the IDEA to the satisfaction of the SEA," that is accomplished through compliance with State procedures and policies. *Id.* The court also cited Section 1412 when identifying State or State educational agency responsibilities and Section 1413 when describing the responsibilities of LEAs, thus further undermining Parents' contention that Section 1412 applies to both entities. *Id.* at 1268-69, 1275.

Parents next contend that *Corey H. v. Bd. of Educ. of City of Chicago*, 995 F. Supp. 900 (N.D. Ill. 1998) is a "helpful analogous case" because the court found both the City and the State violated the IDEA's least restrictive environment ("LRE") requirements. Dkt. # 20 at 6-7. Parents argue that under the District's "proposed interpretation of the IDEA," there would be no basis for the court to conclude that the City "violated the IDEA because it was acting consistent with [the State's] policies." *Id.* at 7. Parents' argument lacks merit. The court in *Corey H.* did not find that the City violated the IDEA by complying with state law and regulations in effect at the time.[3] Rather, the court found that the City failed to comply with the IDEA's LRE mandate due to a lack of resources, insufficient training and certification of teachers, community attitudes, and state funding formulas that incentivized placement in private, segregated schools.[4] *Id.* at 908. The court then found that the State violated the IDEA by failing to: 1) ensure the City complied with the LRE requirements; 2) identify and correct LRE violations; 3) provide sufficient

---

[3] The court noted that previous State regulations were inconsistent with the IDEA's LRE requirements, but they were amended in 1990. *See Corey H.*, 995 F. Supp. at 909.

[4] The City settled the claims against it prior to the trial, so the court analyzed the City's violation of the IDEA in the broader context of the State's violation.



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

information, technical assistance, and training to teachers and administrators; and 4) ensure teacher certification standards and state funding formulas complied with the LRE mandate. *Id.* at 918. Thus, *Corey H.* is distinguishable and does not undermine the District's position that it cannot be liable for violating an IDEA provision that is inapplicable to school districts.[5]

Parents also claim that the District "misunderstands the significance" of Section 1413. Dkt. # 20 at 8. They appear to contend that the District argued that Section 1413 "cuts off liability" against school districts. *Id.* To the contrary, the District explained that Section 1413 applies to the District because it sets forth the requirements for LEA policies, procedures, and programs and Section 1412 applies to OSPI because it sets forth the requirements for State policies and procedures. Dkt. # 19 at 15-16. Parents argue that Section 1413 "heightens" liability against school districts whose policies are inconsistent with federal law and state law, but fail to cite any statutory authority or case law that supports their argument. Dkt. # 20 at 8. Instead, Parents first cite *Doe By & Through Doe v. Bd. of Educ. of Tullahoma City Sch.*, 9 F.3d 455 (6th Cir. 1993), a decision that does not address or even reference Section 1413. Rather, the court analyzed whether a Tennessee statute set a higher standard for the provision of a FAPE than the standard set forth in *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982). *Doe*, 9 F.3d at 457-458. The court explained that school districts must comply with federal law as well as more extensive state protections, but found that the state statute at issue did not impose a higher standard. *Id.* Parents next cite to *Burlington*, which similarly does not address the requirements of Section 1413. Rather, the court explained generally that states may provide procedural and substantive protections that are more stringent than those in the IDEA. 736 F.2d at 784-85. The District does not dispute that it must comply with state and federal laws

[5] Parents argue that the court rejected the State's argument that its policies and plan for monitoring complied with federal law because OSEP approved them. Dkt. # 20 at 7. Parents appear to attempt to correlate OSEP's approval with the District's compliance with the State's policies and procedures. However, the court rejected the State's argument because the IDEA required the court to review the State's actions and no legal authority supported the State's contention that OSEP was the exclusive avenue of enforcement. *Corey H.*, 995 F. Supp. at 917.



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

applicable to school districts. However, Parent cite no authority to support their contention that the District should be found in violation of an IDEA provision that governs the State's actions.

The ALJ correctly determined that the District complied with the State's law and regulation in effect at the time it exited S.P. in from special education services at the age of 21. Parents' request that this Court ignore the plain language of the IDEA and find the District liable for a violation committed by the State should be rejected.

**B. The State Regulation Defining a FAPE does not Incorporate Every Provision of the IDEA.**

Parents improperly raise a new argument on reply, claiming that the District was required to comply with all provisions of the IDEA because the State's regulation defining a FAPE "unequivocally incorporates" the IDEA's requirements. Dkt. # 20 at 9-10. Parents did not raise this argument before the ALJ or in their opening brief and therefore it is waived. *See U.S. v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) (an issue not "specifically and distinctly" argued in an opening brief is waived). Even if the Court were to consider Parents' belated argument, it has no merit. The regulation Parents reference defines the term "FAPE" as the "special education and related services" that, among other things, "[m]eet the standards of the OSPI, and the act." Wash. Admin. Code § 392-172A-01080. Parents' claim that the reference to "the act" imposes a requirement on school districts to comply with every provision of the IDEA is not compelling. Rather, the regulation requires that special education and related services comply with OSPI's standards and any IDEA requirements specific to special education and related services. Parents cite no legal authority that supports their overly broad interpretation of the regulation, nor can they.

**C. The District Properly Complied with State Law in Effect at the Time S.P. was Exited from Special Education Services in 2023.**

Parents claim that the District spent "a considerable number of pages" arguing that the District had no way of knowing in 2023 that it was violating the law. Dkt. # 20 at 10. Parents again misrepresent the District's argument. The District did not argue that it was unaware it was



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

violating the law by exiting S.P. from special education services in 2023. To the contrary, the District argued that: 1) the Ninth Circuit's decision in *E.R.K.* invalidating Hawaii's age eligibility law did not apply to Washington law; 2) the District properly followed existing state law when it exited S.P. from special education services at age 21; 3) S.P. was not entitled to special education services after the Court enjoined enforcement of Washington law in July 2024 because she turned 22 in August 2024 and did not qualify for ESY services; and 4) this Court's November 2024 declaratory judgment that the State's policy violated Sections 1407 and 1412 of the IDEA did not establish that school districts were retroactively liable for the State's legal violation.[6] Dkt. # 19 at 19-23.

Despite that, Parents contend that whether the District knew it was allegedly violating the law in 2023 is irrelevant. Dkt. # 20 at 10. To support their contention, Parents cite *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010), a case that did not address retroactivity. Rather, the court held that the "bona fide error defense" in the Fair Debt Collection Practices Act did not apply to a violation caused by a debt collector's incorrect interpretation of the Act's requirements. *Jerman*, 559 U.S. at 574. In addition to addressing a statute that is not applicable here, the case is distinguishable as the District did not misinterpret the law in 2023. To the contrary, the District followed existing State law that undisputedly provided that a student's eligibility for special education services ended during the school year in which the student turned 21.

Parents also claim that the District's arguments against retroactive application have been rejected by the Supreme Court. Dkt. # 20 at 11. To support their argument, Parents first cite *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298 (1994), a case in which the Supreme Court held that a civil rights statute did not apply to cases that arose prior to its enactment. *Id.* Parents also cite the holding in *Harper v. Virginia Dep't of Tax'n* that when the Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and

[6] Section 1407 requires each State to "ensure that any State rules, regulations, and policies" conform to the IDEA. 20 U.S.C. § 1407.



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

must be given full retroactive effect in all cases still open on direct review." *Id.* at 11-12. That case addressed Virginia's practice of taxing retirement benefits paid by the federal government while exempting those paid by the State or its political subdivision. *Harper*, 509 U.S. 86 (1993). The Supreme Court held that its prior ruling that the same practice by Michigan violated the constitutional doctrine of intergovernmental tax immunity applied retroactively to Virginia. *Id.* at 97. It, therefore, ordered Virginia to provide meaningful "backward-looking relief to rectify any unconstitutional deprivation." *Id.* at 101. The Court did not hold that its ruling regarding a State's unconstitutional practice applied retroactively to non-State entities.

Parents nonetheless contend that the ALJ should have applied, and this Court should apply, the rules established in *E.R.K. ex rel. R.K. v. Hawaii Dep't of Educ.*, 728 F.3d 982 (9th Cir. 2013) and *N. D. v. Reykdal*, 102 F.4th 982 (9th Cir. 2024) to the District. Dkt. # 20 at 12. Parents argue that "for decades the state has argued the exception contained in [Section 1412] applies to students in Washington," which "allows states to cut off eligibility for students" if serving students over the eligibility age would be "'inconsistent with State law or practice.'" *Id.* (Emphasis added). Yet, that is exactly the District's point. The State's actions were inconsistent with the IDEA, not the District's. And, Parents' explanation for "reusing" the analysis from the *N.D.* litigation in this case further undermines their argument. Dkt. # 20 at 12 n.6. Indeed, Parents concede that they "are literally asking this Court to conduct the exact same analysis of the exact same law, only this time directed towards the school district, rather than OSPI." *Id.* Parents fail to identify any legal basis for finding the District in violation of federal laws that govern the State's conduct.

Parents' argument regarding the application of the Ninth Circuit's holding in *E.R.K.* is similarly unpersuasive. Parents state that, "[a]fter reviewing the facts concerning the adult education programs in Hawaii," the Court concluded that Hawaii offered free public education to nondisabled students between the ages of 18 and 22. Dkt. # 20 at 13. Thus, as Parents appear to concede, the Court found that Hawaii's eligibility law violated the IDEA based on a fact-specific



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

analysis of Hawaii's adult education program. *Id.*; *See also E.R.K.*, 728 F.3d at 987 ("The fate of [Hawaii's state law] comes down to whether the diploma programs offered by the Community Schools for Adults constitute "'free public education.'"). Parents argue that based on *E.R.K.*, the "law in the Ninth Circuit" in 2013 was that if States provided a free public education to non-disabled students over the age of 22, then States could not exclude disabled students based on Section 1412.[7] Dkt. # 20 at 13. Parents fail to address, much less establish, how a judicial ruling based on a factual analysis of Hawaii's adult education program would be binding on school districts in Washington. And, in response to the District's argument that *E.R.K.* was based on Hawaii state law and therefore not binding on the District, Parents simply state, without citing any supporting authority, "that is of course not how legal analysis works." *Id.* Even if Parents established that *E.R.K.* applied retroactively, which they did not, any such retroactive application would be to States, as the decision was based on Section 1412, which governs the State's conduct.

Parents lastly argue that the Ninth Circuit's ruling on the preliminary injunction in *N.D.* is binding on this Court. Dkt. # 20 at 14. Parents cite no legal authority that supports their argument that the Court's holding—that the State provided a free public education to students aged 21 and older and, therefore, the State could not deny special education services to students with disability who were 21—applies to school districts. Parents contend that the District is liable in addition to OSPI because it was the District, not OSPI, that exited S.P. from special education services. *Id.* However, the District was required to exit S.P. from services at age 21 pursuant to State law. Parents fail to cite any legal authority establishing that the District's compliance with existing state law renders the District liable for the State's IDEA violation.

The ALJ properly concluded that the District did not violate the IDEA in June 2023 when it complied with existing state law that required it to exit S.P. from special education services at

---

[7] It appears that Parents' reference to age 22 is a typo, as the Ninth Circuit addressed the provision of a free public education to nondisabled students between the ages of 18 and 22. *See E.R.K.*, 728 F.3d at 989.



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

age 21. Parents' arguments that the *E.R.K.* and *N.D.* rulings undermine that conclusion are without merit.

**D. Adequate Relief is Available to Remedy S.P.'s Premature Exit from Special Education Services**

Parents do not dispute that appropriate relief is available to them for OSPI's violation of the IDEA that resulted in S.P.'s exit from special education services at age 21. Parents instead argue that it is irrelevant because they are seeking compensatory education for the District's "*independent*" violation of the IDEA. Dkt. # 20 at 15. (Emphasis original). Yet, the remedy Parents seek has already been offered to them. OSPI directed the District to convene an IEP meeting to consider compensatory services for the school year prior to S.P.'s 22nd birthday, and the District offered an IEP meeting consistent with OSPI's directive. Parents fail to articulate why they seek compensatory services from two different entities for the same one-year time period. Parents contend that they are not required to access the remedy available through the *N.D.* settlement. While the District does not dispute that contention, Parents' decision to continue to pursue litigation against the District instead of accepting the relief available to them makes little sense.

Lastly, Parents incorrectly claim that the ALJ relied on the District's offer to hold an IEP meeting to discuss compensatory services in reaching her summary judgment decision. Dkt. # 20 at 15. To the contrary, the ALJ dismissed Parents' complaint because she found that the District complied with State law in effect at the time when it exited S.P. from special education services at age 21. AR 641 (CL 23). The ALJ held that "OSPI is responsible for overseeing K-12 education in Washington state" and the District did not have the authority to unilaterally determine that it was not required to comply with State law and regulations. AR 640 (CL 20). While the ALJ found it "significant" that the District had offered an IEP meeting to discuss compensatory services consistent with the N.D. settlement, she did not dismiss Parents' complaint on that basis. The ALJ dismissed Parents' complaint based on her conclusion that the



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750

District did not violate the IDEA when it exited S.P. from special education services in 2023. Parents have failed to establish any basis for overturning the ALJ's decision.

## III. CONCLUSION

The State has already been found in violation of the IDEA for requiring school districts to exit students from special education services at age 21. Parents' counsel negotiated a settlement with OSPI to compensate students, including S.P., for the State's legal violation. Rather than accepting the available relief, Parents continue to argue that Washington's school districts should also be liable for the State's violation. Parents have failed to meet their burden of establishing that the District violated the IDEA by complying with State law, which required it to exit S.P. from special education services in June 2023 at the age of 21. The ALJ's decision should be affirmed.

DATED this 14th day of July, 2025.

PACIFICA LAW GROUP LLP

By: *s/ Susan Winkelman*
Sarah C. Johnson, WSBA #34529
Susan B. Winkelman, WSBA #49544
*Attorneys for Seattle Public Schools*



PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245.1700
FACSIMILE: (206) 245.1750